# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

```
THOMAS T. TUNSTALL, V,        *
                              *
     Plaintiff,               *
                              *
vs.                           *   CIVIL ACTION NO. 18-00356-KD-B
                              *
KIMBERLY M. GLIDEWELL, et al., *
                              *
     Defendants.              *
```

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants Mark D. Ryan and Mark D. Ryan, P.C. a/k/a Ryan & Wilkes, P.C.'s motion to dismiss. (Doc. 33). The motion, which has been fully briefed, has been referred to the undersigned Magistrate Judge for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(S). Upon consideration of all matters presented, the undersigned recommends, for the reasons stated herein, that Defendants' motion be **GRANTED.**

## I.    PROCEDURAL BACKGROUND

Plaintiff Thomas T. Tunstall, V ("Tunstall") commenced this action on August 13, 2018 by filing a sixty-four-page, fifteen-count *pro se* complaint that named the following Defendants: Tunstall's former wife, Kimberly M. Glidewell ("Glidewell"); Glidewell's attorney, Mark D. Ryan ("Ryan"); Baldwin County, Alabama Circuit Court Judge Carmen E. Bosch; Baldwin County Assistant District Attorney Harry M. D'Olive, Jr.; Baldwin County

Department of Human Resources employees Kelley O. Edwards ("Edwards") and Cynthia T. Mosley ("Mosley"); and "Defendants A to E", who were alleged to be employees of the Baldwin County Department of Human Resources who "were principal to and[/]or acted in collusion with" the other named Defendants. (Doc. 1).[1]

Tunstall filed a motion for leave to file a first amended complaint, along with a proposed first amended complaint. (Docs. 3, 3-1). Without waiting for a ruling on the motion, Tunstall filed a second motion for leave to amend his complaint, along with a proposed second amended complaint comprising ninety-eight pages and twelve counts. (Doc. 4). The Court noted that none of Tunstall's pleadings, i.e., the complaint and the first and second amended complaints, constituted a "short and plain statement" of his claims as required by Rule 8(a), but were instead "shotgun" style pleadings. Thus, the Court directed Tunstall to file a third amended complaint that complied with the pleading requirements of the Federal Rules of Civil Procedure, did not exceed twenty-five pages, and provided a short and plain statement of his claims. (Doc. 5).

Pursuant to the Court's directive, Tunstall filed a third amended complaint. (Doc. 7). Tunstall's third amended complaint

---

[1] Tunstall also filed a motion to proceed without prepayment of fees. (Doc. 2). Tunstall's initial motion was denied; however, at the Court's directive, he filed a new motion to proceed without prepayment of fees, and it was granted. (Docs. 5, 8, 9).

names as Defendants Glidewell; Ryan; the law firms of Mark D. Ryan,

P.C. and Ryan & Wilkes, P.C.;[2] Edwards; Mosley; and Hope Theriot

Daigle ("Daigle"),[3] an employee of the Louisiana Department of

Children & Family Services. (Doc. 7 at 1-4). After the third

amended complaint was filed, summonses were issued and each of the

named Defendants were served. (See Docs. 10, 11, 12, 13, 15, 16,

53, 65).

Defendants Ryan, Mark D. Ryan, P.C., and Ryan & Wilkes, P.C.

(collectively the "Ryan Defendants") filed the instant motion to

dismiss all of Tunstall's claims against them pursuant to Federal

Rule of Civil Procedure 12(b)(6). (Doc. 33). Tunstall filed a

response and an amended response in opposition (Docs. 48, 49), and

the Ryan Defendants filed a reply. (Doc. 56).[4] The motion to

---

[2] Tunstall's third amended complaint names, *inter alia*, Mark D.
Ryan, Mark D. Ryan, P.C., and Ryan & Wilkes, P.C. as Defendants.
(Doc. 7 at 1-4). In the instant motion to dismiss, "Mark D. Ryan,
Esq. and Mark D. Ryan, P.C. (aka Ryan & Wilkes, P.C.)" aver that
Mark D. Ryan, P.C. currently does business as Ryan & Wilkes, P.C.,
but that there is no separate legal entity known as "Ryan & Wilkes,
P.C." (Doc. 33 at 1). Given that Tunstall has not stated any
claims against Ryan & Wilkes, P.C. separate and apart from those
asserted against Mark D. Ryan and Mark D. Ryan, P.C., the Court is
treating the claims against these Defendants collectively.

[3] The third amended complaint refers to Defendant Daigle as "Hope
[Theriot] Diagle." (See Doc. 7). Tunstall now appears to
acknowledge that "Daigle" is the correct spelling. (See Doc. 57).

[4] Also pending before the Court is Tunstall's motion to strike the
Ryan Defendants' reply pursuant to Fed. R. Civ. P. 12(f). (Doc.
69). Rule 12(f) provides that the Court "may strike from a
pleading an insufficient defense or any redundant, immaterial,
impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The

Court notes at the outset that "Rule 12(f) applies to pleadings and is not the appropriate basis for evaluating [a] Reply brief[.]" <u>Boring v. Pattillo Indus. Real Estate</u>, 2019 U.S. Dist. LEXIS 216372, at *16, 2019 WL 6816931, at *6 (N.D. Ga. Dec. 11, 2019). Moreover, "[a] motion to strike is a drastic remedy[,] which is disfavored by the courts." <u>Williams v. Asplundh Tree Expert Co.</u>, 2006 U.S. Dist. LEXIS 60319, at *5, 2006 WL 2474042, at *2 (M.D. Fla. Aug. 25, 2006) (citations and internal quotation marks omitted).

In his motion to strike, Tunstall contends that the Ryan Defendants intentionally misrepresented material facts when they stated: "Plaintiff's actions are premised on entry of default judgment in 2011, not a fabricated evidence claim that Plaintiff now seems to assert." (Doc. 69 at 3). According to Tunstall, the Ryan Defendants made another intentional misrepresentation of facts by stating: "Plaintiff was aware of the entry of default judgment in 2011 that his claims against the Ryan Defendants are now premised on." (<u>Id.</u>). Upon consideration, the Court finds that Tunstall's mere disagreement with the Ryan Defendants' assertions or their interpretation of his allegations is insufficient to warrant striking their arguments, none of which constitute "redundant, immaterial, impertinent, or scandalous matter." <u>See</u> Fed. R. Civ. P. 12(f).

