IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

THOMAS T. TUNSTALL, V,           *
                                 *
        Plaintiff,               *
                                 *
vs.                              *    CIVIL ACTION NO. 18-00356-KD-B
                                 *
KIMBERLY M. GLIDEWELL, *et al.*, *
                                 *
        Defendants.              *

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant Kimberly M. Glidewell's motion to dismiss. (Doc. 73). The motion, which has been fully briefed, has been referred to the undersigned Magistrate Judge for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(S). Upon consideration of all matters presented, the undersigned recommends, for the reasons stated herein, that Defendant Glidewell's motion be **GRANTED in part** and **DENIED in part**.

## I. PROCEDURAL BACKGROUND

Plaintiff Thomas T. Tunstall, V ("Tunstall") commenced this action on August 13, 2018 by filing a sixty-four-page, fifteen-count *pro se* complaint that named as Defendants Tunstall's former wife, Kimberly M. Glidewell ("Glidewell"); Glidewell's attorney, Mark D. Ryan ("Ryan"); Baldwin County, Alabama Circuit Court Judge Carmen E. Bosch; Baldwin County Assistant District Attorney Harry M. D'Olive, Jr.; Baldwin County Department of Human Resources

employees Kelley O. Edwards ("Edwards") and Cynthia T. Mosley ("Mosley"); and "Defendants A to E", who were alleged to be employees of the Baldwin County Department of Human Resources who "were principal to and[/]or acted in collusion with" the other named Defendants.  (Doc. 1).[1]

Tunstall then filed a motion for leave to file a first amended complaint, along with a proposed first amended complaint.  (Docs. 3, 3-1).  Without waiting for a ruling on the motion, Tunstall filed a second motion for leave to amend his complaint, along with a proposed second amended complaint comprising ninety-eight pages and twelve counts.  (Doc. 4).  The Court observed that none of Tunstall's pleadings, i.e., the complaint and the first and second amended complaints, constituted a "short and plain statement" of his claims as required by Federal Rule of Civil Procedure 8(a), but were instead "shotgun" style pleadings.  Accordingly, Tunstall was directed to file a third amended complaint that complied with the Federal rules referenced in the Court's order, did not exceed twenty-five pages, and provided a short and plain statement of his claims.  (Doc. 5).

Pursuant to the Court's directive, Tunstall filed a third amended complaint.  (Doc. 7).  Tunstall's third amended complaint

---

[1] Tunstall also filed a motion to proceed without prepayment of fees.  (Doc. 2).  Tunstall's initial motion was denied; however, at the Court's directive, he filed a new motion to proceed without prepayment of fees, and it was granted.  (Docs. 5, 8, 9).

names as Defendants Glidewell; Ryan; Mark D. Ryan, P.C.; Ryan & Wilkes, P.C.; Edwards; Mosley; and Hope Theriot Daigle ("Daigle"),[2] an employee of the Louisiana Department of Children & Family Services. (Doc. 7 at 1-4). After the third amended complaint was filed, summonses were issued and each of the named Defendants were served. (See Docs. 10, 11, 12, 13, 15, 16, 53, 65).

Presently before the Court is Glidewell's motion to dismiss, along with her brief in support.[3] (Docs. 73, 73-1). In her motion, Glidewell asserts that Tunstall's claims are barred by the Rooker-Feldman doctrine, and that Tunstall fails to state claims upon which relief can be granted for violation of his constitutional rights under 42 U.S.C. § 1983, infliction of emotional distress, and abuse of process. (Doc. 73-1 at 5-8, 10-12). Glidewell also contends that Tunstall's claims for injuries that occurred more than two years prior to the commencement of this action are time-barred. (Id. at 8-10). Tunstall filed a response and a supporting brief in opposition, and Glidewell filed a reply. (Docs. 75, 76, 77, 78). Glidewell's motion to dismiss has been referred to the

---

[2] The third amended complaint refers to Defendant Daigle as "Hope [Theriot] Diagle." (See Doc. 7). Tunstall now appears to acknowledge that "Daigle" is the correct spelling. (See Doc. 57).

[3] The other Defendants in this case have also filed motions to dismiss Tunstall's third amended complaint (Docs. 26, 33, 51, 62), which the undersigned has addressed or will address in separate reports and recommendations.

undersigned for entry of a report and recommendation and is now ripe for resolution.

## II. **FACTUAL BACKGROUND**[4]

This case arises from a longstanding dispute over child support dating back to Tunstall and Glidewell's divorce in the early 1990s. In this lawsuit, Tunstall alleges that Glidewell, his former wife, with help from the other Defendants, falsified child support records and instituted a series of fraudulent legal and enforcement actions against him in an effort to facilitate Glidewell's collection of child support payments from Tunstall that he did not in fact owe.

### A. **Litigation History.**

The litigation between Tunstall and his former spouse, Glidewell, is summarized in an opinion by the Alabama Court of Civil Appeals as follows:

> In 1994, [Tunstall] and [Glidewell] were divorced by a judgment of a Georgia court ('the Georgia judgment'). At the time the Georgia judgment was entered, the parties had two minor children. At some point thereafter, proceedings involving the parties were commenced in the [Baldwin County, Alabama Juvenile Court] involving the Georgia judgment. Those proceedings were assigned case no. CS-95-166. On June 30, 1995, the [Baldwin County, Alabama Juvenile Court] entered an order in case no. CS-95-166 directing [Tunstall] to pay child support in the amount of $370 per month beginning on July 1, 1995. In that order, the [Baldwin County, Alabama Juvenile Court] also found [Tunstall] to be in arrears on his child-

---

[4] For purposes of resolving Glidewell's motion to dismiss, the Court accepts as true the facts alleged in Tunstall's third amended complaint.

support obligation in the amount of $328. On the same day, the [Baldwin County, Alabama Juvenile Court] entered an income-withholding order directing [Tunstall]'s employer to deduct the monthly amount of [Tunstall]'s child-support obligation from [Tunstall]'s income.

