IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

THOMAS T. TUNSTALL, V,          *
                               *
     Plaintiff,                *
                               *
vs.                            *   CIVIL ACTION NO. 18-00356-KD-B
                               *
KIMBERLY M. GLIDEWELL, *et al.*,  *
                               *
     Defendants.               *

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant Hope Theriot Daigle's[1] motion to dismiss. (Doc. 51). The motion, which has been fully briefed, has been referred to the undersigned Magistrate Judge for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(S). Upon consideration of all matters presented, the undersigned recommends, for the reasons stated herein, that Defendant Daigle's motion be **GRANTED**, and that Plaintiff's claims against Defendant Daigle be **DISMISSED without prejudice** for lack of personal jurisdiction.

### I.   PROCEDURAL BACKGROUND

Plaintiff Thomas T. Tunstall, V ("Tunstall"), proceeding *pro se*, commenced this action on August 13, 2018 by filing a sixty-

_____

[1] Although Plaintiff's third amended complaint spells Defendant's last name as "Diagle", Plaintiff now appears to acknowledge that "Daigle" is the correct spelling. (See Docs. 7, 51-1, 57, 58).

four-page, fifteen-count complaint that named as Defendants Tunstall's former wife, Kimberly M. Glidewell ("Glidewell"); Baldwin County, Alabama Circuit Court Judge Carmen E. Bosch; Baldwin County Assistant District Attorney Harry M. D'Olive, Jr.; Baldwin County Department of Human Resources employees Kelley O. Edwards ("Edwards") and Cynthia T. Mosley ("Mosley"); Glidewell's attorney, Mark D. Ryan ("Ryan"); and "Defendants A to E", who were alleged to be employees of the Baldwin County Department of Human Resources who "were principal to and or acted in collusion with" the other named Defendants. (Doc. 1).[2]

Tunstall filed a motion for leave to file a first amended complaint, along with a proposed first amended complaint. (Docs. 3, 3-1). Without waiting for a ruling on that motion, Tunstall filed a second motion for leave to amend his complaint, along with a proposed second amended complaint comprising ninety-eight pages and twelve counts. (Doc. 4). The Court denied Tunstall's pending motion for leave to amend his complaint and directed Tunstall to file a third amended complaint that complied with the Federal Rules of Civil Procedure and local formatting rules, did not exceed

---

[2] When Tunstall commenced this action, he also filed a motion to proceed without prepayment of fees. (Doc. 2). Tunstall's initial motion was denied; however, at the Court's directive, he filed a new motion to proceed without prepayment of fees, and it was granted. (Docs. 5, 8, 9).

twenty-five pages, and provided a short and plain statement of his claims. (Doc. 5).

Pursuant to the Court's directive, Tunstall filed a third amended complaint. (Doc. 7). Tunstall's third amended complaint names as Defendants Glidewell; Ryan; the law firms of Mark D. Ryan, P.C. and Ryan & Wilkes, P.C.; Edwards; Mosley; and Hope Theriot Daigle ("Daigle"), an employee of the Louisiana Department of Children & Family Services ("Louisiana DCFS"). (Id. at 1-4). After the third amended complaint was filed, summonses were issued and each of the named Defendants were served. (See Docs. 10, 11, 12, 13, 15, 16, 53, 65).

Presently before the Court is Daigle's motion to dismiss Tunstall's claims against her pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, along with her memorandum in support. (Docs. 51, 51-1). In her motion, Daigle asserts that this Court lacks personal jurisdiction over her, that Tunstall's claims are barred by the Rooker-Feldman doctrine and the applicable statutes of limitations, that she is entitled to qualified immunity, and that this Court should decline to exercise supplemental jurisdiction over Tunstall's state law claims against her. (Doc. 51 at 1). Tunstall filed a response and supporting brief in opposition to Daigle's motion. (Docs. 57, 58). Daigle's

motion to dismiss has been referred to the undersigned for entry of a report and recommendation and is now ripe for resolution.[3]

## II.   <u>THIRD AMENDED COMPLAINT (DOC. 7)</u>[4]

This case arises from a longstanding dispute over child support dating back to Tunstall and Glidewell's divorce in the early 1990s.  In this lawsuit, Tunstall alleges that the Defendants falsified and misrepresented official records and documents and instituted a series of fraudulent legal and enforcement actions against him, in an effort to facilitate Glidewell's collection of child support payments from Tunstall that he did not in fact owe.