Tunstall also takes issue with the following statement in the Ryan Defendants' reply brief: "Because the arguments set forth in any co-defendant's motion to dismiss are equally applicable to the Ryan Defendants (except for those relating to immunity), the Ryan Defendants re-adopt the Motions to Dismiss filed by Defendant Edwards (Docs. 26-27) and Defendant Daigle (Doc. 51)." (<u>Id.</u> at 3-5; <u>see</u> Doc. 56 at 10). The Court will not consider new arguments made for the first time in a reply brief. <u>See</u> <u>Boring</u>, 2019 U.S. Dist. LEXIS 216372, at *16, 2019 WL 6816931, at *6; <u>United States v. McCoy</u>, 19 F.3d 629, 632 n.7 (11th Cir. 1994) ("Arguments raised for the first time in a reply brief are not properly before a reviewing court.") (citation omitted). Therefore, to the extent the Ryan Defendants seek to adopt arguments first raised in Defendant Daigle's motion to dismiss, which was filed *after* the Ryan Defendants' motion to dismiss, the Court will not consider such arguments. However, because the Ryan Defendants' motion to dismiss adopted the applicable arguments contained in Defendant Edwards' earlier-filed motion to dismiss (<u>see</u> Doc. 33 at 10-11; Doc. 27), the Court will consider those arguments with respect to the Ryan Defendants. Because Tunstall's motion to strike (Doc.

dismiss has been referred to the undersigned for entry of a report and recommendation and is ripe for resolution.[5]

## II.  THIRD AMENDED COMPLAINT (DOC. 7)[6]

This case arises from a longstanding dispute over child support dating back to Tunstall and Glidewell's divorce in the early 1990s.  In this lawsuit, Tunstall alleges that Glidewell and her attorney, Ryan, aided by the other Defendants, orchestrated a scheme to collect thousands of dollars in child support payments from Tunstall that he did not in fact owe.

### A.  Factual Allegations.

The litigation between Tunstall and his former spouse, Glidewell, is summarized in an opinion by the Alabama Court of Civil Appeals as follows:

> In 1994, [Tunstall] and [Glidewell] were divorced by a judgment of a Georgia court ('the Georgia judgment'). At the time the Georgia judgment was entered, the parties had two minor children. At some point thereafter, proceedings involving the parties were commenced in the [Baldwin County, Alabama Juvenile Court] involving the Georgia judgment. Those proceedings were assigned case no. CS-95-166. On June 30, 1995, the [Baldwin County, Alabama Juvenile Court] entered an order in case no. CS-95-166 directing [Tunstall] to pay child support in the

---

69) is the wrong mechanism for his challenge to the content of the Ryan Defendants' reply brief, it is **DENIED**.

[5] The other Defendants in this case have also filed motions to dismiss Tunstall's third amended complaint (Docs. 26, 51, 62, 73), which will be addressed in separate orders.

[6] For purposes of resolving the Ryan Defendants' motion to dismiss, the Court accepts as true the facts alleged in Tunstall's third amended complaint.

amount of $370 per month beginning on July 1, 1995. In that order, the [Baldwin County, Alabama Juvenile Court] also found [Tunstall] to be in arrears on his child-support obligation in the amount of $328. On the same day, the [Baldwin County, Alabama Juvenile Court] entered an income-withholding order directing [Tunstall]'s employer to deduct the monthly amount of [Tunstall]'s child-support obligation from [Tunstall]'s income.

At some undetermined point thereafter, [Glidewell] apparently filed a petition for a finding of contempt against [Tunstall] based on his alleged failure to pay child support. The proceedings arising from that petition were docketed as case no. CS-95-166.02. On January 26, 2004, the [Baldwin County, Alabama Juvenile Court] entered an order in case no. CS-95-166.02 directing [Tunstall] to pay $3,296.08 to purge himself of contempt of court.

On April 14, 2004, [Glidewell] filed a petition for a finding of contempt against [Tunstall] and for a modification of the Georgia judgment. The proceedings arising from that petition were docketed [as] case no. CS-95-166.03. A notation in the record indicates that that case was voluntarily dismissed by [Glidewell] on July 20, 2004.

[Glidewell] apparently commenced another contempt action at some later point, which was docketed as case no. CS-95-166.04. On April 18, 2011, the [Baldwin County, Alabama Juvenile Court] entered a [default] judgment in case no. CS-95-166.04 stating as follows:

. . . .

    "1. Default Judgment is granted in favor of [Glidewell] and against [Tunstall] in the amount of $171,680.62, which includes the following amounts: $170,758.97 (child support arrearage plus interest); $750.00 (reasonable attorney's fees); and $171.65 (costs of court), for which execution shall issue."

On April 21, 2014, [Tunstall] filed an independent action in the [Baldwin County, Alabama Juvenile Court] seeking relief pursuant to Rule 60(b), Ala. R. Civ. P., from the April 18, 2011, judgment entered in case no.

CS-96-166.04, and the [Baldwin County, Alabama Juvenile
Court]-court clerk docketed that action as case no. CS-
95-166.05. In his request for relief, [Tunstall]
contended that he had been served with the summons and
the contempt petition filed by [Glidewell] in case no.
CS-95-166.04 but that he did not receive notice of the
final hearing held on April 8, 2011. As a result of his
failure to appear, he contended, the [Baldwin County,
Alabama Juvenile Court] entered the default judgment in
the amount of $171,680.62. He contended that he owed

> "no child support arrearage, which can be
> verified through the attached Court orders, and
> other documents and therefore the Final Judgment
> entered on April 18, 2011, must be a mistake,
> clerical error, or supported by fraudulent
> evidence and testimony. Furthermore, the Final
> Judgment entered on April 18, 2011, is
> unconscionable and not in furtherance of
> justice."

. . . .