At some undetermined point thereafter, [Glidewell] apparently filed a petition for a finding of contempt against [Tunstall] based on his alleged failure to pay child support. The proceedings arising from that petition were docketed as case no. CS-95-166.02. On January 26, 2004, the [Baldwin County, Alabama Juvenile Court] entered an order in case no. CS-95-166.02 directing [Tunstall] to pay $3,296.08 to purge himself of contempt of court.

On April 14, 2004, [Glidewell] filed a petition for a finding of contempt against [Tunstall] and for a modification of the Georgia judgment. The proceedings arising from that petition were docketed [as] case no. CS-95-166.03. A notation in the record indicates that that case was voluntarily dismissed by [Glidewell] on July 20, 2004.

[Glidewell] apparently commenced another contempt action at some later point, which was docketed as case no. CS-95-166.04. On April 18, 2011, the [Baldwin County, Alabama Juvenile Court] entered a [default] judgment in case no. CS-95-166.04 stating as follows:

. . . .

> "1. Default Judgment is granted in favor of [Glidewell] and against [Tunstall] in the amount of $171,680.62, which includes the following amounts: $170,758.97 (child support arrearage plus interest); $750.00 (reasonable attorney's fees); and $171.65 (costs of court), for which execution shall issue."

On April 21, 2014, [Tunstall] filed an independent action in the [Baldwin County, Alabama Juvenile Court] seeking relief pursuant to Rule 60(b), Ala. R. Civ. P., from the April 18, 2011, judgment entered in case no. CS-96-166.04, and the [Baldwin County, Alabama Juvenile Court]-court clerk docketed that action as case no. CS-95-166.05. In his request for relief, [Tunstall]

contended that he had been served with the summons and the contempt petition filed by [Glidewell] in case no. CS-95-166.04 but that he did not receive notice of the final hearing held on April 8, 2011. As a result of his failure to appear, he contended, the [Baldwin County, Alabama Juvenile Court] entered the default judgment in the amount of $171,680.62. He contended that he owed

> "no child support arrearage, which can be verified through the attached Court orders, and other documents and therefore the Final Judgment entered on April 18, 2011, must be a mistake, clerical error, or supported by fraudulent evidence and testimony. Furthermore, the Final Judgment entered on April 18, 2011, is unconscionable and not in furtherance of justice."

. . . .

On [August 28, 2014, after a] hearing, the [Baldwin County, Alabama Juvenile Court] entered an order denying [Tunstall]'s request for relief pursuant to Rule 60(b). [Tunstall] filed a timely notice of appeal to [the Alabama Court of Civil Appeals] on September 9, 2014.

T.T. v. K.M.G., 186 So. 3d 472, 473-75 (Ala. Civ. App. 2015).

The record reflects that the Alabama Court of Civil Appeals dismissed Tunstall's appeal on the ground that his motion for relief under Rule 60(b)(6) was untimely and that as a result, the Baldwin County Juvenile Court had acted without jurisdiction when it issued its order dated August 28, 2014.  Id. at 477; (Doc. 7-7 at 2).  Accordingly, the appellate court directed the Juvenile Court to vacate its order of August 28, 2014.  T.T., 186 So. 3d at 477.

Subsequent thereto, Tunstall returned to the Juvenile Court and sought relief from the judgments in the previous proceedings

between him and Glidewell on the ground that the Juvenile Court lacked subject matter jurisdiction and as a result, the prior judgments were void. (Doc. 7-7 at 2). In an order dated March 10, 2017, the Juvenile Court determined that because the original Final Judgment of Divorce and Separation Agreement from Georgia were never domesticated or registered as foreign decrees, the Juvenile Court had lacked subject matter jurisdiction such that the orders to modify the original order or hold Tunstall in contempt were void. (Doc. 7 at 10; Doc. 7-7 at 3). The Juvenile Court thus vacated all orders and judgments in cases CS-95-166.00, .01, .02, .03, and .04. (Id.).

Glidewell then filed a motion requesting that the Juvenile Court alter, amend, or vacate its order finding lack of subject matter jurisdiction, and in response, Tunstall sought to have Glidewell's motion stricken. Ex parte T.T.T., 249 So. 3d 514, 518 (Ala. Civ. App. 2017). The Juvenile Court held a hearing, and in an order dated June 29, 2017, determined that it did in fact have subject matter jurisdiction when the support order was issued in 1995 because Alabama was the home state of the children, both parents resided in Alabama, and Alabama had provided benefits to the children. Id. at 519. However, the Juvenile Court found that the default judgment entered in case CS-95-166.04 was void, because it purported to calculate an arrearage from a Georgia court order that had never been registered in Alabama. Id. The Juvenile Court

granted Glidewell's motion to alter, amend, or vacate the court's order dated March 10, 2017 and held that Tunstall was in arrears in child support in the amount of $3,103.92 and interest of $7,023.95.  Id.

Tunstall sought relief from the Alabama Court of Civil Appeals on the ground that the Juvenile Court lacked jurisdiction to enter the June 29, 2017 order granting Glidewell's post-judgment motion. Id. at 515.  The Alabama Court of Civil Appeals held that the Juvenile Court's jurisdiction terminated fourteen days after entry of its March 10, 2017 order, and that Glidewell's motion seeking to alter, amend, or vacate the March 10, 2017 order was filed beyond the fourteen-day limit for post-judgment motions.  Id. at 520.  Thus, the appellate court found the June 29, 2017 order void and directed the Juvenile Court to vacate the order.  Id. at 520-21.

In addition to the Alabama litigation that has transpired between Tunstall and Glidewell, Tunstall alleges that he was the subject of various legal actions attempting to establish and enforce child support obligations in Louisiana, his state of residence.  (See Doc. 7 at 6-12).