### A.   The Parties.

Tunstall alleges that he moved from Fairhope, Alabama to Houma, Louisiana in February 1998 and has "continuously thereafter . . . been a bona fide resident of Louisiana," although he has at times "temporarily stayed with relatives" in Mobile County and Baldwin County, Alabama.[5]  (Doc. 7 at 3; Doc. 7-1 at 1).  According to Tunstall, Defendant Glidewell has resided in Macon, Georgia

---

[3] The other Defendants in this case have also filed motions to dismiss Tunstall's third amended complaint (Docs. 26, 33, 62, 73), which the undersigned has addressed or will address in separate reports.

[4] For purposes of resolving Daigle's motion to dismiss, the Court accepts as true the facts alleged in Tunstall's third amended complaint.

[5] Since October 2019, Tunstall's filings have listed his address as a post office box in Flippin, Arkansas.  (<u>See, e.g.</u>, Docs. 23, 80).

since April 2017, but she previously resided in Baldwin County, Alabama and was employed by the Baldwin County Sheriff's Department. (Doc. 7 at 3). Defendants Edwards and Mosley are both residents of Baldwin County, Alabama employed by the Baldwin County Department of Human Resources, while Defendant Daigle is a Louisiana resident employed by the Louisiana DCFS. (Id. at 4). Defendant Mark Ryan is a licensed Alabama attorney, and he and his law firm are located in Alabama. (Id. at 3-4).

### B. Factual Allegations.

In October 1994, Tunstall and Glidewell were divorced by a Final Judgment and Decree of the Superior Court of Liberty County, Georgia, which awarded Glidewell permanent custody of their two minor children. (Doc. 7-3). Shortly thereafter, child support proceedings involving Tunstall and Glidewell were commenced in the Juvenile Court of Baldwin County, Alabama (the "Juvenile Court"), which continued until at least June 2018.[6] (See Doc. 7-4 at 1-2; Doc. 7-12). Tunstall contends that after the termination of his child support obligations in Alabama, Glidewell executed an Affidavit of Past Due Support, wherein she falsely claimed that Tunstall had been ordered to pay $750 per month in child support between October 13, 1994 and March 5, 2007 pursuant to the Georgia

---

[6] A detailed rendition of the convoluted Alabama litigation involving Tunstall and Glidewell is set forth in the Court's prior reports and recommendations. (See Docs. 79, 81).

court's judgment, and that Tunstall owed an arrearage of $150,171.17 for failing to make any of the ordered payments. (Doc. 7 at 4-5). According to Tunstall, Glidewell filed the "perjured" affidavit "with state agent Defendants Edwards and Mosley" on September 30, 2008. (Id. at 5).

Tunstall alleges that between September 30, 2008 and October 31, 2008, "Edwards and/or Mosley . . . knowingly and willfully manipulated" his "official Alabama child support records" to falsely reflect that the Georgia court had ordered him to pay $750 per month in child support and to falsely reflect that Tunstall owed the arrearage alleged in Glidewell's affidavit. (Id.). He also asserts that Edwards "falsified" an official Child Support Enforcement Transmittal and Registration Statement (the "Registration Statement"), to falsely represent that he owed a child support arrearage of $150,171.17 based on the orders of the Georgia court. (Id.). According to Tunstall, Mosley certified the Registration Statement, despite knowing that it conflicted with previous records and court orders and contradicted her prior representations to the Juvenile Court. (Id. at 6). Tunstall alleges that "Edwards and/or Mosley" transmitted the Registration Statement, along with Glidewell's "perjured" affidavit and a certified copy of the "falsified" Alabama child support records, to the Louisiana DCFS and requested that Defendant Daigle initiate

enforcement action against Tunstall in Louisiana, his state of residence. (Id.).

Tunstall alleges that Daigle sought to have the Terrebonne Parish District Attorney's Office petition the 32nd Judicial District Court for Terrebonne Parish (the "Louisiana court") to register and enforce the documents received from Edwards and Mosley, but on January 12, 2010, the Louisiana court dismissed the Petition to Register Foreign Support Order and Contempt Rule after "conclusively determining" that Tunstall did not owe any child support or arrearages to Glidewell. (Id. at 6-7).