> On [August 28, 2014, after a] hearing, the [Baldwin
> County, Alabama Juvenile Court] entered an order denying
> [Tunstall]'s request for relief pursuant to Rule 60(b).
> [Tunstall] filed a timely notice of appeal to [the
> Alabama Court of Civil Appeals] on September 9, 2014.

T.T. v. K.M.G., 186 So. 3d 472, 473-75 (Ala. Civ. App. 2015).

The record reflects that the Alabama Court of Civil Appeals
dismissed Tunstall's appeal on the ground that his motion for
relief under Rule 60(b)(6) was untimely and as a result, the
Baldwin County Juvenile Court ("Juvenile Court") had acted without
jurisdiction when it issued its order dated August 28, 2014. Id.
at 477. Accordingly, the appellate court directed the Juvenile
Court to vacate its order of August 28, 2014. Id.

Subsequent thereto, Tunstall returned to the Juvenile Court and sought relief from the judgments entered in the previous proceedings between him and Glidewell on the ground that the Juvenile Court lacked subject matter jurisdiction and as a result, the prior judgments were void. In an order dated March 10, 2017, the Juvenile Court determined that because the original Final Judgment of Divorce and Separation Agreement from Georgia were never domesticated or registered as foreign decrees, the Juvenile Court had lacked subject matter jurisdiction such that the orders to modify the original order or hold Tunstall in contempt were void. (Doc. 7-7 at 3). The Juvenile Court thus vacated all orders and judgments in cases CS-95-166.00, .01, .02, .03, and .04. (Id.).

Glidewell then filed a motion requesting that the Juvenile Court alter, amend, or vacate its order finding lack of subject matter jurisdiction, and in response, Tunstall sought to have Glidewell's motion stricken. Ex parte T.T.T., 249 So. 3d 514, 518 (Ala. Civ. App. 2017). The Juvenile Court held a hearing, and in an order dated June 29, 2017, determined that it did in fact have subject matter jurisdiction when the support order was issued in 1995 because Alabama was the home state of the children, both parents resided in Alabama, and Alabama had provided benefits to the children. Id. at 519. However, the Juvenile Court found that the default judgment entered in case CS-95-166.04 was void, because

it purported to calculate an arrearage from a Georgia court order that had never been registered in Alabama.  Id.  The Juvenile Court granted Glidewell's motion to alter, amend, or vacate the court's order dated March 10, 2017 and held that Tunstall was in arrears in child support in the amount of $3,103.92 and interest of $7,023.95.  Id.

Tunstall sought relief from the Alabama Court of Civil Appeals on the ground that the Juvenile Court lacked jurisdiction to enter the June 29, 2017 order granting Glidewell's post-judgment motion. Id. at 515.  The Alabama Court of Civil Appeals held that the Juvenile Court's jurisdiction terminated fourteen days after entry of its March 10, 2017 order, and that Glidewell's motion seeking to alter, amend, or vacate the March 10, 2017 order was filed beyond the fourteen-day limit for post-judgment motions.  Id. at 520.  Thus, the appellate court found the June 29, 2017 order void and directed the Juvenile Court to vacate the order.  Id. at 520-21.

In addition to the Alabama litigation between Tunstall and Glidewell, Glidewell sought to enforce some of the Alabama child support orders in Louisiana, Tunstall's state of residence.  (See Doc. 7 at 6-12).

**B. Legal Claims.**

In counts one and two of his operative complaint,[7] Tunstall seeks relief against Defendants Glidewell, Ryan, Edwards, Mosley, and Daigle under 42 U.S.C. § 1983 for alleged violations of his rights under the Fourth and Fourteenth Amendments of the United States Constitution. (Id. at 14-17). In count three, Tunstall claims abuse of process against Glidewell and the Ryan Defendants based on their alleged "fraud" in obtaining the April 2011 default judgment and "abuse and misuse of the Alabama and Louisiana judicial systems and enforcement services" to enforce that judgment. (Id. at 18-20). In count four, Tunstall asserts a defamation claim against Defendants Edwards, Mosley, and Daigle based on their alleged transmission and publication of false information regarding Tunstall's alleged failure to pay child support. (Id. at 20-21). In count five, Tunstall claims "Negligent Infliction of Emotional Distress and Mental Anguish" against all Defendants for their roles in falsifying documents, misusing the Alabama and Louisiana judicial and enforcement systems, and publishing false and defamatory information. (Id. at 21-22). Tunstall seeks "(a) a minimum amount of $2,226,928.84 for actual damages suffered; (b) a minimum of $2,226,928.84 in

---

[7] For the sake of brevity, the Court will refer to Tunstall's third amended complaint simply as the "operative complaint" from this point forward.

compensatory damages for the intentional violation of [his] constitutional rights; (c) a minimum of $6,680,786.52 in punitive damages, (e)[8] a minimum of $11,134,644.20 for [his] past, present and future mental anguish and emotional distress; (f) prejudgment interest; (g) order Secretary, U.S. Department of State fully reinstate [his] passport privileges, and (h) any additional and equitable relief to which [he] may [be] entitled." (Id. at 22).

### III. <u>STANDARDS OF REVIEW</u>

#### A. **Rule 12(b)(1).**[9]

"Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction can be asserted on either facial or factual grounds." <u>Carmichael v. Kellogg, Brown & Root Servs., Inc.</u>, 572 F.3d 1271, 1279 (11th Cir. 2009) (citation omitted). In a facial attack, a court simply must examine the pleading and determine whether the plaintiff has sufficiently alleged a basis for subject matter

---

[8] Tunstall's requests for relief skip directly from (c) to (e). (<u>See</u> Doc. 7 at 22).