**B.    Legal Claims.**

In counts one and two of his operative complaint,[5] Tunstall seeks relief against Defendants Glidewell, Ryan, Edwards, Mosley, and Daigle[6] under 42 U.S.C. § 1983 for alleged violations of his constitutional rights under the Fourth and Fourteenth Amendments. (Id. at 14-17).  In count three, Tunstall brings a claim for abuse of process against Glidewell, Ryan, Mark D. Ryan, P.C., and Ryan & Wilkes, P.C., based on their alleged "fraud" in obtaining the April 2011 default judgment and their "abuse and misuse of the Alabama and Louisiana judicial systems and enforcement services" to enforce that judgment.  (Id. at 18-20).  In count four, Tunstall asserts a claim for defamation against Edwards, Mosley, and Daigle, and in count five, he makes what the Court construes as a claim for intentional infliction of emotional distress against all Defendants for their roles in allegedly falsifying documents, misusing state judicial and child support enforcement systems, and publishing false and defamatory information.  (Id. at 20-22).

---

[5] For the sake of brevity, the Court will simply refer to Tunstall's third amended complaint as the "operative complaint" from this point forward.

[6] All of Tunstall's claims are asserted against the Defendants in their individual capacities only.  (See Doc. 7 at 14-21).

### III. <u>**STANDARDS OF REVIEW**</u>

#### A.   **Rule 12(b)(1).**

Federal Rule of Civil Procedure 12(b)(1) authorizes a motion to dismiss an action if the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). In her motion to dismiss, Glidewell contends that Tunstall's claims are barred by the <u>Rooker-Feldman</u> doctrine. (Doc. 73-1 at 10-11). The applicable rule for Glidewell's challenge to this Court's jurisdiction based on the <u>Rooker-Feldman</u> doctrine is Rule 12(b)(1). See <u>Ali v. U.S. Bank, Nat'l Ass'n</u>, 2012 U.S. Dist. LEXIS 198495, at *7, 2012 WL 13013643, at *3 (N.D. Ga. Oct. 4, 2012) ("The Federal Rule of Civil Procedure [for] challenging the jurisdiction of a federal court under the <u>Rooker-Feldman</u> doctrine is Rule 12(b)(1).") (quotation omitted), <u>report and recommendation adopted</u>, 2012 U.S. Dist. LEXIS 198485, 2012 WL 13015094 (N.D. Ga. Oct. 24, 2012); <u>Smith v. Wells Fargo Bank, N.A.</u>, 2017 U.S. Dist. LEXIS 130707, at *13 n.7, 2017 WL 3882525, at *5 n.7 (M.D. Ala. Aug. 15, 2017) ("Although district courts have dismissed complaints under the <u>Rooker-Feldman</u> doctrine pursuant to Federal Rule of Civil Procedure 12(b)(6), it seems that the correct disposition, when the <u>Rooker-Feldman</u> doctrine applies, is an order under Federal Rule of Civil Procedure 12(b)(1) dismissing the suit for lack of subject-matter jurisdiction."), <u>report and recommendation adopted</u>, 2017 U.S. Dist. LEXIS 142886, 2017 WL 3882516 (M.D. Ala. Sept. 5, 2017).

"Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction can be asserted on either facial or factual grounds." Carmichael v. Kellogg, Brown & Root Services, Inc., 572 F.3d 1271, 1279 (11th Cir. 2009) (citation omitted).  In a facial attack, a court simply must examine the pleading and determine whether the plaintiff has sufficiently alleged a basis for subject matter jurisdiction, while accepting the plaintiff's factual allegations as true and construing them most favorably to the plaintiff. Cardwell v. Auburn Univ. Montgomery, 941 F. Supp. 2d 1322, 1327 (M.D. Ala. 2013).  A factual attack challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and the court may consider matters outside the pleadings and weigh conflicting evidence.  Boglin v. Bd. of Trs. of Ala. Agric. & Mech. Univ., 290 F. Supp. 3d 1257, 1261 (N.D. Ala. 2018). The challenge presently before the Court is a facial challenge regarding the applicability of the Rooker-Feldman doctrine.[7]

**B.   Rule 12(b)(6).**

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a motion to dismiss an action on the ground that the allegations in the complaint fail to state a claim upon which

---

[7] "When a district court has pending before it both a 12(b)(1) motion and a 12(b)(6) motion, the generally preferable approach, if the 12(b)(1) motion essentially challenges the existence of a federal cause of action, is for the court to find jurisdiction and then decide the 12(b)(6) motion."  Jones v. State of Ga., 725 F.2d 622, 623 (11th Cir. 1984).

relief can be granted. Fed. R. Civ. P. 12(b)(6). On such a motion, the "issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Little v. City of N. Miami, 805 F.2d 962, 965 (11th Cir. 1986) (per curiam) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (per curiam) (quoting GSW, Inc. v. Long Cnty., 999 F.2d 1508, 1510 (11th Cir. 1993)). The court must draw "all reasonable inferences in the plaintiff's favor." St. George v. Pinellas Cnty., 285 F.3d 1334, 1337 (11th Cir. 2002). However, the court is not required to accept as true a plaintiff's legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001) (quotation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (internal citations and parentheticals omitted).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570.  Unless a plaintiff has "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Id.

Unsupported conclusions of law or of mixed fact and law will not defeat a Rule 12(b)(6) motion for dismissal. Dalrymple v. Reno, 334 F.3d 991, 996 (11th Cir. 2003).  Thus, the Court engages in a two-pronged approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

   C.   *Pro Se* **Litigation**.

When considering a *pro se* litigant's allegations, a court gives them a liberal construction, holding them to a less stringent standard than those drafted by an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972).  However, "this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." GJR Invs., Inc. v. Cnty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citations omitted), overruled on other grounds as recognized in Randall v. Scott, 610 F.3d 701, 709 (11th Cir. 2010).  Furthermore, a *pro se* litigant

13

"is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure." <u>Moon v. Newsome</u>, 863 F.2d 835, 837 (11th Cir. 1989).

IV. **<u>ANALYSIS</u>**

A.   **<u>Rooker</u>-<u>Feldman</u> Doctrine.**

"The <u>Rooker</u>-<u>Feldman</u> doctrine[8] eliminates federal court jurisdiction over those cases that are essentially an appeal by a state court loser seeking to relitigate a claim that has already been decided in a state court." <u>Target Media Partners v. Specialty Mktg. Corp.</u>, 881 F.3d 1279, 1281 (11th Cir. 2018). The purpose of the doctrine is "to ensure that the inferior federal courts do not impermissibly review decisions of the state courts—a role reserved to the United States Supreme Court." <u>Id.</u> "Application of <u>Rooker-Feldman</u> is a threshold jurisdictional matter." <u>Cavero v. One West Bank FSB</u>, 617 F. App'x 928, 929 (11th Cir. 2015) (per curiam).