Tunstall further alleges that Glidewell, "under the direction and guidance" of Ryan, fraudulently obtained a default judgment against Tunstall in the Baldwin County Juvenile Court (for $171,680.62 in child support arrears, attorney fees, and costs) on April 18, 2011, registered the judgment in Baldwin County Probate Court, and then requested that Edwards and Mosley seek enforcement of the judgment in Louisiana. (Id. at 7-8).

Tunstall asserts that "[i]n or around" July 2012, Daigle "falsified official state documents" to indicate that a Louisiana state court, on September 25, 1992, had ordered Tunstall to pay $750 per month in child support, that Tunstall had repeatedly refused to comply with the Louisiana court's order, and that Tunstall owed a child support arrearage in excess of $171,680.62. (Id. at 8). He further alleges that Daigle transmitted these

"falsified" documents to the Louisiana Office of Motor Vehicles, the Louisiana Department of Wildlife and Fisheries, and the U.S. Department of State, thus leading to the suspension of his Louisiana hunting, fishing, and driver's licenses, and his United States "passport privileges." (Id.). He also asserts that from July 2012 until July 2017, Daigle used these "falsified" documents to "seize" his state and federal income tax returns, garnish his pay, "instigate" a criminal contempt petition in the Louisiana court, and provide false reports to "various credit reporting agencies." (Id. at 8-9). Tunstall contends that he was held in criminal contempt by the Louisiana court in June 2015, sentenced to thirty days' confinement (suspended upon paying $7,500) and two years' probation, and ordered to make monthly payments until the alleged arrearage was paid in full. (Id. at 10). He asserts that the Louisiana court later dismissed all orders against him "retroactive to" September 2, 2012, determined that he owed no child support arrearage to Glidewell, and ordered the reinstatement of all of his licenses "retroactive to" September 9, 2012. (Id. at 11-12). Tunstall further asserts that notwithstanding the Louisiana court's order and his own repeated requests, Daigle refused to issue fully executed compliance release certificates and thereby resulted a delay in lifting of his license suspensions. (Id. at 12).

### C.  Legal Claims.

In counts one and two of his operative complaint,[7] Tunstall seeks relief against Defendants Glidewell, Ryan, Edwards, Mosley, and Daigle[8] under 42 U.S.C. § 1983 for alleged violations of his constitutional rights under the Fourth and Fourteenth Amendments. (Id. at 14-17).  In count three, Tunstall brings a claim for abuse of process against Glidewell, Ryan, Mark D. Ryan, P.C., and Ryan & Wilkes, P.C., based on their alleged "fraud" in obtaining the April 2011 default judgment and their "abuse and misuse of the Alabama and Louisiana judicial systems and enforcement services" to enforce the judgment.  (Id. at 18-20).  In count four, Tunstall asserts a claim for defamation against Edwards, Mosley, and Daigle, based on their alleged transmission and publication of false information regarding Tunstall's alleged failure to pay child support.  (Id. at 20-21).  In count five, Tunstall makes what the Court construes as a claim for intentional infliction of emotional distress against all Defendants for their roles in falsifying documents, misusing the Alabama and Louisiana judicial and enforcement systems, and publishing false and defamatory information about him.  (Id. at 21-22).

---

[7] For the sake of brevity, the Court will simply refer to Tunstall's operative third amended complaint as the "complaint" from this point forward.

[8] All of Tunstall's claims are asserted against the Defendants in their individual capacities only.  (See Doc. 7 at 14-21).

## III. **DISCUSSION**

As noted, Daigle's motion raises numerous arguments in support of dismissal, including a lack of subject matter jurisdiction under the Rooker-Feldman doctrine and a lack of personal jurisdiction. Upon review, the Court finds the matter of personal jurisdiction to be straightforward and dispositive. As such, the Court exercises its discretion to address this issue first. See Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 431 (2007) ("[J]urisdictional questions ordinarily must precede merits determinations in dispositional order, [but] there is no mandatory 'sequencing of jurisdictional issues.'") (quoting Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584 (1999)); see also Ruhrgas, 526 U.S. at 588 ("Where . . . a district court has before it a straightforward personal jurisdiction issue presenting no complex question of state law, and the alleged defect in subject-matter jurisdiction raises a difficult and novel question, the court does not abuse its discretion by turning directly to personal jurisdiction."); Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 940 (11th Cir. 1997) ("As a general rule, courts should address issues relating to personal jurisdiction before reaching the merits of a plaintiff's claims."). For the reasons set forth below, the undersigned finds that the Court lacks personal

jurisdiction over Daigle; thus, the Court need not address the remainder of Daigle's arguments for dismissal.[9]

## A.  Legal Standards.

Federal Rule of Civil Procedure 12(b)(2) allows a party to assert the defense of lack of personal jurisdiction by motion. Fed. R. Civ. P. 12(b)(2).  The issue of whether a court has personal jurisdiction over a defendant is a question of law.  <u>Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.</u>, 593 F.3d 1249, 1257 (11th Cir. 2010).