[9] The Ryan Defendants purport to bring their motion to dismiss under Rule 12(b)(6) only. (<u>See</u> Doc. 33). However, they adopt the arguments for dismissal set forth in Defendant Edwards' motion to dismiss, including the argument that the <u>Rooker-Feldman</u> doctrine bars Tunstall's claims. (<u>See</u> <u>id.</u> at 10-11; Doc. 27 at 10-11). "The Federal Rule of Civil Procedure [for] challenging the jurisdiction of a federal court under the <u>Rooker-Feldman</u> doctrine is Rule 12(b)(1)." <u>Ali v. U.S. Bank, Nat'l Ass'n</u>, 2012 U.S. Dist. LEXIS 198495, at *7, 2012 WL 13013643, at *3 (N.D. Ga. Oct. 4, 2012) (citation and internal quotation marks omitted), <u>report and recommendation adopted</u>, 2012 U.S. Dist. LEXIS 198485, 2012 WL 13015094 (N.D. Ga. Oct. 24, 2012).

jurisdiction, while accepting the plaintiff's factual allegations as true and construing them most favorably to the plaintiff. Cardwell v. Auburn Univ. Montgomery, 941 F. Supp. 2d 1322, 1327 (M.D. Ala. 2013). A factual attack challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and the court may consider matters outside the pleadings and weigh conflicting evidence. Boglin v. Bd. of Trs. of Ala. Agric. & Mech. Univ., 290 F. Supp. 3d 1257, 1261 (N.D. Ala. 2018). The Court construes the Ryan Defendants' motion as a facial challenge based on the Rooker-Feldman doctrine.[10]

**B.    Rule 12(b)(6).**

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a motion to dismiss an action on the ground that the allegations in the complaint fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). On such a motion, the "issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Little v. City of N. Miami, 805 F.2d 962, 965 (11th Cir. 1986) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). "When considering a motion to dismiss, all facts set

---

[10] "When a district court has pending before it both a 12(b)(1) motion and a 12(b)(6) motion, the generally preferable approach, if the 12(b)(1) motion essentially challenges the existence of a federal cause of action, is for the court to find jurisdiction and then decide the 12(b)(6) motion." Jones v. State of Ga., 725 F.2d 622, 623 (11th Cir. 1984).

forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (per curiam) (quoting GSW, Inc. v. Long Cnty., 999 F.2d 1508, 1510 (11th Cir. 1993)).  The court must draw "all reasonable inferences in the plaintiff's favor." St. George v. Pinellas Cnty., 285 F.3d 1334, 1337 (11th Cir. 2002).  However, the court is not required to accept as true a plaintiff's legal conclusions.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, a complaint must state on its face a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  Unless a plaintiff has "nudged [his] claims across the line from conceivable to plausible," the complaint "must be dismissed." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S at 678 (quoting Twombly, 550 U.S at 556).

**C.   *Pro Se* Litigation.**

When considering a *pro se* litigant's allegations, a court gives them a liberal construction, holding them to a less stringent standard than those drafted by an attorney. Haines v. Kerner, 404

U.S. 519, 520 (1972). However, "this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." <u>GJR Invs., Inc. v. Cnty. of Escambia, Fla.</u>, 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citations omitted), <u>overruled on other grounds as recognized in</u> <u>Randall v. Scott</u>, 610 F.3d 701, 709 (11th Cir. 2010). Furthermore, a *pro se* litigant "is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure." <u>Moon v. Newsome</u>, 863 F.2d 835, 837 (11th Cir. 1989).

### IV. <u>ANALYSIS</u>

#### A. <u>Rooker</u>-<u>Feldman</u> Doctrine, *Res Judicata*, and Collateral Estoppel.

As noted previously, the Ryan Defendants adopt all applicable arguments set forth in Defendant Edwards' motion to dismiss and supporting brief. (<u>See</u> Doc. 33 at 10-11). These include Defendant Edwards' arguments pertaining to the <u>Rooker</u>-<u>Feldman</u> doctrine, *res judicata*, and collateral estoppel, which are not specifically addressed in the Ryan Defendants' motion. (<u>See</u> Doc. 27 at 9-11; Doc. 33). Turning first to the <u>Rooker</u>-<u>Feldman</u> doctrine,[11] the "doctrine eliminates federal court jurisdiction over those cases that are essentially an appeal by a state court loser seeking to

---

[11] The doctrine takes its name from two Supreme Court cases, <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923), and <u>D.C. Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983).

relitigate a claim that has already been decided in a state court."
Target Media Partners v. Specialty Mktg. Corp., 881 F.3d 1279,
1281 (11th Cir. 2018).  A federal court is barred by the Rooker-
Feldman doctrine from adjudicating a claim that was "either (1)
one actually adjudicated by a state court or (2) one 'inextricably
intertwined' with a state court judgment."  Id. at 1286 (citation
omitted).  A claim is "'inextricably intertwined' if it asks to
'effectively nullify the state court judgment, or it succeeds only
to the extent that the state court wrongly decided the issues.'"
Id. (citation omitted).

Tunstall's operative complaint and the exhibits attached
thereto do not reflect that Tunstall is "a state court loser
seeking to relitigate a claim that has already been decided in a
state court."  See id. at 1281.  Tunstall does not allege any error
by the Georgia courts, nor does the complaint indicate that he is
inviting "review and rejection" of any existing Alabama or
Louisiana state court judgment.  Thus, his claims are not barred
by the Rooker-Feldman doctrine.

Turning next to the arguments based on *res judicata* and
collateral estoppel,[12]  Edwards,  and  by  extension  the  Ryan

---

[12] "The doctrine of res judicata, or claim preclusion, bars the
filing of claims which were raised or could have been raised in an
earlier proceeding.  When claim preclusion does not apply to bar
an entire claim or set of claims, the doctrine of collateral
estoppel, or issue preclusion, may still prevent the relitigation
of particular issues which were actually litigated and decided in

Defendants, appear to contend that state court judgments in Alabama, Georgia, and Louisiana bar this action. When a federal court is "asked to give *res judicata* effect to a state court judgment, [it] must apply the *res judicata* principles of the law of the state whose decision is set up as a bar to further litigation." Kizzire v. Baptist Health Sys., Inc., 441 F.3d 1306, 1308 (11th Cir. 2006) (quotation omitted). An essential element of *res judicata* is that the prior action must have involved the same, or substantially the same, parties. See id. at 1308-09; Crowe v. Elder, 723 S.E. 2d 428, 430 (Ga. 2012); Burguieres v. Pollingue, 843 So. 2d 1049, 1053 (La. 2003). The Ryan Defendants do not allege, and there is nothing before the Court that suggests, that they were parties to prior litigation involving Tunstall; thus, *res judicata* does not bar Tunstall's claims against the Ryan Defendants. For the same reasons, the Ryan Defendants have failed to demonstrate that collateral estoppel applies. See Mitchell v. Humana Hosp.-Shoals, 942 F.2d 1581, 1583 (11th Cir. 1991) (listing the four elements of collateral estoppel in Alabama, including: "1. The party claiming the benefit of the prior judgment is one who would have been prejudiced by a contrary decision in the earlier case."); Cmty. State Bank v. Strong, 651 F.3d 1241, 1264 (11th Cir. 2011) ("A party seeking to assert collateral estoppel