In <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280 (2005), the Supreme Court concluded that the lower federal courts had been applying <u>Rooker</u>-<u>Feldman</u> too broadly and clarified that federal district courts should apply the doctrine only to those "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court

---

[8] The doctrine takes its name from two Supreme Court cases, <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923), and <u>D.C. Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983).

proceedings commenced and inviting district court review and rejection of those judgments." Target Media Partners, 881 F.3d at 1285 (quoting Exxon Mobil, 544 U.S. at 284).

A federal court is barred by the Rooker-Feldman doctrine from adjudicating a claim that was "either (1) one actually adjudicated by a state court or (2) one 'inextricably intertwined' with a state court judgment." Target Media Partners, 881 F.3d at 1286. A claim is "'inextricably intertwined' if it asks to 'effectively nullify the state court judgment, or it succeeds only to the extent that the state court wrongly decided the issues.'" Id. (citation omitted). A federal claim is not considered to be "inextricably intertwined" with a state court judgment "when there was no 'reasonable opportunity to raise' that particular claim during the relevant state court proceeding." Id. (citations omitted).

Glidewell contends that this Court lacks subject matter jurisdiction under the Rooker-Feldman doctrine because Tunstall's "case only succeeds if this court were to find that the state courts wrongly issued orders establishing and enforcing the child support arrears." (Doc. 73-1 at 11). Tunstall maintains that Rooker-Feldman is inapplicable because he is not a losing party in state court and has not asked this Court to reverse or invalidate a final state court decision. (Doc. 76 at 16-18).

The Court finds that the operative complaint and attached exhibits do not establish that Tunstall is a state court loser

seeking "reversal of state court decisions."  See Target Media Partners, 881 F.3d at 1285.  On the contrary, they reflect that the Baldwin County Juvenile Court granted Tunstall's motions to set aside all orders and judgments in the CS-95-166 cases and ultimately vacated those orders and judgments in their entirety. (See Doc. 7 at 10-12; Docs. 7-7, 7-11, 7-12).  Similarly, Tunstall alleges that in July 2017, the Louisiana court dismissed all orders entered against him retroactive to September 2, 2012, and that the Louisiana court subsequently found that he owed no child support arrearages and ordered the reinstatement of his state licenses retroactive to September 9, 2012.  (See Doc. 7 at 11-12; Docs. 7-8, 7-10).  With regard to the Georgia divorce action, Tunstall does not allege any error by the Georgia court or any injury caused by that court's judgment.  Instead, he contends that the Defendants misrepresented and concealed that court's rulings and orders years after they were issued.  See Target Media Partners, 881 F.3d at 1286 ("[A]s a matter of temporality, it's difficult to imagine a case where a federal court could be barred by Rooker-Feldman from hearing a claim that arose only after the relevant state court decision had been issued.").

Glidewell notes that while other circuits have recognized an exception to the Rooker-Feldman doctrine where the state court judgment is void *ab initio* for fraud or lack of jurisdiction, the Eleventh Circuit has never adopted that exception.  (Doc. 73-1 at

11) (citing Casale v. Tillman, 558 F.3d 1258, 1261 (11th Cir. 2009) (per curiam)).  In so doing, she appears to misconstrue the impact of the exception mentioned (but not adopted) by the Eleventh Circuit in Casale.  That exception permits an inferior *federal court* to effectively vacate an *existing* state court judgment that is considered void *ab initio* due to fraud or because the state court lacked jurisdiction.  See In re James, 940 F.2d 46, 52 (3d Cir. 1991) ("It bears emphasis to repeat that federal courts that are classed as 'inferior' under Article III have the power to vacate only state court judgments that are considered void *ab initio*. . . . Because a void judgment is null and without effect, the vacating of such a judgment is merely a formality and does not intrude upon the notion of mutual respect in federal-state interests.").  Glidewell cites no authority suggesting that federal district courts cannot exercise jurisdiction when the underlying judgment was found void *ab initio* and vacated by the state court itself.  See Berene v. Nationstar Mortg. LLC, 686 F. App'x 714, 716-17 (11th Cir. 2017) (per curiam) (finding that the district court erred in applying Rooker-Feldman after the state court had vacated the foreclosure judgment at issue, because "at that point in time, the district court could not collaterally review any state court judgment, as it was clear from the pleadings that the previously final state-court judgment was no longer in effect").

17

Because Tunstall's pleadings do not establish that he is a state court loser inviting review and rejection of a state court judgment, Glidewell's motion to dismiss Tunstall's claims based on the Rooker-Feldman doctrine is due to be denied.

**B.    Failure to State a Claim – 42 U.S.C. § 1983 (Counts One and Two).**

Glidewell argues that Tunstall's complaint fails to state a claim against her under 42 U.S.C. § 1983 because it does not contain sufficient facts to establish that Glidewell was acting under color of state law or that she conspired with state actors. (Doc. 73-1 at 5-8).

In order to state a claim under § 1983, a plaintiff must show "(1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under color of state law." Holmes v. Crosby, 418 F.3d 1256, 1258 (11th Cir. 2005). "Only in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes." Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992); Fla. Country Clubs, Inc. v. Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., 98 F. Supp. 2d 1356, 1365 (M.D. Fla. 2000) ("[I]t is extremely difficult for a plaintiff to satisfy the threshold sufficiency that is necessary for a court to find that a private individual has acted as a state actor for purposes of considering an alleged section 1983 violation.").

The Eleventh Circuit recognizes three distinct tests for establishing state action by an otherwise private person or entity: (1) the "State compulsion test," which applies where "the State has coerced or at least significantly encouraged the action alleged to violate the Constitution;" (2) the "public function test," which applies where "the private parties performed a public function that was traditionally the exclusive prerogative of the State;" and (3) the "nexus/joint action test," which applies where "the State had so far insinuated itself into a position of interdependence with the [private parties] that it was a joint participant in the enterprise." Rayburn ex rel. Rayburn v. Hogue, 241 F.3d 1341, 1347 (11th Cir. 2001).