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction."  <u>United Techs. Corp. v. Mazer</u>, 556 F.3d 1260, 1274 (11th Cir. 2009).  To adequately allege jurisdiction, a plaintiff is not required to track statutory language, but he must at least allege sufficient facts to make out a prima facie case of jurisdiction.  <u>Lindenau v. Lundeen</u>, 2018 U.S. Dist. LEXIS 34958, at *5, 2018 WL 1152403, at *2 (M.D. Fla. Mar. 5, 2018) (citing <u>Estate of Scutieri v. Chambers</u>, 386 F. App'x 951, 956 (11th Cir. 2010) (per curiam)).  Vague and conclusory allegations "are insufficient to establish a prima facie case" of personal

---

[9] <u>See</u> <u>Posner v. Essex Ins. Co., Ltd.</u>, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999) ("A court without personal jurisdiction is powerless to take further action.").

jurisdiction.  Snow v. DirecTV, Inc., 450 F.3d 1314, 1318 (11th Cir. 2006).  "A plaintiff's *pro se* status does not relieve [him] of the obligation to meet [his] initial burden." Wray v. Petersen, 2018 U.S. Dist. LEXIS 130754, at *6, 2018 WL 3719323, at *3 (M.D. Fla. July 17, 2018), report and recommendation adopted, 2018 U.S. Dist. LEXIS 130319, 2018 WL 3707904 (M.D. Fla. Aug. 3, 2018).

Only where the plaintiff is successful in alleging sufficient facts to establish a prima facie case of jurisdiction "does the burden shift to 'the defendant to challenge those allegations with evidence.'" Id. (citations omitted).  "When a defendant fails to rebut a plaintiff's prima facie case with affidavits, the Court must accept the [factual] allegations of the plaintiff's complaint as true, and any motion to dismiss is considered a facial challenge to the sufficiency of the complaint's jurisdictional allegations." Island Stone Int'l Ltd. v. Island Stone India Private Ltd., 2017 U.S. Dist. LEXIS 61027, at *14, 2017 WL 1437464, at *5 (M.D. Fla. Apr. 4, 2017), report and recommendation adopted, 2017 U.S. Dist. LEXIS 60762, 2017 WL 1426664 (M.D. Fla. Apr. 21, 2017).  A motion to dismiss for lack of personal jurisdiction must be denied where the facts alleged "support a reasonable inference that [the] defendant can be subjected to jurisdiction of the court." Jackam v. Hosp. Corp. of Am. Mideast, Ltd., 800 F.2d 1577, 1579 (11th Cir. 1986).  Daigle has not submitted affidavits or other evidence in support of her Rule 12(b)(2) motion to dismiss.  Thus, the Court

must consider only whether Tunstall alleges a prima facie case of personal jurisdiction based on the factual averments in his complaint and the reasonable inferences derived therefrom.

In reviewing Daigle's motion, the Court is cognizant of Tunstall's *pro se* status, and mindful that his allegations must be given a liberal construction and held to a less stringent standard than those drafted by an attorney. See <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972). However, "this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." <u>GJR Invs., Inc. v. Cnty. of Escambia, Fla.</u>, 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citations omitted), <u>overruled on other grounds as recognized in</u> <u>Randall v. Scott</u>, 610 F.3d 701, 709 (11th Cir. 2010). Furthermore, a *pro se* litigant "is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure." <u>Moon v. Newsome</u>, 863 F.2d 835, 837 (11th Cir. 1989).