---

a prior suit." Citibank, N.A. v. Data Lease Fin. Corp., 904 F.2d 1498, 1501 (11th Cir. 1990).

under Georgia law must demonstrate that (1) an identical issue, (2) between identical parties, (3) was actually litigated and (4) necessarily decided, (5) on the merits, (6) in a final judgment, (7) by a court of competent jurisdiction.") (citations omitted); Sevin v. Par. of Jefferson, 632 F. Supp. 2d 586, 594–95 (E.D. La. 2008) ("[F]our elements must be met before an earlier 'valid and final judgment' will preclude relitigation of an issue: '(1) the parties must be identical; (2) the issue to be precluded must be identical to that involved in the prior action; (3) the issue must have been actually litigated; and (4) the determination of the issue in the prior action must have been necessary to the resulting judgment.'") (citations omitted).

**B.   Failure to State a Claim – 42 U.S.C. § 1983 (Counts One and Two).**

The Ryan Defendants argue that Tunstall has failed to state a claim against Ryan under 42 U.S.C. § 1983 because Ryan is an attorney in private practice and was at no time acting under color of state law.  (Doc. 33 at 8-9).  In order to state a claim under § 1983, a plaintiff must show "(1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under color of state law." Holmes v. Crosby, 418 F.3d 1256, 1258 (11th Cir. 2005).  "Only in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes." Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992); see also

Fla. Country Clubs, Inc. v. Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., 98 F. Supp. 2d 1356, 1365 (M.D. Fla. 2000) ("[I]t is extremely difficult for a plaintiff to satisfy the threshold sufficiency that is necessary for a court to find that a private individual has acted as a state actor for purposes of considering an alleged section 1983 violation.").

The Eleventh Circuit recognizes three distinct tests for establishing state action by what is otherwise a private person or entity: (1) the "State compulsion test," which applies where "the State has coerced or at least significantly encouraged the action alleged to violate the Constitution;" (2) the "public function test," which applies where "the private parties performed a public function that was traditionally the exclusive prerogative of the State;" and (3) the "nexus/joint action test," which applies where "the State had so far insinuated itself into a position of interdependence with the [private parties] that it was a joint participant in the enterprise." Rayburn ex rel. Rayburn v. Hogue, 241 F.3d 1341, 1347 (11th Cir. 2001).

"A private party may also be held liable under § 1983 when he conspires with state actors to violate the plaintiff's constitutional rights." Brown v. Lewis, 361 F. App'x 51, 54 (11th Cir. 2010) (per curiam) (citing Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1283 (11th Cir. 2002)); see also Mann v. Hillsborough Cnty. Sheriff's Office, 946 F. Supp. 962, 967 (M.D.

Fla. 1996) ("The joint action test is satisfied if a 'conspiracy' is shown."). "To establish a conspiracy for § 1983 purposes, 'the plaintiff must plead in detail, through reference to material facts, the relationship or nature of the conspiracy between the state actor(s) and the private persons.'" Brown, 361 F. App'x at 54 (quoting Harvey, 949 F.2d at 1133). "A 'plaintiff attempting to prove such a conspiracy must show that the parties "reached an understanding" to deny the plaintiff his or her rights.'" Dye v. Radcliff, 174 F. App'x 480, 482 (11th Cir. 2006) (per curiam) (quoting NAACP v. Hunt, 891 F.2d 1555, 1563 (11th Cir. 1990)).

Tunstall acknowledges, as he must given the lack of allegations of a conspiracy between Ryan and any state actor, that "[n]either Count I or II of the complaint assert a conspiracy claim under section 1983 against Defendant Ryan." (Doc. 49 at 10). Furthermore, because Ryan's alleged conduct falls squarely within the scope of his representation of Glidewell, Tunstall cannot demonstrate that Ryan is a state actor by virtue of a conspiracy with Glidewell. See O'Boyle v. Sweetapple, 2015 U.S. Dist. LEXIS 192278, at *15-27, 2015 WL 13574304, at *6-8 (S.D. Fla. June 4, 2015) (explaining why attorneys acting within the scope of the attorney-client relationship are not state actors for purposes of § 1983 by virtue of allegedly engaging in a "conspiracy" with their client); Fla. Country Club, Inc., 98 F. Supp. 2d at 1365 (finding that plaintiffs failed to allege sufficient facts to establish

state action by virtue of conspiracy on the part of law firm where plaintiffs failed to show "any action, other than, actions taken by [law firm] as attorneys" for client city); Horen v. Bd. of Educ. of Toledo City Sch. Dist., 594 F. Supp. 2d 833, 842 (N.D. Ohio 2009) (dismissing § 1983 claim because an "attorney representing a client cannot 'conspire' within the attorney-client relationship"); Lewis v. Montgomery Cnty., 2002 U.S. Dist. LEXIS 11256, at *3-4, 2002 WL 32349408, at *1 (E.D. Pa. Apr. 8, 2002) (dismissing plaintiff's § 1983 suit against lawyer and law firm representing plaintiff's ex-wife in child support case for allegedly conspiring with ex-wife, judge, and other defendants to cause plaintiff to be arrested based on an invalid bench warrant because they were not state actors and could not form a conspiracy when acting in the attorney-client context); see also Farese v. Scherer, 342 F.3d 1223, 1232 (11th Cir. 2003) (relying on the Third Circuit's opinion in Heffernan v Hunter, 189 F.3d 405 (3d Cir. 1999), and holding "that as long as an attorney's conduct falls within the scope of the representation of his client, such conduct is immune from an allegation of a § 1985 conspiracy"); Singleton v. Pittsburgh Bd. of Educ., 2012 U.S. Dist. LEXIS 132163, at *20 n.8, 2012 WL 4063174, at *6 n.8 (W.D. Pa. Aug. 24, 2012) (noting that the holding of Heffernan "applies equally to civil rights actions under Section 1983") (citing N'Jai v. Floyd, 386 F. App'x 141, 144 (3d Cir. 2010) (per curiam)), report and recommendation

adopted, 2012 U.S. Dist. LEXIS 132494, 2012 WL 4069476 (W.D. Pa. Sept. 14, 2012).