"A private party may also be held liable under § 1983 when he conspires with state actors to violate the plaintiff's constitutional rights." Brown v. Lewis, 361 F. App'x 51, 54 (11th Cir. 2010) (per curiam) (citing Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1283 (11th Cir. 2002)); see Mann v. Hillsborough Cnty. Sheriff's Office, 946 F. Supp. 962, 967 (M.D. Fla. 1996) ("The joint action test is satisfied if a 'conspiracy' is shown."). To state a viable conspiracy claim for § 1983 purposes, the plaintiff must come forward with more than vague and conclusory allegations. See Twombly, 550 U.S. at 556-67. Instead, "'the plaintiff must plead in detail, through reference to material facts, the relationship or nature of the conspiracy between the

state actor(s) and the private persons.'" Brown, 361 F. App'x at 54 (quoting Harvey, 949 F.2d at 1133).  "A 'plaintiff attempting to prove such a conspiracy must show that the parties "reached an understanding" to deny the plaintiff his or her rights.'" Dye v. Radcliff, 174 F. App'x 480, 482 (11th Cir. 2006) (per curiam) (quoting NAACP v. Hunt, 891 F.2d 1555, 1563 (11th Cir. 1990)); see also Wilson on behalf of Wilson v. McFadden, 703 F. App'x 822, 824 (11th Cir. 2017) (per curiam) ("An 'understanding' and 'willful participation' between private and state defendants is necessary to show the kind of joint action that will subject private parties to § 1983 liability.") (citation omitted).

Tunstall acknowledges that his operative complaint does not contain a § 1983 conspiracy claim; yet, he contends that "it can be inferentially and circumstantially derived from state agents Edwards, Mosley and Daigle's persistent falsification of official state records" that Glidewell conspired with those state actors. (See Doc. 76 at 10-11).  In his operative complaint, Tunstall identifies Defendants Edwards, Mosley, and Daigle as state actors, and he alleges that Glidewell used her position with the Baldwin County Sheriff's Office to induce Defendants Edwards and Mosley to manipulate official child support records and to falsify official state documents. (See Doc. 7 at 4, 14-17).  Any purported § 1983 conspiracy claim by Tunstall fails because the complaint is completely devoid of any factual allegations concerning

communications between any of the Defendants that caused an understanding or agreement to be reached to deny Tunstall of any constitutional right. Tunstall's conclusory assertion of inducement is simply not enough. See Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (per curiam) ("The naked assertion of a conspiracy between a state judge and private defendants without supporting operative facts provides an insufficient state action nexus for a section 1983 action.") (citation omitted). Further, the fact that Glidewell was employed by the Baldwin County Sheriff's Office does not demonstrate that she was acting under color of law when she instituted or encouraged child support proceedings against Tunstall. It is the nature of the act performed by a state official, not merely her status as a state official, that determines whether the act is under the color of state law. Malone v. Chambers Cnty. Bd. Of Comm'rs, 875 F. Supp. 773, 788 (M.D. Ala. 1994); see Davis v. Self, 547 F. App'x 927, 934 (11th Cir. 2013) (per curiam) (affirming the dismissal of plaintiff's § 1983 claims against his former mother-in-law alleging that she "used her state paid position to influence" the judge and others in child support and child custody proceedings, because the plaintiff failed to identify any specific actions by his former mother-in-law or explain how her actions deprived him of his constitutional rights).

Because Tunstall has not proffered facts sufficient to state a conspiracy between Glidewell and any state actor, the Court must determine whether the complaint plausibly alleges facts that would otherwise satisfy the State compulsion, public function, or nexus/joint action tests.  The first two of these tests are clearly not met because Tunstall did not, and could not plausibly, allege that the State coerced or encouraged Glidewell's actions, or that any of Glidewell's alleged actions are traditionally an exclusive state prerogative.  With regard to the nexus/joint action test, the relevant question, as noted, is whether "the State has so far insinuated itself into a position of interdependence with the [private parties] that it was a joint participant in the enterprise."  NBC, Inc. v. Commc'ns Workers of America, 860 F.2d 1022, 1026–27 (11th Cir. 1988).  "To charge a private party with [S]tate action under this standard, the governmental body and private party must be intertwined in a 'symbiotic relationship.'"  Id. at 1027 (quoting Jackson v. Metropolitan Edison Co., 419 U.S. 345, 357 (1974)).  "The Supreme Court has indicated that the symbiotic relationship must involve the specific conduct of which the plaintiff complains."  Rayburn, 241 F.3d at 1348 (citations and internal quotation marks omitted).  Tunstall lists Glidewell's alleged unlawful conduct as: executing and filing a false affidavit of past due child support, initiating and litigating legal actions seeking payment of alleged child support arrears from him,

registering a default judgment for child support arrears, requesting enforcement of that judgment, and inducing state employees to falsify documents relating to child support allegedly owed to her by Tunstall. (See Doc. 7). These allegations fail to plausibly establish that the state "insinuated itself" with Glidewell as a joint participant in the enterprise or that Glidewell was intertwined in a "symbiotic relationship" with a governmental body. See Self, 547 F. App'x at 934 (finding that plaintiff's former wife could not be considered a state actor under either the public function or nexus/joint action tests because she was "a private citizen enmeshed in a bitter custody and child support dispute with her former husband" and the former wife's "successful attempts to litigate these issues in Alabama state court do not somehow transform [the former wife and her attorneys] into state actors"). Because Tunstall's complaint fails to allege facts plausibly showing that Glidewell acted under color of state law, his § 1983 claims against Glidewell are due to be dismissed.

### C. Failure to State a Claim – Abuse of Process (Count Three).

Glidewell argues that Tunstall fails to state a claim for abuse of process because the complaint fails to allege any actions by Glidewell constituting wrongful use of process after it had been issued. (Doc. 73-1 at 12).