When faced with a Rule 12(b)(2) motion, "'the plaintiff has the twin burdens of establishing that personal jurisdiction over the defendant comports with (1) the forum state's long-arm provision[10] and (2) the requirements of the due-process clause of

---

[10] Alabama's long arm rule provides, in relevant part:

An appropriate basis exists for service of process outside of this state upon a person or entity in any

the Fourteenth Amendment to the United States Constitution.'"[11] Continental Motors, Inc. v. Jewell Aircraft, Inc., 882 F. Supp. 2d 1296, 1306 (S.D. Ala. 2012) (citations omitted). "In this case, the two inquiries merge, because Alabama's long-arm [provision] permits the exercise of personal jurisdiction to the fullest extent constitutionally permissible." Sloss Indus. Corp. v. Eurisol, 488 F.3d 922, 925 (11th Cir. 2007). Thus, the Court must determine whether the exercise of personal jurisdiction over Daigle comports with the constitutional guarantees of due process.

"[F]acts supporting personal jurisdiction 'may be general, which arise from the party's contacts with the forum state that are unrelated to the claim, or specific, which arise from the party's contacts with the forum state that are related to the claim.'" Continental Motors, 882 F. Supp. 2d at 1307 (citation omitted). "The due process requirements for general personal

---

        action in this state when the person or entity has such contacts with this state that the prosecution of the action against the person or entity in this state is not inconsistent with the constitution of this state or the Constitution of the United States . . . .

Ala. R. Civ. P. 4.2(b).

[11] "The exercise of personal jurisdiction comports with due process if the non-resident defendant has established 'certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Oldfield v. Pueblo De Bahia Lora, S.A., 558 F.3d 1210, 1220 (11th Cir. 2009) (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984)).

jurisdiction are more stringent than for specific personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant and the forum state." Consol. Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1292 (11th Cir. 2000). Tunstall's complaint provides no basis upon which to conclude that this Court has general jurisdiction over Daigle, a resident and employee of the state of Louisiana. Thus, Tunstall must establish that the Court has specific personal jurisdiction over Daigle in this matter.

Specific jurisdiction "refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum." Oldfield v. Pueblo De Bahia Lora, S.A., 558 F.3d 1210, 1220 n.27 (11th Cir. 2009). "[T]he relationship must arise out of contacts that the 'defendant *himself*' creates with the forum state." Walden v. Fiore, 571 U.S. 277, 284 (2014) (emphasis in original). In addition, the "analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." Id. at 285.

Courts within the Eleventh Circuit apply a three-part due process test to determine whether specific personal jurisdiction is present. The test examines:

> (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus

invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

Louis Vuitton Malletier, S.A. v. Mosseri, 736 F.3d 1339, 1355 (11th Cir. 2013) (citations omitted).  The plaintiff bears the burden of establishing each of the first two prongs, and if he does so, the "defendant must make a 'compelling case' that the exercise of jurisdiction would violate tradition notions of fair play and substantial justice."  Id. (quotation omitted).

## B.    Analysis.

Daigle contends that the factual allegations in Tunstall's complaint fail to establish a prima facie case of specific personal jurisdiction.  (Doc. 51-1 at 5-7).  Tunstall argues that Daigle should reasonably have anticipated being haled to court in Alabama because she actively participated in an "interstate scheme" that originated in Alabama, maintained "continuous interactions" with Alabama Defendants Edwards and Mosley over a ten-year period, and transferred most of the monies seized from Tunstall in Louisiana to Alabama.  (Doc. 58 at 5-6).  To determine whether Tunstall has alleged a prima facie case of specific personal jurisdiction over Daigle in this case, the Court must perform the three-pronged due process analysis outlined above.

### i. Prong One: "Arising Out of" or Relatedness.

"[A] fundamental element of the specific jurisdiction calculus is that [the] plaintiff's claim must 'arise out of or relate to' at least one of defendant's contacts with the forum." Oldfield, 558 F.3d at 1222 (citation omitted). In assessing the first prong of the due process test, the Court's "inquiry must focus on the direct causal relationship between the defendant, the forum, and the litigation." Louis Vuitton, 736 F.3d at 1355-56 (quotation omitted). It is "not enough that there be some *similarity* between the activities that connect the defendant to the forum and the plaintiff's claim." Licciardello v. Lovelady, 544 F.3d 1280, 1284 n.3 (11th Cir. 2008) (emphasis in original). Rather, the defendant's contacts with the forum state must be related to the operative facts of the controversy. Id.