Because Tunstall does not allege a conspiracy between Ryan and any state actor, the Court must determine whether the complaint plausibly alleges facts against Ryan that would otherwise satisfy the State compulsion, public function, or nexus/joint action tests. The first two of these tests are clearly not met because Tunstall does not, and could not plausibly, allege that the State coerced or encouraged Ryan's alleged actions, or that Ryan's legal representation of Glidewell, a private client, is traditionally an exclusive state prerogative. See Hall v. Tallie, 2014 U.S. Dist. LEXIS 31364, 2014 WL 931958, at *7 (N.D. Ala. Mar. 10, 2014) (noting that "to constitute state action under the public function doctrine, private conduct must not only be something the government traditionally does, but it must also be something that _only_ the government traditionally does") (quoting Szekeres v. Schaeffer, 304 F. Supp. 2d 296 (D. Conn. 2004)), aff'd, 597 F. App'x 1042 (11th Cir. 2015).

With regard to the nexus/joint action test, the relevant question, as noted, is whether "the State has so far insinuated itself into a position of interdependence with the [private parties] that it was a joint participant in the enterprise." NBC, Inc. v. Commc'ns Workers of Am., 860 F.2d 1022, 1026-27 (11th Cir. 1988). "To charge a private party with [S]tate action under this

21

standard, the governmental body and private party must be intertwined in a 'symbiotic relationship.'" Id. at 1027 (quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 357 (1974)). "The Supreme Court has indicated that the symbiotic relationship must involve the specific conduct of which the plaintiff complains." Rayburn, 241 F.3d at 1348 (citations and internal quotation marks omitted).

The specific conduct by Ryan of which Tunstall complains is initiating and litigating a legal action, and pursuing enforcement of court-established child support obligations, on behalf of one private party against another private party, and Tunstall's allegations fail to plausibly establish that the state "insinuated itself" with Ryan as a joint participant in the enterprise. See Davis v. Self, 547 F. App'x 927, 934 (11th Cir. 2013) (per curiam) ("The district court correctly held that neither [the public function nor the nexus/joint action] test was satisfied here because 'Defendants Davis and Austin are simply private attorneys acting on behalf of their client, . . . who is a private citizen enmeshed in a bitter custody and child support dispute with her former husband.' . . . Their successful attempts to litigate these issues in Alabama state court do not somehow transform these private individuals into state actors."); see also Fischer v. Dep't of Children & Family Servs., 2007 U.S. Dist. LEXIS 5203, at *9-10, 2007 WL 201090, at *3 (M.D. Fla. Jan. 24, 2007) ("An attorney

representing a client and performing traditional attorney functions are not state actors and are not acting under color of state law."); Robinson v. Bernie, 2007 U.S. Dist. LEXIS 869, 2007 WL 80870, at *1 (S.D. Ga. Jan. 8, 2007) ("[I]t is well settled that an attorney, whether court-appointed or privately retained, does not qualify as a state actor for purposes of § 1983 liability."); Wilson v. Bush, 196 F. App'x 796, 798 (11th Cir. 2006) (per curiam) (holding that none of the three tests for establishing state action was met when the defendant "was acting as attorney for a private party when he filed a quiet-title action on behalf of his client"); Yeh Ho v. Sabocik, 775 F. App'x 551, 554 (11th Cir. 2019) (per curiam) ("The fact that the defendants engaged in the state-court process and obtained court orders is insufficient to make them state actors."). Because Tunstall's complaint fails to allege facts showing that Ryan acted under color of state law, his § 1983 claims against Ryan are due to be dismissed.

### C. Failure to State a Claim — Abuse of Process (Count Three).

The Ryan Defendants assert that Tunstall fails to state a claim for abuse of process because he does not allege that they failed to confine case CS-95-166.04 "to its regular and legitimate function in relation to the cause of action stated in the" Petition for Rule Nisi and Entry of Judgment. (See Doc. 33 at 9-10).

Under Alabama law, "[t]he elements of the tort of abuse of process are 1) the existence of an ulterior purpose, 2) a wrongful use of process, and 3) malice." C.C. & J., Inc. v. Hagood, 711 So. 2d 947, 950 (Ala. 1998). "Although the Alabama Supreme Court has not expressly said as much, it is well settled that the tort of abuse of process is disfavored because of its chilling effect on the exercise of one's right of access to courts." Odom v. Se. Supply Header, LLC, 2010 U.S. Dist. LEXIS 42689, at *15, 2010 WL 1780367, at *4 (S.D. Ala. Apr. 29, 2010), aff'd, 418 F. App'x 871 (11th Cir. 2011).

"With regard to the 'wrongful use of process' element, Alabama courts require a showing that the defendant's conduct 'culminate[d] in an actual abuse of the process by perverting it to a use to obtain a result which the process was not intended by law to effect.'" Id., 2010 U.S. Dist. LEXIS 42689, at *17, 2010 WL 1780367, at *4 (quoting Hollander v. Nichols, 19 So. 3d 184, 193 (Ala. 2009)). There is no liability for abuse of process "where the defendant has done nothing other than carry out the process to its authorized conclusion, even though with bad intentions.'" Hagood, 711 So. 2d at 951 (quoting W. Page Keeton et al., *Prosser and Keeton on Torts*, § 121, at 898 (5th ed. 1984)). The plaintiff "must prove that the defendant 'somehow acted outside the boundaries of legitimate procedure after the [initiation of the proceeding].'" Shoney's, Inc. v. Barnett, 773 So. 2d 1015,

1025 (Ala. Civ. App. 1999) (quoting Hagood, 711 So. 2d at 951).