Under Alabama law, "[t]he elements of the tort of abuse of process are 1) the existence of an ulterior purpose, 2) a wrongful use of process, and 3) malice." C.C. & J., Inc. v. Hagood, 711 So. 2d 947, 950 (Ala. 1998). "Although the Alabama Supreme Court has not expressly said as much, it is well settled that the tort of abuse of process is disfavored because of its chilling effect on the exercise of one's right of access to courts." Odom v. Se. Supply Header, LLC, 2010 U.S. Dist. LEXIS 42689, at *15, 2010 WL 1780367, at *4 (S.D. Ala. Apr. 29, 2010), aff'd, 418 F. App'x 871 (11th Cir. 2011).

"With regard to the 'wrongful use of process' element, Alabama courts require a showing that the defendant's conduct 'culminate[d] in an actual abuse of the process by perverting it to a use to obtain a result which the process was not intended by law to effect.'" Id., 2010 U.S. Dist. LEXIS 42689, at *17, 2010 WL 1780367, at *4 (quoting Hollander v. Nichols, 19 So. 3d 184, 193 (Ala. 2009)). There is no liability for abuse of process "where the defendant has done nothing other than carry out the process to its authorized conclusion, even though with bad intentions.'" Hagood, 711 So. 2d at 951 (quoting W. Page Keeton et al., Prosser and Keeton on Torts, § 121, at 898 (5th ed. 1984)). The plaintiff "must prove that the defendant 'somehow acted outside the boundaries of legitimate procedure after the [initiation of the proceeding].'" Shoney's, Inc. v. Barnett, 773 So. 2d 1015,

1025 (Ala. Civ. App. 1999) (quoting <u>Hagood</u>, 711 So. 2d at 951).
"'If the action is confined to its regular and legitimate function
in relation to the cause of action stated in the complaint there
is no abuse . . . .'" <u>Dempsey v. Denman</u>, 442 So. 2d 63, 65 (Ala.
1983) (quoting 1 Am. Jur. 2d *Abuse of Process* § 13 (1962)); <u>see
also</u> <u>Wilcon, Inc. v. Travelers Indem. Co.</u>, 654 F.2d 976, 984 (5th
Cir. 1981) ("Regardless of the defendant's motivation and no matter
how malicious his intent, the plaintiff must still show that the
defendant did not use the process at issue primarily to effectuate
the remedy contemplated by the statute.").

In light of the foregoing, the critical question is whether
Tunstall has plausibly alleged that Glidewell "somehow acted
outside the boundaries of legitimate procedure after the
[initiation of the proceeding]" and perverted the legal process
"to obtain a result which the process was not intended by law to
effect." <u>Hagood</u>, 711 So. 2d at 951-52; <u>Willis v. Parker</u>, 814 So.
2d 857, 865-66 (Ala. 2001); <u>Haynes v. Coleman</u>, 30 So. 3d 420, 426
(Ala. Civ. App. 2009). With respect to the wrongful use of process
element specifically, Tunstall points to his allegation that
"Defendants Glidewell and Ryan initiated . . . a Petition for Rule
Nisi and Entry of Judgment, . . . wherein it was alleged Plaintiff
failed to pay $24,000.00 in child support between September 25,
1992 – October 13, 1994." (Doc. 76 at 22) (citing Doc. 7 at 7).
Tunstall maintains that the "suit was not commenced for the stated

reason, but rather, to pervert the judicial process and defraud Plaintiff of $171,680.62."  (Doc. 76 at 22).

By focusing on Glidewell's allegedly wrongful initiation of proceedings in case CS-95-166.04, Tunstall misconstrues the nature of an abuse of process claim.  "Wrongful activity designed to create a claim[9] goes to the initiation of process, not to its later use."  Hagood, 711 So. 2d at 951.  "[A]ny question about the initiation of a judicial proceeding is encompassed in a malicious prosecution claim, not an abuse of process claim."  Id.  "[A]buse of process concerns the wrongful *use* of process *after it has been issued*."  Id. at 950; see also Restatement (Second) of Torts § 682 cmt. a (1977) (noting that the "gravamen" of an abuse of process claim "is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process . . . for any purpose other than that which it was designed to accomplish"); Vanover v. Cook, 260 F.3d 1182, 1191 (10th Cir. 2001) ("No liability accrues for abuse of process where the defendant institutes a lawsuit to obtain damages or a collection procedure to recover a debt, even though the process is instituted with bad intentions or without probable cause.").

---

[9] For example, "manufactur[ing] evidence."  See Hagood, 711 So. 2d at 951.

Regardless of whether Glidewell had a valid basis for initiating case CS-95-166.04, all of her alleged actions *after* the initiation of the proceeding were regular and legitimate functions in relation to the action for unpaid child support set forth in the petition.[10] See Whitted v. Jordan, 2019 U.S. Dist. LEXIS 99650, at *20, 2019 WL 2475905, at *8 (W.D. Wash. June 13, 2019) ("Mr. Whitted has not presented any evidence that Ms. Jordan . . . filed the King County action with an ulterior purpose to accomplish an objective not within the scope of the litigation. In that lawsuit, Ms. Jordan sought to modify the existing child-support order, obtain a judgment against Mr. Whitted for $ 165,765.54 in unpaid child support payments, hold Mr. Whitted in contempt for failing to pay child support, and reduce the division of retirement assets required by the divorce decree to an offsetting judgment. . . .

---

[10] The Court is unconvinced by the argument in Tunstall's response brief that "the Court can conclude from Glidewell and Ryan's impermissible amendment of the complaint [in case CS-95-166.04] during hearing, increasing the amount sought from $24,000 to $171,680.62" that the underlying suit was brought "not to recover on the cause of action stated in the complaint, but for collateral purposes." (See Doc. 76 at 23). As an initial matter, Tunstall's complaint makes no actual mention of an amendment of the petition during a hearing in case CS-95-166.04. Rather, Tunstall merely alleges that Glidewell's petition alleged that he had failed to pay $24,000 in child support between 1992 and 1994, and that Glidewell obtained a default judgment in April 2011 for $171,680.62 in alleged child support arrears, attorney fees, and costs. (See Doc. 7 at 7). Even assuming that Glidewell did amend her petition during a hearing to increase the amount sought, that does nothing to suggest that she acted outside the boundaries of legitimate procedure or perverted the legal process to obtain a result which the process was not intended by law to effect.