Here, Daigle's alleged contacts with Alabama, namely, her professional communications with Baldwin County Department of Human Resources employees Edwards and Mosley and her use of documents prepared by or received from Alabama Defendants Glidewell, Edwards, and Mosley to establish or enforce child support obligations in Louisiana, are related to the operative facts of the controversy. There is a direct causal relationship between Daigle, Alabama, and Tunstall's claims. See Louis Vuitton, 736 F.3d at 1355-56. Thus, the first prong of the due process

test is met because Tunstall's § 1983 and intentional tort claims arise out of and relate to Daigle's contacts with Alabama.

### ii. Prong Two: Purposeful Availment.

As outlined previously, Tunstall's causes of action against Daigle include § 1983 claims for deprivations of constitutional rights, along with two state law intentional tort claims. "A section 1983 claim for deprivation of a constitutional right is more akin to a tort claim than a contract claim[,]" and courts "therefore analyze the question of purposeful availment using the tort-case standard." Ziegler v. Indian River Cnty., 64 F.3d 470, 474 (9th Cir. 1995).

There are two applicable tests for determining whether purposeful availment has occurred in intentional tort cases. Louis Vuitton, 736 F.3d at 1356. The first of these is the "effects test" articulated by the U.S. Supreme Court in Calder v. Jones, 465 U.S. 783 (1984). Louis Vuitton, 736 F.3d at 1356. Under the effects test, even a single tortious act by a nonresident defendant can establish purposeful availment, without regard to whether the defendant had any other contacts with the forum state, if the tort "(1) [was] intentional; (2) [was] aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." Id. (quotation omitted). The Calder effects test requires more "than the mere 'foreseeability' that an act may have effects in the forum," and the defendant must

"'expressly aim' his wrongful conduct, individually targeting a known forum resident." Lovelady, 544 F.3d at 1287 (citation omitted); see also Precision IBC, Inc. v. Wagner Ink, Inc., 2013 U.S. Dist. LEXIS 56934, at *28-29, 2013 WL 1728563, at *9 (S.D. Ala. Apr. 22, 2013) ("[T]he Calder effects test can only be satisfied if the plaintiff can point to contacts which demonstrate that the defendant expressly aimed its tortious conduct at the forum, and thereby made the forum the focal point of the tortious activity. . . . The defendant must manifest behavior intentionally targeted at and focused on the forum for Calder to be satisfied.") (quoting IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 265 (3d Cir. 1998)).

Courts may also apply the traditional minimum contacts test for purposeful availment analysis, which asks whether the nonresident defendant's contacts with the forum state "(1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." Louis Vuitton, 736 F.3d 1357. In performing this analysis, courts "identify all contacts between a nonresident defendant and a forum state and ask whether, individually or collectively, those contacts satisfy these criteria." Id. In evaluating the actions that constitute such minimum contacts, "it

is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities in the forum State, thus invoking the benefits and protections of its laws." Sun Bank, N.A. v. E.F. Hutton & Co., Inc., 926 F.2d 1030, 1034 (11th Cir. 1991) (quotation omitted). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (internal citations omitted).

Purposeful availment may be established when either, or both, of these tests are satisfied. See Louis Vuitton, 736 F.3d at 1356. Because the Calder effects test is "generally considered the more appropriate measure of purposeful availment" when an intentional tort is alleged, the Court will begin the purposeful availment analysis by applying that test to the case at hand. See Tobinick v. Novella, 2015 U.S. Dist. LEXIS 8085, at *21, 2015 WL 328236, at *7 (S.D. Fla. Jan. 23, 2015) (citing Oldfield, 558 F.3d at 1221).

Here, the effects test is not met because it cannot be reasonably inferred from the complaint that Daigle's conduct was aimed at Alabama or caused harm that Daigle should have anticipated would be suffered in Alabama. With regard to the second element of the effects test, a brief review of the allegations against

Daigle is instructive. Tunstall alleges that after being requested by Edwards and Mosley to "initiate enforcement action" against Tunstall in 2008, Daigle requested a Louisiana district attorney's office to register and enforce a foreign support order[12] in the Louisiana court. (Doc. 7 at 6). Tunstall further alleges that, beginning in July 2012, Daigle falsified official Louisiana state documents to reflect that Tunstall owed a child support arrearage pursuant to a 1992 Louisiana court order; that she transmitted the falsified documents to the Louisiana Office of Motor Vehicles, the Louisiana Department of Wildlife and Fisheries, and the U.S. Department of State to obtain the suspension of Tunstall's Louisiana licenses and U.S. passport; that she used the falsified documents to "seize" Tunstall's federal and Louisiana state income tax returns and to seize his "payroll through garnishments propounded on" his Louisiana employer; and that she "instigate[d]" a criminal contempt petition filed in the Louisiana court. (Id. at 8; see Doc. 7-1 at 2). Tunstall also alleges that Daigle falsely reported to "various credit reporting agencies" that he