"'If the action is confined to its regular and legitimate function in relation to the cause of action stated in the complaint there is no abuse . . . .'" Dempsey v. Denman, 442 So. 2d 63, 65 (Ala. 1983) (quoting 1 Am. Jur. 2d *Abuse of Process* § 13 (1962)); see also Wilcon, Inc. v. Travelers Indem. Co., 654 F.2d 976, 984 (5th Cir. 1981) ("Regardless of the defendant's motivation and no matter how malicious his intent, the plaintiff must still show that the defendant did not use the process at issue primarily to effectuate the remedy contemplated by the statute.").

In light of the foregoing, the critical question is whether Tunstall has plausibly alleged that the Ryan Defendants "somehow acted outside the boundaries of legitimate procedure after the [initiation of the proceeding]" and perverted the legal process "to obtain a result which the process was not intended by law to effect." Hagood, 711 So. 2d at 951-52; Willis v. Parker, 814 So. 2d 857, 865-66 (Ala. 2001); Haynes v. Coleman, 30 So. 3d 420, 426 (Ala. Civ. App. 2009).

The Ryan Defendants contend that the wrongful use of process element is not satisfied because their alleged actions after the filing of the Petition for Rule Nisi and Entry of Judgment in case CS-95-166.04 were legitimate functions in relation to the cause of action stated in the petition. (Doc. 33 at 10). Tunstall argues that the complaint alleges facts from which the Court can conclude

that the underlying suits were brought for collateral purposes, and not to recover on the cause of action stated in the petition. (Doc. 49 at 15-16).  With respect to the wrongful use of process element specifically, Tunstall points to his allegation that "Defendants Glidewell and Ryan initiated . . . a Petition for Rule Nisi and Entry of Judgment, . . . wherein it was alleged Plaintiff failed to pay $24,000.00 in child support between September 25, 1992 – October 13, 1994."  (Id. at 15) (citing Doc. 7 at 7). Tunstall maintains that the "suit was not commenced for the stated reason, but rather, to pervert the judicial process and defraud Plaintiff of $171,680.62."  (Doc. 49 at 15).

By focusing on Glidewell and Ryan's allegedly wrongful initiation of proceedings in case CS-95-166.04, Tunstall misconstrues the nature of an abuse of process claim.  "Wrongful activity designed to create a claim[13] goes to the initiation of process, not to its later use."  Hagood, 711 So. 2d at 951.  "[A]ny question about the initiation of a judicial proceeding is encompassed in a malicious prosecution claim, not an abuse of process claim."  Id.  "[A]buse of process concerns the wrongful use of process after it has been issued."  Id. at 950; see also Restatement (Second) of Torts § 682 cmt. a (1977) (noting that the "gravamen" of an abuse of process claim "is not the wrongful

---

[13] For example, "manufactur[ing] evidence."  See Hagood, 711 So. 2d at 951.

procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process . . . for any purpose other than that which it was designed to accomplish"); Vanover v. Cook, 260 F.3d 1182, 1191 (10th Cir. 2001) ("No liability accrues for abuse of process where the defendant institutes a lawsuit to obtain damages or a collection procedure to recover a debt, even though the process is instituted with bad intentions or without probable cause.").

In the "Factual Background" section of his complaint, Tunstall asserts that Glidewell and Ryan initiated a legal action (case CS-95-166.04) by filing a Petition for Rule Nisi and Entry of Judgment alleging that Tunstall failed to pay $24,000 in child support between September 25, 1992 and October 13, 1994, and that they obtained a default judgment against Tunstall in that action for $171,680.62 in child support arrears, attorney's fees, and costs. (Doc. 7 at 7). Tunstall further alleges that Glidewell, under Ryan's direction and guidance, registered that default judgment in Baldwin County Probate Court and requested enforcement of the judgment in Louisiana. (Id. at 7-8). Tunstall also alleges that Glidewell and Ryan "continued to unlawfully use the Alabama and Louisiana enforcement services and judicial systems to enforce" the default judgment. (Id. at 18-19).

Regardless of whether Glidewell and Ryan had a valid basis for initiating case CS-95-166.04 by filing the Petition for Rule

Nisi and Entry of Judgment, all of Ryan's alleged actions after the initiation of the proceeding were regular and legitimate functions in relation to the action for unpaid child support set forth in the petition. See Whitted v. Jordan, 2019 U.S. Dist. LEXIS 99650, at *20, 2019 WL 2475905, at *8 (W.D. Wash. June 13, 2019) ("Mr. Whitted has not presented any evidence that Ms. Jordan, and by extension the MBK Defendants, filed the King County action with an ulterior purpose to accomplish an objective not within the scope of the litigation. In that lawsuit, Ms. Jordan sought to modify the existing child-support order, obtain a judgment against Mr. Whitted for $ 165,765.54 in unpaid child support payments, hold Mr. Whitted in contempt for failing to pay child support, and reduce the division of retirement assets required by the divorce decree to an offsetting judgment. . . . These were all legitimate objectives expressly provided for by Washington law."); Lemon v. Kramer, 270 F. Supp. 3d 125, 143–44 (D.D.C. 2017) ("Here, Mr. Lemon has not alleged that Defendants sought a 'collateral thing which [Mr. Lemon] could not legally and regularly be compelled to do.' . . . Maryland state courts regularly and legally determine custody, order child support, and jail parents for contempt when they fail to pay child support in certain circumstances. Thus, Mr. Lemon fails to state a claim for relief for abuse of process . . . .") (internal citations omitted); Culver v. Culver, 2008 Conn. Super. LEXIS 2618, at *11, 2008 WL 4779860, at *4 (Conn.