These were all legitimate objectives expressly provided for by Washington law."); Lemon v. Kramer, 270 F. Supp. 3d 125, 143–44 (D.D.C. 2017) ("Here, Mr. Lemon has not alleged that Defendants sought a 'collateral thing which [Mr. Lemon] could not legally and regularly be compelled to do.' . . . Maryland state courts regularly and legally determine custody, order child support, and jail parents for contempt when they fail to pay child support in certain circumstances. Thus, Mr. Lemon fails to state a claim for relief for abuse of process . . . .") (internal citations omitted); Culver v. Culver, 2008 Conn. Super. LEXIS 2618, at *11, 2008 WL 4779860, at *4 (Conn. Super. Ct. Oct. 16, 2008) ("Because the gravamen of the action for abuse of process is the use of 'a legal process . . . against another primarily to accomplish a purpose for which it is not designed,' 3 Restatement (Second), Torts § 682 (1977); this court must examine the purpose for which the process at issue in this case, namely a motion for contempt to collect child support, is designed. Essentially, the purpose of a motion for contempt is to provide a means for a party to recover unpaid child support, the liability for, and amount of which, has to [be] determined by a court. Accordingly, the defendant's claim for abuse of process fails."), decision clarified, 2009 Conn. Super. LEXIS 1628, 2009 WL 2035635 (Conn. Super. Ct. June 15, 2009), and aff'd, 127 Conn. App. 236, 17 A.3d 1048 (2011); see also Self, 547 F. App'x at 934 (finding plaintiff's allegations that his ex-wife

"engaged in 'forum shopping' and presented 'fraudulent information, provided material misrepresentations of fact, and committed felony perjury'" in custody and child support proceedings insufficient to "give rise to an abuse of process claim under Alabama law").

Tunstall's complaint shows only that Glidewell pursued her claim for unpaid child support set forth in the Petition for Rule Nisi and Entry of Judgment in order to recover the alleged arrearages, costs, and attorney's fees encompassed in the default judgment, rather than for a collateral or extraneous purpose such as extortion. Accordingly, Tunstall has not plausibly alleged that Glidewell's post-issuance-of-process conduct constitutes wrongful use of process, and he therefore fails to state a claim for abuse of process.

> **D. Failure to State a Claim – "Negligent Infliction of Emotional Distress and Mental Anguish" (Count Five).**

Tunstall labels count five of his complaint one for "Negligent Infliction of Emotional Distress and Mental Anguish." (See Doc. 7 at 21). Glidewell correctly notes that Alabama does not recognize a cause of action for negligent infliction of emotional distress. (Doc. 73-1 at 11); see Allen v. Walker, 569 So. 2d 350, 352 (Ala. 1990) ("[T]here is no cause of action for the *negligent* infliction of emotional distress. This Court has repeatedly stated

that only intentional infliction of emotional distress is actionable") (emphasis in original).

Notwithstanding Tunstall's use of the word "negligent" in the heading, the complaint, including count five, clearly alleges conduct that was knowing and intentional rather than negligent. Therefore, the Court construes count five to bring a claim for intentional infliction of emotional distress, also known as the tort of outrage. See Blow v. Va. Coll., 2012 U.S. Dist. LEXIS 180692, at *6, 2012 WL 6685683, at *2 (N.D. Ala. Dec. 21, 2012) ("Under Alabama law, the so-called 'tort of outrage' and an action for the intentional infliction of emotional distress are conceptually deemed to be synonymous."). Glidewell contends that even if count five is construed as a tort-of-outrage claim, her alleged conduct does not rise to the level of egregiousness required to support such a claim. (Doc. 73-1 at 11-12).

> The tort of outrage has the following elements: (1) the defendant must have intended to inflict emotional distress, or should have known that his or her acts would result in emotional distress; (2) the act must be extreme and outrageous; (3) the act must have caused plaintiff's distress; and (4) plaintiff's emotional distress must have been so severe that no reasonable person could be expected to endure it.

K.M. v. Ala. Dep't of Youth Servs., 360 F. Supp. 2d 1253, 1259 (M.D. Ala. 2005) (citing Harrelson v. R.J., 882 So. 2d 317, 322 (Ala. 2003)). "The tort of outrage is an extremely limited cause of action" Potts v. Hayes, 771 So. 2d 462, 465 (Ala. 2000), which

"is viable only when the conduct is so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."  <u>Wilson v. Univ. of Ala. Health Servs. Found., P.C.</u>, 266 So. 3d 674, 677 (Ala. 2017) (citations and internal quotation marks omitted).

Tunstall indeed faces a high bar to establish that any Defendant's conduct was extreme and outrageous enough to support a claim under the tort of outrage.  However, given the scope of Glidewell's alleged wrongdoing, the Court is reluctant to dismiss Tunstall's claim at the pleading stage.  Thus, construing the allegations in the light most favorable to Tunstall and drawing all reasonable inferences in his favor, the Court cannot conclude at this stage that Tunstall has failed to allege conduct sufficiently extreme and outrageous to support a claim against Glidewell for the tort of outrage.

**E.  Statute of Limitations.**

Glidewell argues that Tunstall's claims are time-barred to the extent they rely on injuries that occurred more than two years prior to the filing of his complaint.  (Doc. 73-1 at 8).  Glidewell notes that Tunstall's § 1983 and state law claims[11] are subject to

---

[11] The undersigned will not address whether Tunstall's § 1983 claims and abuse of process claim against Glidewell are barred by the statute of limitations, since those claims for due to be dismissed for failure to state a plausible claim.

two-year statutes of limitations.  (Id. at 8-9).  According to Glidewell, her only alleged actions within the limitations period were her alleged falsification of records between March 20, 2017 and May 22, 2017; however, she asserts that Tunstall's claims relating to these allegations are due to be dismissed for failure to state a claim.  (Id. at 10).  Tunstall does not dispute that the applicable limitations period for each of his claims is two years, but he contends that the statutes of limitations did not begin to run until "criminal contempt" proceedings in Louisiana terminated in his favor in 2017 or 2018, less than two years before he filed this action.  (Doc. 76 at 13-14).  He also argues that his claims are timely under the continuing violation and equitable tolling doctrines.  (Id. at 14-16).