---

[12] Although his complaint does not make this clear, Tunstall has since clarified that Daigle was attempting to register and enforce a purported *Georgia* support order in 2008, and that she later fabricated records to falsely reflect that a *Louisiana* court had rendered a support order in 1992 and then took various actions to enforce that nonexistent order. According to Tunstall, neither Glidewell, nor anyone acting on her behalf, ever sought to enforce *any* Alabama child support order in Louisiana. (See Doc. 80 at 6-7).

had owed a child support arrearage of $150,171.17 since 2008, and that she refused to issue him fully executed Louisiana compliance release certificates after the Louisiana court in 2018 ordered the reinstatement of his Louisiana licenses.  (Doc. 7 at 8-9, 12).

None of the above allegations remotely suggest that Daigle's conduct was aimed at Alabama.  Indeed, they firmly establish that Daigle's conduct was intentionally targeted at and focused on Louisiana, where she was employed and where both she and Tunstall resided.  See Frame v. Lowe, 2010 U.S. Dist. LEXIS 10494, at *37-39, 2010 WL 503024, at *12-13 (D.N.J. Feb. 8, 2010) (dismissing for lack of personal jurisdiction New Jersey resident's § 1983 claims against California county's Department of Child Support Services and its director for allegedly helping her ex-husband pursue "baseless and fraudulent" child support claims in California, because the defendants' alleged actions took place in California and, although their actions had foreseeable consequences in New Jersey, the plaintiff did not show that the defendants "had a specific intent to direct their harm beyond California's borders").

Tunstall's allegation that Edwards, Mosley, and Daigle "unlawfully used their authority to falsify the official state documents . . . to seize [Tunstall's] property . . . and transfer the same to Defendant Glidewell" (see Doc. 7 at 17), also fails to plausibly suggest that Daigle's conduct was expressly aimed at

Alabama, particularly when read in conjunction with the many other allegations of Daigle's actions in Louisiana. The unsurprising fact that monies collected through enforcement efforts in Louisiana were subsequently transferred to Alabama, where Tunstall's ex-wife happened to reside, is an attenuated connection to Alabama that was created not by Daigle but by circumstances and parties beyond her control.

With respect to the third element of the effects test, Tunstall's claimed injuries do not evince a connection between Daigle and Alabama. Tunstall acknowledges that he has been a Louisiana resident since 1998. (Doc. 7-1 at 1). He avers that from February 1998 until August 2014, he was employed by and part owner of various Louisiana corporations, that he filed Louisiana state personal and business income taxes, and that all of his federal income taxes were "predicated on" his "residence and employment being in [the] State of Louisiana." (Id. at 2). Tunstall further states that he has not "given notice of intent to affect a change in [his] domicile" and "will resume residing full-time in Louisiana" upon the conclusion of this lawsuit. (Id. at 3). Thus, Daigle's alleged enforcement actions were taken in Louisiana, as a Louisiana DCFS employee, against a Louisiana resident. It is obvious from the complaint that Daigle would have anticipated (correctly) that the brunt of any injury to Tunstall as a result of her actions would be felt in Louisiana. Nothing in

the complaint suggests that Daigle had any reason to believe that Tunstall, a Louisiana resident, would suffer harm in Alabama.  It is clear that Daigle's conduct was not "expressly aimed at a specific individual in [Alabama] whose effects were suffered in [Alabama]."  See Lovelady, 544 F.3d at 1288.  Thus, the allegations in the complaint cannot establish purposeful availment under the Calder effects test.