Super. Ct. Oct. 16, 2008) ("Because the gravamen of the action for abuse of process is the use of 'a legal process . . . against another primarily to accomplish a purpose for which it is not designed,' 3 Restatement (Second), Torts § 682 (1977); this court must examine the purpose for which the process at issue in this case, namely a motion for contempt to collect child support, is designed. Essentially, the purpose of a motion for contempt is to provide a means for a party to recover unpaid child support, the liability for, and amount of which, has to [be] determined by a court. Accordingly, the defendant's claim for abuse of process fails."), decision clarified, 2009 Conn. Super. LEXIS 1628, 2009 WL 2035635 (Conn. Super. Ct. June 15, 2009), and aff'd, 127 Conn. App. 236, 17 A.3d 1048 (2011); see also Self, 547 F. App'x at 934 (finding plaintiff's allegations that his ex-wife "engaged in 'forum shopping' and presented 'fraudulent information, provided material misrepresentations of fact, and committed felony perjury'" in custody and child support proceedings insufficient to "give rise to an abuse of process claim under Alabama law"). In other words, Tunstall contends that Ryan pursued his client's claim for unpaid child support set forth in the Petition for Rule Nisi and Entry of Judgment in order to recover the alleged arrearages, costs, and attorney's fees encompassed in the default judgment, rather than for a collateral or extraneous purpose such as extortion. Accordingly, Tunstall has not plausibly alleged that

the Ryan Defendants' post-issuance-of-process conduct constitutes wrongful use of process, and he therefore fails to state a claim for abuse of process.

**D. Failure to State a Claim – "Negligent Infliction of Emotional Distress and Mental Anguish" (Count Five).**

Tunstall labels count five of his complaint one for "Negligent Infliction of Emotional Distress and Mental Anguish." (See Doc. 7 at 21). The Ryan Defendants argue that since Alabama does not recognize a cause of action for negligent infliction of emotional distress, count five fails to state a claim and should be dismissed. (Doc. 33 at 9). Indeed, "[t]he Supreme Court of Alabama has held: 'There is no cause of action for the *negligent* infliction of emotional distress.'" Taylor v. Alabama, 95 F. Supp. 2d 1297, 1318 (M.D. Ala. 2000) (quoting Allen v. Walker, 569 So. 2d 350, 352 (Ala. 1990) (emphasis in original)). Tunstall contends that despite the "scriveners error" in the heading of count five, its factual allegations establish a claim for *intentional* infliction of emotional distress, a cause of action that is recognized under Alabama law. (Doc. 49 at 12-13).

The Court agrees that Tunstall's complaint, including count five, unmistakably alleges conduct that was knowing and intentional rather than negligent. Therefore, the Court declines to place form over substance and construes count five to bring a claim for intentional infliction of emotional distress. See, e.g.,

Pool Fact Indus., L.L.C. v. Turbotec Prods., Inc., 2008 U.S. Dist. LEXIS 130551, at *5 n.1, 2008 WL 11330716, at *2 n.1 (S.D. Fla. Mar. 3, 2008) ("Since a court looks at the substance of the count rather than its label, it is not important that Count IV was labeled 'Defective Design and/or Manufacture.'") (citing Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242, 1253 n.11 (11th Cir. 2005)).

"Under Alabama law, the so-called 'tort of outrage' and an action for the intentional infliction of emotional distress are conceptually deemed to be synonymous." Blow v. Va. Coll., 2012 U.S. Dist. LEXIS 180692, at *6, 2012 WL 6685683, at *2 (N.D. Ala. Dec. 21, 2012) (citations omitted).

> The tort of outrage has the following elements: (1) the defendant must have intended to inflict emotional distress, or should have known that his or her acts would result in emotional distress; (2) the act must be extreme and outrageous; (3) the act must have caused plaintiff's distress; and (4) plaintiff's emotional distress must have been so severe that no reasonable person could be expected to endure it.

K.M. v. Ala. Dep't of Youth Servs., 360 F. Supp. 2d 1253, 1259 (M.D. Ala. 2005) (citing Harrelson v. R.J., 882 So. 2d 317, 322 (Ala. 2003)). "The tort of outrage is an extremely limited cause of action." Potts v. Hayes, 771 So. 2d 462, 465 (Ala. 2000). "By far the most significant element, normally dispositive of a plaintiff's prospects of recovery, is that dealing with the nature of the defendant's conduct as being sufficiently outrageous and

extreme." Davis v. Self, 960 F. Supp. 2d 1276, 1311 (N.D. Ala. 2013) (quoting 1 Michael L. Roberts & Gregory S. Cusimano, Alabama Tort Law § 23.01 (4th ed. 2004)), aff'd, 547 F. App'x 927 (11th Cir. 2013).

While the Ryan Defendants do not argue that the conduct alleged in Tunstall's operative complaint is insufficiently extreme and outrageous to support a tort of outrage claim under Alabama law, they have, as noted *supra*, adopted the arguments of Defendant Edwards, who does make that argument. (See Doc. 27 at 13; Doc. 33 at 9, 11). As argued by Defendant Edwards, Alabama has applied the tort of outrage primarily in three limited circumstances: "(1) wrongful conduct in the family-burial context; (2) barbaric methods employed to coerce an insurance settlement; and (3) egregious sexual harassment." See Potts, 771 So. 2d at 465 (internal citations omitted). While the Alabama Supreme Court has clarified that the tort of outrage is not viable *only* in those three circumstances, see, e.g., Little v. Robinson, 72 So. 3d 1168, 1172-73 (Ala. 2011), it is clear that "the tort of outrage is viable only when the conduct is so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." Id. at 1173 (citations and internal quotation marks omitted).

Accepting as true Tunstall's allegations against the Ryan Defendants, the undersigned finds they fall short of stating a claim for the tort of outrage in Alabama. Indeed, the Eleventh Circuit has affirmed the dismissal of an outrage claim based on similar allegations of a conspiracy to improperly influence child support orders. See Davis, 547 F. App'x at 935. Accordingly, Tunstall's outrage claim against the Ryan Defendants is due to be dismissed.[14]

## V.    CONCLUSION

For the reasons set forth above, the undersigned **RECOMMENDS** that the Ryan Defendants' motion to dismiss (Doc. 33) be **GRANTED.**

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the

---

[14] In light of the Court's holding that Tunstall's claims against the Ryan Defendants are due to be dismissed, it is not necessary to address the Ryan Defendants' statute of limitations arguments.

provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **21st** day of **July, 2020.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**