The Court notes that a statute of limitations defense is generally not appropriate for evaluation on a Rule 12(b)(6) motion to dismiss, "inasmuch as the statute of limitations is an affirmative defense around which plaintiffs are not required to plead in their complaint." McMillian v. AMC Mortg. Servs., Inc., 560 F. Supp. 2d 1210, 1213 (S.D. Ala. 2008).  As a result, "a Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is 'apparent from the face of the complaint' that the claim is time-barred." La Grasta v. First Union Sec.,

Inc., 358 F.3d 840, 845 (11th Cir. 2004) (citations). Because the statute of limitations is an affirmative defense, Glidewell bears the burden of proof in establishing the elements of that defense. See Smith v. Duff and Phelps, Inc., 5 F.3d 488, 492 n.9 (11th Cir. 1993).

"The statutory period of limitations for the tort of outrage is two years." Cont'l Cas. Ins. Co. v. McDonald, 567 So. 2d 1208, 1215 (Ala. 1990); see § 6-2-38(l), Ala. Code 1975. Because Tunstall's outrage claim is a state law cause of action, Alabama law governs the determination of when that claim accrued. See, e.g., Gomez v. BankUnited, 2011 U.S. Dist. LEXIS 3735, at *13, 2011 WL 114066, at *5 (S.D. Fla. Jan. 13, 2011) (noting that when a state law cause of action accrued is a matter of state law). Alabama courts have noted that "a cause of action alleging the intentional infliction of emotional distress does not accrue until the defendant's actions have caused the plaintiff severe distress, two of the four necessary elements of such a cause of action." Martin v. Hodges Chapel, LLC, 89 So. 3d 756, 763 (Ala. Civ. App. 2011) (quoting Chaney v. Ala West-AL, LLC, 22 So. 3d 488, 498 (Ala. Civ. App. 2008)). At times, Alabama courts have characterized an outrage claim as "a continuous tort" that "will not be barred until two years after the last tortious act by the defendant, particularly where the defendant's conduct does not cross the threshold and become an actionable tort until it is demonstrably

extreme and outrageous." McDonald, 567 So. 2d at 1215–16; see also Moon v. Harco Drugs, Inc., 435 So. 2d 218, 220 (Ala. 1983) (noting that the Alabama Supreme Court "has used the term 'continuous tort' to describe a defendant's repeated tortious conduct which has repeatedly and continuously injured a plaintiff" and that a "continuous tort" could include "when there is a 'single sustained method pursued in executing one general scheme'") (citations omitted). Although the continuous tort doctrine, when it applies, "operates to toll the running of the limitations period in tort cases until the date that the last injury occurred[,]" Alabama courts have "expressly limited 'recovery for a continuous tort . . . to those damages that occurred within the period of limitations.'" AC, Inc. v. Baker, 622 So. 2d 331, 335 (Ala. 1993) (citations omitted).

With respect to his outrage claim, Tunstall's complaint describes conduct in the nature of a continuous tort where the last alleged tortious acts by Glidewell occurred less than two years prior to the filing of this lawsuit. Specifically, the complaint alleges that between April 18, 2011 and April 11, 2018, Glidewell "continued to unlawfully use the Alabama and Louisiana enforcement services and judicial systems" to enforce the fraudulently obtained default judgment. (Doc. 7 at 18-19). The complaint also alleges that between March 20, 2017 and May 22, 2017, Glidewell falsified records to reflect that the Georgia court

entered judgment against Tunstall in April 2017, and that Glidewell sought to register and enforce that nonexistent judgment in Alabama case DR-2017-900632.00.  (Id. at 11).  See McMillian v. Johnson, 1994 WL 904652, at *18 (M.D. Ala. Feb. 18, 1994) (finding plaintiff's claim that the defendants "committed the tort of outrage by 'instigating and effectuating the arrest, incarceration, and prosecution of the plaintiff for a crime he did not commit'" to be "a continuous tort," for which the plaintiff could "recover for any damages that occurred within the period of limitations"), aff'd, 88 F.3d 1573 (11th Cir. 1996), aff'd sub nom. McMillian v. Monroe Cnty., Ala., 520 U.S. 781 (1997); Osborne v. Cheatham, 2015 U.S. Dist. LEXIS 174636, at *21-22, 2015 WL 9805823, at *8 (N.D. Ala. Sept. 30, 2015) (noting that a female inmate's allegations that a prison guard sexually harassed her and forcibly raped her multiple times "would be sufficient to invoke the continuous tort theory as to" the prison guard), report and recommendation adopted, 2016 U.S. Dist. LEXIS 4490, 2016 WL 159319 (N.D. Ala. Jan. 14, 2016).  Thus, the undersigned recommends denial of Glidewell's motion to dismiss Tunstall's tort-of-outrage claim based on a statute of limitations defense.

## V. **CONCLUSION**

For the reasons set forth above, the undersigned **RECOMMENDS** that Glidewell's motion to dismiss (Doc. 73) be **GRANTED IN PART** and **DENIED IN PART**.

Specifically, it is recommended that Tunstall's § 1983 claims (Counts One and Two) against Glidewell be **dismissed** for failure to state a claim upon which relief can be granted.

It is further recommended that Tunstall's abuse of process claim (Count Three) against Glidewell be **dismissed** for failure to state a claim upon which relief can be granted.

It is also recommended that Glidewell's motion to dismiss Tunstall's claims based on the Rooker-Feldman doctrine be **denied**, and that Glidewell's motion to dismiss Tunstall's tort-of-outrage claim (Count Five) for failure to state a claim upon which relief can be granted be **denied**.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period

for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **19th** day of **August, 2020.**

                                    **/s/ SONJA F. BIVINS**
                              **UNITED STATES MAGISTRATE JUDGE**