Tunstall's complaint also fails to show purposeful availment under the traditional minimum contacts test.  Nothing in the facts alleged suggests that Daigle took any act by which she "purposefully availed h[er]self of the privileges of doing business within" Alabama or could "reasonably anticipate being haled into court" in Alabama.  See Louis Vuitton, 736 F.3d at 1357; see also Frame, 2010 U.S. Dist. LEXIS 10494, at *38, 2010 WL 503024, at *12 (finding no personal jurisdiction under the traditional test because plaintiff's allegations failed to show that defendants "purposefully directed their activities to New Jersey or purposefully availed themselves of the protections of New Jersey"); McDougald v. Jenson, 596 F. Supp. 680, 684 (N.D. Fla. 1984) (finding that, where Florida plaintiff asserted § 1983 claim against a Washington state court judge who ruled against him in a child custody matter but made no allegations that the judge conducted or solicited business in Florida other than the fact that he corresponded in writing and by telephone with the judge in

plaintiff's Florida custody proceedings, the allegations were insufficient to suggest that the judge purposefully availed himself of the benefits of doing business in Florida), aff'd, 786 F.2d 1465 (11th Cir. 1986); Payne v. Cnty. of Kershaw, S.C., 2008 U.S. Dist. LEXIS 56568, at *15-18, 2008 WL 2876592, at *5-6 (N.D. Tex. July 25, 2008) (finding no purposeful availment by South Carolina county clerk's office employees in their official capacities when the defendants sent income withholding notices to plaintiff's employers in Texas seeking to collect money pursuant to a South Carolina court order, because the money collected was intended to benefit plaintiff's ex-wife and the defendants' actions were "essentially ministerial" and "did not result in any commercial nor economic benefit for the defendants[;]" and finding no personal jurisdiction over those employees in their individual capacities because they did not have contacts with Texas "beyond those performed in their official capacities").

### iii. Conspiracy Theory of Personal Jurisdiction.

By asserting that Daigle actively participated "in the Alabama Defendants interstate scheme to defraud" him (see Doc. 58 at 5-6), Tunstall arguably invokes the conspiracy theory of personal jurisdiction, which has been adopted and recognized by the Alabama Supreme Court. See In re Blue Cross Blue Shield Antitrust Litig., 225 F. Supp. 3d 1269, 1302 (N.D. Ala. 2016) (citations omitted). Under this theory, "a defendant who otherwise

may not be subject to personal jurisdiction might be [haled] into court if the plaintiff 'plead[s] with particularity the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy.'" Id. (quoting Ex parte McInnis, 820 So. 2d 795, 806–07 (Ala. 2001)).

However, notwithstanding his vague hints of Daigle's involvement in a "scheme" with the Alabama Defendants, Tunstall has failed to plead a conspiracy involving Daigle with any sort of particularity. More problematic for Tunstall is that, for the conspiracy theory of personal jurisdiction to apply, "the conspiratorial activity must be 'aimed at an *Alabama* plaintiff.'" Roche Diagnostics Corp. v. Priority Healthcare Corp., 407 F. Supp. 3d 1216, 1234 (N.D. Ala. 2019) (emphasis in original) (quoting Ex parte Alamo Title Co., 128 So. 3d 700, 713 (Ala. 2013)), reconsideration denied, 2019 U.S. Dist. LEXIS 176845, 2019 WL 5102836 (N.D. Ala. Oct. 11, 2019). Since Tunstall is a citizen of Louisiana, this Court cannot assume personal jurisdiction over Daigle under a conspiracy theory of jurisdiction. See Roche, 407 F. Supp. 3d at 1234 ("[N]either Roche Diagnostics Corporation nor Roche Diabetes Care, Inc.—the targets of the alleged conspiracy— is a citizen of Alabama. . . . So the court cannot have personal jurisdiction over these Individual Defendants under a conspiracy theory of jurisdiction because neither Plaintiff is an Alabama plaintiff.").

Because Tunstall's complaint does not allege sufficient facts to plead personal jurisdiction over Daigle, the undersigned recommends that the Court grant Daigle's motion to dismiss for lack of personal jurisdiction and dismiss all claims asserted by Tunstall against Daigle without prejudice.[13]

## V.  CONCLUSION

For the reasons set forth above, the undersigned **RECOMMENDS** that Daigle's motion to dismiss (Doc. 51) be **GRANTED.** Specifically, it is recommended that Daigle's motion to dismiss Tunstall's claims against her for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) be **GRANTED,** and that Tunstall's claims against Daigle be **DISMISSED without prejudice** for lack of personal jurisdiction.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to

---

[13] Because Tunstall's claims against Daigle are due to be dismissed without prejudice pursuant to Rule 12(b)(2), the Court need not reach Daigle's substantive arguments for dismissal under Rule 12(b)(6).

object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **21st** day of **August, 2020.**

                              /s/ SONJA F. BIVINS
                    UNITED STATES MAGISTRATE JUDGE