IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| THOMAS T. TUNSTALL, V, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | CIVIL ACTION NO. 18-00356-KD-B |
| | * | |
| KIMBERLY M. GLIDEWELL, *et al.*, | * | |
| | * | |
| Defendants. | * | |

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants Kelley O. Edwards' and Cynthia T. Mosley's motions to dismiss (Docs. 26, 62). The motions, which have been fully briefed, have been referred to the undersigned Magistrate Judge for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(S). Upon consideration of all matters presented, the undersigned recommends, for the reasons stated herein, that Defendants' motions be **GRANTED in part** and **DENIED in part**.

### I.   PROCEDURAL BACKGROUND

Plaintiff Thomas T. Tunstall, V ("Tunstall"), proceeding *pro se*, commenced this action on August 13, 2018 by filing a sixty-four-page, fifteen-count complaint that named as Defendants Tunstall's former wife, Kimberly M. Glidewell ("Glidewell"); Baldwin County, Alabama Circuit Court Judge Carmen E. Bosch; Baldwin County Assistant District Attorney Harry M. D'Olive, Jr.;

Baldwin County Department of Human Resources employees Kelley O. Edwards ("Edwards") and Cynthia T. Mosley ("Mosley"); Glidewell's attorney, Mark D. Ryan ("Ryan"); and "Defendants A to E", who were alleged to be employees of the Baldwin County Department of Human Resources who "were principal to and or acted in collusion with" the other named Defendants. (Doc. 1).[1]

Tunstall subsequently filed a motion for leave to file a first amended complaint, along with a proposed first amended complaint. (Docs. 3, 3-1). Without waiting for a ruling on that motion, Tunstall filed a second motion for leave to amend his complaint, along with a proposed second amended complaint comprising ninety-eight pages and twelve counts. (Doc. 4). After observing that none of Tunstall's pleadings, i.e., the complaint and the first and second amended complaints, constituted a "short and plain statement" of his claims as required by Federal Rule of Civil Procedure 8(a), but were instead "shotgun" style pleadings, the Court directed Tunstall to file a third amended complaint that complied with the Federal Rules of Civil Procedure and local formatting requirements, did not exceed twenty-five pages, and provided a short and plain statement of his claims. (Doc. 5).

---

[1] Tunstall also filed a motion to proceed without prepayment of fees. (Doc. 2). Tunstall's initial motion was denied; however, at the Court's directive, he filed a new motion to proceed without prepayment of fees, and it was granted. (Docs. 5, 8, 9).

Pursuant to the Court's directive, Tunstall filed a third amended complaint, naming as Defendants Glidewell; Ryan; the law firms of Mark D. Ryan, P.C. and Ryan & Wilkes, P.C.; Edwards; Mosley; and Hope Theriot Daigle[2] ("Daigle"), an employee of the Louisiana Department of Children & Family Services ("Louisiana DCFS"). (Doc. 7). Thereafter, summonses were issued and each of the named Defendants were served. (See Docs. 10, 11, 12, 13, 15, 16, 53, 65).

Presently before the Court are Edwards' and Mosley's motions to dismiss Tunstall third amended complaint, along with their supporting briefs.[3] (Docs. 26, 27, 62, 63). In their motions, Edwards and Mosley seek dismissal of Tunstall's claims against them on the bases of Eleventh Amendment immunity, qualified immunity, *res judicata*, collateral estoppel, the Rooker-Feldman doctrine, and failure to state a claim. (Docs. 26, 27, 62, 63). They further contend that "[s]ome, if not all, of Tunstall's claims are barred by the statute of limitations." (Doc. 27 at 14; Doc. 63 at 13). Tunstall filed responses and supporting briefs opposing

---

[2] Although the third amended complaint spells Defendant's last name as "Diagle", Tunstall now appears to acknowledge that "Daigle" is the correct spelling. (See Docs. 7, 51-1, 57, 58).

[3] Tunstall makes similar allegations against both Edwards and Mosley, and the motions to dismiss and supporting briefs filed by Edwards and Mosley are essentially identical to one another. (See Docs. 7, 26, 27, 62, 63). Accordingly, the Court will address Edwards' and Mosley's motions to dismiss together.

the motions (Docs. 38, 39, 70, 71), to which Edwards and Mosley did not file replies. Edwards' and Mosley's motions to dismiss have been referred to the undersigned for entry of a report and recommendation and are now ripe for resolution.[4]

## II. FACTUAL ALLEGATIONS[5]

In October 1994, Tunstall and Glidewell were divorced by a judgment of a Georgia court, which awarded Glidewell permanent custody of their two minor children. (Doc. 7-3). Shortly thereafter, child support proceedings involving Tunstall and Glidewell were commenced in the Juvenile Court of Baldwin County, Alabama (the "Juvenile Court").[6] (See Doc. 7-4 at 1-2). In June 1995, the Juvenile Court entered an order directing Tunstall to pay $370 per month in child support beginning July 1, 1995. (Id.). In March 2008, the Juvenile Court terminated Tunstall's current child support obligations. (Doc. 7-2).

---

[4] The other Defendants in this case have also filed motions to dismiss Tunstall's third amended complaint (Docs. 33, 51, 73), which the undersigned has addressed in separate reports.

[5] For purposes of resolving Defendants' motions to dismiss, the Court accepts as true the facts alleged in Tunstall's third amended complaint.

[6] The child support proceedings involving Tunstall and Glidewell continued in the Juvenile Court until at least June 2018. (See Doc. 7-12). A detailed rendition of the convoluted Alabama litigation between the parties is set forth in the Court's prior reports and recommendations. (See Docs. 79, 81).

Tunstall contends that after the termination of his current child support obligations in Alabama, Glidewell executed an Affidavit of Past Due Support, wherein she falsely claimed that Tunstall had been ordered to pay $750 per month in child support between October 13, 1994 and March 5, 2007 pursuant to the Georgia court's judgment, and that he owed an arrearage of $150,171.17 for failing to make any of the ordered payments. (Doc. 7 at 4-5). According to Tunstall, Glidewell filed the "perjured" affidavit with "state agent Defendants Edwards and Mosley" on September 30, 2008. (Id. at 5).

Tunstall alleges that between September 30, 2008 and October 31, 2008, "Edwards and/or Mosley . . . knowingly and willfully manipulated" his "official Alabama child support records" to falsely reflect that the Georgia court had ordered him to pay $750 per month in child support and that Tunstall owed the arrearage alleged in Glidewell's affidavit. (Id.). He also asserts that Edwards "falsified" an official Child Support Enforcement Transmittal and Registration Statement (the "Registration Statement"), to falsely represent that he owed a child support arrearage of $150,171.17 based on the orders of the Georgia court. (Id.). According to Tunstall, Mosley certified the Registration Statement, despite knowing that it conflicted with previous records and court orders and contradicted her prior representations to the Juvenile Court. (Id. at 6). Tunstall

5

alleges that "Edwards and/or Mosley" transmitted the Registration Statement, along with Glidewell's "perjured" affidavit and a certified copy of the "falsified" child support records, to the Louisiana DCFS and requested that Defendant Daigle initiate enforcement action against Tunstall in Louisiana, his state of residence.[7] (Id.).

According to Tunstall, Daigle sought to have the Terrebonne Parish District Attorney's Office petition the 32nd Judicial District Court for Terrebonne Parish (the "Louisiana court") to register and enforce the documents received from Edwards and Mosley; however, on January 12, 2010, the Louisiana court dismissed the petition after "conclusively determining" that Tunstall owed no child support or arrearages to Glidewell. (Id. at 6-7).

Later that year, Glidewell filed a Petition for Rule Nisi and Entry of Judgment in the Juvenile Court, wherein she alleged that Tunstall had failed to pay $24,000 in child support between September 25, 1992 and October 13, 1994. (Id. at 7). On April 18, 2011, the Juvenile Court entered a default judgment against Tunstall in that matter for $171,680.62 in child support arrears, attorney fees, and costs. (Id.; Doc. 7-7 at 2). According to Tunstall, the default judgment was "predicated solely" on

---

[7] Tunstall avers that he moved from Fairhope, Alabama to Houma, Louisiana in February 1998 and has "continuously thereafter" been domiciled in and a resident of Louisiana. (Doc. 7 at 3; Doc. 7-1 at 1).

Glidewell's "perjured" affidavit and the "official state records" that were "falsified" by Edwards and Mosley. (Doc. 7 at 7). He also alleges that on June 17, 2011, Glidewell, "under the direction and guidance of" Ryan, registered the default judgment in Baldwin County Probate Court and requested that Edwards and Mosley seek enforcement of the judgment in Louisiana. (Id. at 7-8).

Tunstall next asserts that "[i]n or around" July 2012, Daigle "falsified official state documents" to indicate that a Louisiana state court, in September 1992, had ordered Tunstall to pay $750 per month in child support, and that Tunstall had repeatedly refused to comply with the Louisiana court's order and therefore owed a child support arrearage in excess of $171,680.62. (Id. at 8). Tunstall further alleges that Daigle used these "falsified" documents to take various enforcement actions against him in Louisiana, including instigating criminal contempt proceedings in the Louisiana court. (Id. at 8-11, 15-16). Tunstall contends that, based "solely" on Glidewell's "perjured" affidavit and the "falsified official records" prepared by Edwards, Mosley, and Daigle, the Louisiana court, in June 2015, held him in criminal contempt, sentenced him to thirty days' confinement (suspended upon paying $7,500) and two years' probation, and ordered him to make monthly payments until the alleged arrearage was paid in full. (Id. at 10).

Tunstall alleges that upon learning in April 2014 of the existence of the April 2011 default judgment, he sought relief from that judgment based on fraud and lack of notice. (Id. at 13; Doc. 7-7 at 2). After his initial challenge was denied as untimely, Tunstall sought relief on the ground that the Juvenile Court lacked subject matter jurisdiction, and as a result, all prior orders and judgments by the Juvenile Court in the child support proceedings between he and Glidewell were void. (Doc. 7-7 at 2). In an order dated March 10, 2017, the Juvenile Court granted Tunstall's motions and vacated all of its prior orders and judgments in the proceedings between Tunstall and Glidewell due to lack of subject matter jurisdiction because the original Georgia judgment and separation agreement were never domesticated or registered as foreign decrees in Alabama. (Doc. 7 at 10; Doc. 7-7 at 3).[8]

Tunstall alleges that, in "retaliation" for his success in obtaining vacatur of the default judgment, Glidewell, Edwards, and Mosley, assisted by Baldwin County Assistant District Attorney

_____

[8] Glidewell filed a motion to alter, amend, or vacate the Juvenile Court's March 10, 2017 order, but her motion was ultimately unsuccessful because it was untimely filed. See Ex parte T.T.T., 249 So. 3d 514 (Ala. Civ. App. 2017). The Juvenile Court dismissed case no. CS-95-166.04 (the case in which the April 2011 default judgment was entered) on April 11, 2017, and it entered orders dismissing the other cases between the parties on June 11, 2018. (Doc. 7 at 10; Doc. 7-7 at 5; Doc. 7-12).

Harry M. D'Olive, Jr.,[9] "falsified and fabricated official government records" to falsely reflect that a Georgia court had rendered judgment against Tunstall on April 13, 2017 for $150,171.17 in child support arrearages, and that the clerk of the Georgia court sought to register and enforce that judgment in Baldwin County. (Doc. 7 at 11). Tunstall further alleges that on the motion of the State of Alabama, the resulting court proceedings were dismissed by the Baldwin County Circuit Court on July 27, 2017. (Id.; see Doc. 7-9).

In July 2017, the Louisiana court dismissed all orders against Tunstall "retroactive to" September 2, 2012, and in February 2018, the Louisiana court determined that Tunstall owed no child support arrearage to Glidewell and ordered the reinstatement of all of his licenses "retroactive to" September 9, 2012. (Doc. 7 at 11-12; see Docs. 7-8, 7-10).

Tunstall contends that despite the orders of the Louisiana and Alabama courts, Edwards and Mosley continued to "falsify official state records" to falsely reflect that a Georgia court had entered a judgment against him for arrearages, and between November 2017 and September 2018, they made monthly demands for

---

[9] According to Tunstall, D'Olive is Glidewell's relative. (Doc. 7 at 11). D'Olive was named as a Defendant in Tunstall's original and proposed first and second amended complaints, but he is not named as a Defendant in the operative third amended complaint. (See Docs. 1, 3-1, 4, 7).

payment and threatened him with prosecution if he did not pay in full.  (Doc. 7 at 12).  Tunstall further asserts that Edwards and Mosley continued to falsely report arrearages to credit reporting agencies on a monthly basis through August 31, 2018.  (Id. at 12-13).

In counts one and two of his operative complaint,[10] Tunstall seeks relief against Defendants Glidewell, Ryan, Edwards, Mosley, and Daigle[11] under 42 U.S.C. § 1983 for alleged violations of his constitutional rights under the Fourth and Fourteenth Amendments. (Id. at 14-17).  In count three, Tunstall brings a claim for abuse of process against Glidewell, Ryan, Mark D. Ryan, P.C., and Ryan & Wilkes, P.C.  (Id. at 18-20).  In count four, Tunstall asserts a claim for defamation against Edwards, Mosley, and Daigle based on their alleged transmission and publication of false information regarding Tunstall's alleged failures to pay child support.  (Id. at 20-21).  In count five, Tunstall makes what the Court construes as a claim for intentional infliction of emotional distress against all Defendants for their roles in falsifying documents, misusing the Alabama and Louisiana judicial and enforcement systems, and publishing false and defamatory information.  (Id. at 21-22).

---

[10]  For the sake of brevity, the Court will simply refer to Tunstall's operative third amended complaint as the "complaint" from this point forward.

[11] All of Tunstall's claims are asserted against the Defendants in their individual capacities only.  (See Doc. 7 at 14-21).

## III. <u>STANDARDS OF REVIEW</u>

### A.   **Rule 12(b)(1).**

Federal Rule of Civil Procedure 12(b)(1) authorizes a motion to dismiss an action if the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).[12] "Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction can be asserted on either facial or factual grounds." <u>Carmichael v. Kellogg, Brown & Root Services, Inc.</u>, 572 F.3d 1271, 1279 (11th Cir. 2009). In a facial attack, a court simply must examine the pleading and determine whether the plaintiff has sufficiently alleged a basis for subject matter jurisdiction, while accepting the plaintiff's factual allegations as true and construing them most favorably to the plaintiff. <u>Cardwell v. Auburn Univ. Montgomery</u>, 941 F. Supp. 2d 1322, 1327 (M.D. Ala. 2013). A factual attack challenges the

---

[12] The applicable rule for Defendants' challenge to this Court's jurisdiction based on the <u>Rooker</u>-<u>Feldman</u> doctrine is Rule 12(b)(1). <u>See</u> <u>Ali v. U.S. Bank, Nat'l Ass'n</u>, 2012 U.S. Dist. LEXIS 198495, at *7, 2012 WL 13013643, at *3 (N.D. Ga. Oct. 4, 2012) ("The Federal Rule of Civil Procedure [for] challenging the jurisdiction of a federal court under the <u>Rooker</u>-<u>Feldman</u> doctrine is Rule 12(b)(1).") (quotation omitted), <u>report and recommendation adopted</u>, 2012 U.S. Dist. LEXIS 198485, 2012 WL 13015094 (N.D. Ga. Oct. 24, 2012); <u>Smith v. Wells Fargo Bank, N.A.</u>, 2017 U.S. Dist. LEXIS 130707, at *13 n.7, 2017 WL 3882525, at *5 n.7 (M.D. Ala. Aug. 15, 2017) ("Although district courts have dismissed complaints under the <u>Rooker</u>-<u>Feldman</u> doctrine pursuant to Federal Rule of Civil Procedure 12(b)(6), it seems that the correct disposition, when the <u>Rooker</u>-<u>Feldman</u> doctrine applies, is an order under Federal Rule of Civil Procedure 12(b)(1) dismissing the suit for lack of subject-matter jurisdiction."), <u>report and recommendation adopted</u>, 2017 U.S. Dist. LEXIS 142886, 2017 WL 3882516 (M.D. Ala. Sept. 5, 2017).

existence of subject matter jurisdiction in fact, irrespective of the pleadings, and the court may consider matters outside the pleadings and weigh conflicting evidence. Boglin v. Bd. of Trs. of Ala. Agric. & Mech. Univ., 290 F. Supp. 3d 1257, 1261 (N.D. Ala. 2018). The challenge presently before the Court is a facial challenge regarding the applicability of the Rooker-Feldman doctrine.

**B.    Rule 12(b)(6).**

Rule 12(b)(6) authorizes a motion to dismiss an action on the ground that the allegations in the complaint fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). On such a motion, the "issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Little v. City of N. Miami, 805 F.2d 962, 965 (11th Cir. 1986) (per curiam) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (per curiam) (quoting GSW, Inc. v. Long Cnty., 999 F.2d 1508, 1510 (11th Cir. 1993)). The court must draw "all reasonable inferences in the plaintiff's favor." St. George v. Pinellas Cnty., 285 F.3d 1334, 1337 (11th Cir. 2002). However, the court is not required

to accept as true a plaintiff's legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001) (quotation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (internal citations and parentheticals omitted). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. Unless a plaintiff has "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Id.

Unsupported conclusions of law or of mixed fact and law will not defeat a Rule 12(b)(6) motion for dismissal. Dalrymple v. Reno, 334 F.3d 991, 996 (11th Cir. 2003). Thus, the Court engages in a two-pronged approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

**C.** *Pro Se* **Litigation.**

When considering a *pro se* litigant's allegations, a court gives them a liberal construction, holding them to a less stringent standard than those drafted by an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, "this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." GJR Invs., Inc. v. Cnty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citations omitted), overruled on other grounds as recognized in Randall v. Scott, 610 F.3d 701, 709 (11th Cir. 2010). Furthermore, a *pro se* litigant "is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure." Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989).

**IV. ANALYSIS**

**A. Rooker-Feldman Doctrine.**

Edwards and Mosley argue that this action should be dismissed because this Court lacks subject matter jurisdiction pursuant to the Rooker-Feldman doctrine. (Doc. 27 at 10-11; Doc. 63 at 10-11). Tunstall counters that Rooker-Feldman is inapplicable because he is not a losing party in state court and has not asked the Court to reverse or invalidate a final state court decision. (Doc. 39 at 13-14; Doc. 71 at 18).

"The Rooker-Feldman doctrine[13] eliminates federal court jurisdiction over those cases that are essentially an appeal by a state court loser seeking to relitigate a claim that has already been decided in a state court." Target Media Partners v. Specialty Mktg. Corp., 881 F.3d 1279, 1281 (11th Cir. 2018).  The purpose of the doctrine is "to ensure that the inferior federal courts do not impermissibly review decisions of the state courts—a role reserved to the United States Supreme Court." Id.  "Application of Rooker-Feldman is a threshold jurisdictional matter." Cavero v. One West Bank FSB, 617 F. App'x 928, 929 (11th Cir. 2015) (per curiam).

In Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280 (2005), the Supreme Court concluded that the lower federal courts had been applying Rooker-Feldman too broadly and clarified that federal district courts should apply the doctrine only to those "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Target Media Partners, 881 F.3d at 1285 (quoting Exxon Mobil, 544 U.S. at 284).

A federal court is barred by the Rooker-Feldman doctrine from adjudicating a claim that was "either (1) one actually adjudicated

---

[13] The doctrine takes its name from two Supreme Court cases, Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983).

by a state court or (2) one 'inextricably intertwined' with a state court judgment." <u>Target Media Partners</u>, 881 F.3d at 1286. A claim is "'inextricably intertwined' if it asks to 'effectively nullify the state court judgment, or it succeeds only to the extent that the state court wrongly decided the issues." <u>Id.</u> (citation omitted). A federal claim is not considered to be "inextricably intertwined" with a state court judgment "when there was no 'reasonable opportunity to raise' that particular claim during the relevant state court proceeding." <u>Id.</u> (citations omitted).

The Court finds that the complaint and attached exhibits do not establish that Tunstall is a state court loser seeking "reversal of state court decisions." <u>See</u> <u>id.</u> at 1285. On the contrary, they reflect that the Juvenile Court granted Tunstall's motions to set aside all prior orders and judgments in his Alabama child support proceedings and ultimately vacated those orders and judgments in their entirety. (<u>See</u> Doc. 7 at 10-12; Docs. 7-7, 7-11, 7-12). Similarly, Tunstall alleges that in July 2017, the Louisiana court dismissed all orders entered against him retroactive to September 2, 2012, and that the Louisiana court subsequently found that he owed no child support arrearages and ordered the reinstatement of his state licenses retroactive to September 9, 2012. (<u>See</u> Doc. 7 at 11-12; Docs. 7-8, 7-10). With regard to the Georgia divorce action, Tunstall does not allege any error by the Georgia court, nor does he allege any injury caused

by that court's judgment. Instead, he contends that the Defendants misrepresented and concealed that court's rulings and orders years after they were issued. See Target Media Partners, 881 F.3d at 1286 ("[A]s a matter of temporality, it's difficult to imagine a case where a federal court could be barred by Rooker-Feldman from hearing a claim that arose only after the relevant state court decision had been issued.").

Because Tunstall's pleadings do not establish that he is a state court loser inviting review and rejection of a state court judgment, Edwards' and Mosley's motions to dismiss Tunstall's claims based on the Rooker-Feldman doctrine are due to be denied.

**B.    Eleventh Amendment Immunity.**

Edwards and Mosley argue that Eleventh Amendment immunity bars Tunstall's claims against them in their official capacities. (Doc. 27 at 4-6; Doc. 63 at 4-6). "Under the Eleventh Amendment, state officials sued for damages in their official capacity are immune from suit in federal court." Jackson v. Ga. Dep't of Transp., 16 F.3d 1573, 1575 (11th Cir. 1994). However, Tunstall's complaint makes clear that he is suing Edwards and Mosley in their individual capacities only. (See Doc. 7 at 14, 17, 20-22). "[T]he Eleventh Amendment does not protect state employees sued in their individual capacity for employment-related acts." Jackson, 16 F.3d at 1575. Because the Court concludes that Edwards and Mosley

were sued in their individual capacities only, the Eleventh Amendment does not bar Tunstall's claims against them.[14]

### C. Qualified Immunity.

Edwards and Mosley next argue that qualified immunity bars Tunstall's claims against them in their individual capacities, because Tunstall has not shown that a reasonable state employee "would have known that the wrongdoing alleged by Tunstall 'in the factual circumstances presented here violated clearly established law.'" (Doc. 27 at 7-8; Doc. 63 at 7-8) (citing <u>Stanley v. City of Dalton, Ga.</u>, 219 F.3d 1280, 1294 (11th Cir. 2000)).

> Qualified immunity protects government officials from liability for civil damages unless they violate a statutory or constitutional right that was clearly established at the time the alleged violation took place. <u>See</u> <u>Pearson v. Callahan</u>, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009); <u>Amnesty Int'l, USA v. Battle</u>, 559 F.3d 1170, 1184 (11th Cir. 2009). "The purpose of [qualified] immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit 'all but the plainly incompetent or one who is knowingly violating the federal law.'" <u>Lee[ v. Ferraro]</u>, 284 F.3d [1188,] 1194 [(11th Cir. 2002) ](citation omitted) (quoting <u>Willingham v. Loughnan</u>, 261 F.3d 1178, 1187 (11th Cir. 2001)). Qualified immunity is a defense not only from liability, but also from suit, so courts should ascertain the validity of a qualified immunity defense as early in the lawsuit as possible. <u>See</u> <u>id.</u>

---

[14] Edwards and Mosley also argue that Tunstall fails to state a cause of action under 42 U.S.C. § 1983 because they, in their official capacities, are not "persons" under the statute. (Doc. 27 at 8-9; Doc. 63 at 8-9). This argument is inapposite, as Tunstall has sued Edwards and Mosley in their individual capacities only.

"Under the well-defined qualified immunity framework, a 'public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" <u>Terrell v. Smith</u>, 668 F.3d 1244, 1250 (11th Cir. 2012) (quoting <u>Lee</u>, 284 F.3d at 1194). Once the official has done so, the burden shifts to the plaintiff to satisfy the following two-pronged inquiry: (1) whether the facts that a plaintiff has shown make out a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct. <u>Pearson</u>, 555 U.S. at 232, 129 S. Ct. 808. . . . The Supreme Court recently has made it clear that [courts] need not employ a rigid two-step procedure, but rather may exercise [their] discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." <u>Id.</u> at 236, 129 S. Ct. 808.

<u>Gilmore v. Hodges</u>, 738 F.3d 266, 272-73 (11th Cir. 2013).

Before moving on to the substantive qualified immunity analysis, the Court must first determine the threshold question of whether Edwards and Mosley have carried their burden of demonstrating that they were acting within their discretionary authority at the time of their allegedly wrongful conduct. <u>See Dean v. Olens</u>, 2019 U.S. Dist. LEXIS 227852, at *4, 2019 WL 8017804, at *2 (N.D. Ga. June 7, 2019). To make this determination, a court must assess whether the acts in question "are of a type that fell within the employee's job responsibilities. Our inquiry is two-fold. We ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means

that were within his power to utilize." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004).

To pass the first step of this test, "the defendant must have been performing a function that, *but for* the alleged constitutional infirmity, would have fallen with[in] his legitimate job description. Id. at 1266 (emphasis in original). If the official was performing a legitimate job-related function, the court must determine at the second step whether the official executed that job-related function — that is, whether he pursued his job-related goals — in an authorized manner. Id. "Just as a plaintiff bears the burden of averring facts to survive a motion to dismiss, Defendants must also ground their claim of qualified immunity (at the motion-to-dismiss/judgment-on-the-pleadings stage) in factual assertions regarding the scope and source of their official authority." Dean, 2019 U.S. Dist. LEXIS 227852, at *7, 2019 WL 8017804, at *3.

There are no direct averments in Tunstall's complaint as to the scope and source of Edwards' and Mosley's discretionary authority. (See Doc. 7). Tunstall alleges that Edwards and Mosley are employed by the Baldwin County Department of Human Resources, but he does not provide further information concerning their job descriptions or the authorized means of performing their jobs. Likewise, Edwards and Mosley do not address whether they were acting within the scope of their discretionary authority at the

time of their allegedly wrongful actions. (See Doc. 27 at 6-8; Doc. 63 at 6-8). Indeed, they "have not even attempted to meet their burden of showing that they were acting within their discretionary authority when the allegedly wrongful acts occurred." See Cassady v. Walker, 2010 U.S. Dist. LEXIS 124536, at *25, 2010 WL 4867529, at *7 (S.D. Ga. Oct. 15, 2010), report and recommendation adopted, 2010 U.S. Dist. LEXIS 124545, 2010 WL 4867524 (S.D. Ga. Nov. 23, 2010); see also Beech v. City of Mobile, 874 F. Supp. 1305, 1310 (S.D. Ala. 1994) ("In order for defendants to prove that they were acting within the scope of their discretionary authority, 'there must be more than a bald assertion . . . that the complained-of actions were undertaken pursuant to the performance of [their] duties and within the scope of [their] discretionary authority[.]'") (citation omitted).

Given the absence of a sufficient factual basis to establish that Edwards and Mosley were acting within the scope of their discretionary authority, their motions to dismiss on the basis of qualified immunity are due to be denied. See Dean, 2019 U.S. Dist. LEXIS 227852, at *8, 2019 WL 8017804, at *3; accord Mar. Petroleum Assocs., LLC v. City of Ft. Lauderdale, Fla., 2011 WL 13217294, at *3 (S.D. Fla. July 27, 2011) ("In fact, district courts have committed error by granting qualified immunity without first developing a factual record that supports a finding of discretionary authority").

**D.** *Res Judicata* **and Collateral Estoppel.**

Edwards and Mosley further argue that the doctrines of *res judicata* and collateral estoppel bar Tunstall's claims by precluding him from "re-litigating in this court issues relating to proceedings in his state court domestic relations cases."[15] (Doc. 27 at 9; Doc. 63 at 9). Edwards and Mosley appear to contend that state court judgments in Alabama, Georgia, and Louisiana bar this action. (See Doc. 27 at 9-10; Doc. 63 at 9-10).

"The doctrine of res judicata, or claim preclusion, bars the filing of claims which were raised or could have been raised in an earlier proceeding." Citibank, N.A. v. Data Lease Fin. Corp., 904 F.2d 1498, 1501 (11th Cir. 1990). "When claim preclusion does not apply to bar an entire claim or set of claims, the doctrine of collateral estoppel, or issue preclusion, may still prevent the relitigation of particular issues which were actually litigated and decided in a prior suit." Id. When a federal court is "'asked to give *res judicata* effect to a state court judgment, [it] must apply the *res judicata* principles of the law of the state whose decision is set up as a bar to further litigation.'" Kizzire v.

---

[15] Although *res judicata* and collateral estoppel are not enumerated defenses under Rule 12(b), they may be raised in a Rule 12(b)(6) motion where their existence can be determined from the face of the complaint. Johnson v. Girl Scouts of the USA, 596 F. App'x 797, 798 (11th Cir. 2015) (per curiam) (citing Concordia v. Bendekovic, 693 F.2d 1073, 1075 (11th Cir. 1982)); Haddad v. Dudek, 784 F. Supp. 2d 1308, 1324 (M.D. Fla. 2011).

Baptist Health Sys., Inc., 441 F.3d 1306, 1308 (11th Cir. 2006) (citation omitted). Likewise, a federal court asked to apply collateral estoppel must give a prior state court judgment the same preclusive effect as would courts of the state issuing the judgment. Brown v. City of Hialeah, 30 F.3d 1433, 1437 (11th Cir. 1994).

An essential element of *res judicata* is that the prior action must have involved the same, or substantially the same, parties. See Kizzire, 441 F.3d at 1308-09 (noting that the essential elements of *res judicata* under Alabama law include "substantial identity of the parties") (citation omitted); Crowe v. Elder, 723 S.E. 2d 428, 430 (Ga. 2012) (listing "identity of the parties or their privies" as one of the "prerequisites [that] must be satisfied before res judicata acts as a bar to subsequent litigation"); Burguieres v. Pollingue, 843 So. 2d 1049, 1053-54 (La. 2003) ("The third requirement of res judicata is that the parties in both suits are the same."). Edwards and Mosley do not allege, and there is nothing before the Court that suggests, that they were parties to any prior litigation involving Tunstall; thus, *res judicata* does not bar Tunstall's claims against Edwards and Mosley.

For the same reasons, Edwards and Mosley have failed to demonstrate that collateral estoppel applies. See Mitchell v. Humana Hosp.-Shoals, 942 F.2d 1581, 1583 (11th Cir. 1991) (listing

the four elements of collateral estoppel in Alabama, including:
"1. The party claiming the benefit of the prior judgment is one
who would have been prejudiced by a contrary decision in the
earlier case."); Cmty. State Bank v. Strong, 651 F.3d 1241, 1264
(11th Cir. 2011) ("A party seeking to assert collateral estoppel
under Georgia law must demonstrate that (1) an identical issue,
(2) between identical parties, (3) was actually litigated and (4)
necessarily decided, (5) on the merits, (6) in a final judgment,
(7) by a court of competent jurisdiction."); Sevin v. Par. of
Jefferson, 632 F. Supp. 2d 586, 594–95 (E.D. La. 2008) (listing
the four elements that "must be met before an earlier 'valid and
final judgment' will preclude relitigation of an issue," including
that "'(1) the parties must be identical'") (citations omitted).

Because they offer only perfunctory arguments and fail to
establish that each of the elements of *res judicata* or collateral
estoppel are met with respect to any of the relevant state court
judgments, Edwards' and Mosley's motions to dismiss Tunstall's
claims on *res judicata* and collateral estoppel grounds are due to
be denied.

**E.   Failure to State a Claim – Defamation (Count Four).**

Edwards and Mosley also assert that count four of Tunstall's
complaint fails to state a claim for defamation against them.
(Doc. 27 at 11-12; Doc. 63 at 11-12). In support of this assertion,
Edwards and Mosley posit:

> A claim for defamation against a government entity, by itself, is not a Fourteenth Amendment deprivation of liberty or property but instead is subject to the "stigma-plus" test. Cannon v. City of West Palm Beach, 250 F.3d 1299, 1302 (11th Cir.2001) (citing Paul v. Davis, 424 U.S. 693, 694, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)). To establish defamation by a government entity, the plaintiff must prove the defamation "plus" that another tangible interest was violated. Smith ex rel. Smith v. Siegelman, 322 F.3d 1290, 1296 (11th Cir.2003) (quoting Cannon, 250 F.3d at 1302) (quoting Moore v. Otero, 557 F.2d 435, 437 (5th Cir.1977)). See also Southbark, Inc. v. Mobile Cty. Comm'n, 974 F. Supp. 2d 1372, 1380 (S.D. Ala. 2013). The allegations in Tunstall's complaint do not satisfy this requirement. Based upon the above, Count IV for defamation should be dismissed.

(Doc. 27 at 12; Doc. 63 at 12). In response to this argument, Tunstall points out that count four asserts a state law claim for defamation, not a § 1983 Fourteenth Amendment due process claim based on defamation by the government under the stigma-plus test. (Doc. 71 at 19).

Under Alabama law, a cause of action for defamation consists of the following elements:

> 1) a false and defamatory statement concerning the plaintiff; 2) an unprivileged communication of that statement to a third party; 3) fault amounting at least to negligence on the part of the defendant; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement.

Dolgencorp, LLC v. Spence, 224 So. 3d 173, 186 (Ala. 2016) (underline in original) (citations and internal quotation marks omitted).

Tunstall has adequately pleaded a claim for defamation against Edwards and Mosley. Tunstall alleges that Edwards and Mosley intentionally communicated known false and defamatory information to third parties. According to Tunstall, these Defendants transmitted falsified documents stating that he was in arrears on child support payments to the Louisiana DFCS and various credit reporting agencies, and they published, on various public internet websites, false information about his alleged failures to pay child support. (See Doc. 7 at 6, 11-13, 20-21). Tunstall has also alleged that he suffered special harm as a result of Defendants' defamatory publications by being "legally divested" of ownership in his company and by being denied credit. (Id. at 20-21). Because Tunstall has stated a plausible claim for relief, Defendants' motions to dismiss count four for failure to state a claim are due to be denied.

**F.    Failure to State a Claim – "Negligent Infliction of Emotional Distress and Mental Anguish" (Count Five).**

Tunstall labels count five of his complaint one for "Negligent Infliction of Emotional Distress and Mental Anguish." (See Doc. 7 at 21). Alabama does not recognize a cause of action for negligent infliction of emotion distress. See Allen v. Walker, 569 So. 2d 350, 352 (Ala. 1990) ("[T]here is no cause of action for the *negligent* infliction of emotional distress. This Court

has repeatedly stated that only intentional infliction of severe emotional distress is actionable.") (emphasis in original).

Notwithstanding Tunstall's use of the word "negligent" in the heading, count five of Tunstall's complaint alleges conduct that was knowing and intentional rather than negligent. Therefore, the Court construes count five to bring a claim for intentional infliction of emotional distress, also known as the tort of outrage. See Blow v. Va. Coll., 2012 U.S. Dist. LEXIS 180692, at *6, 2012 WL 6685683, at *2 (N.D. Ala. Dec. 21, 2012) ("Under Alabama law, the so-called 'tort of outrage' and an action for the intentional infliction of emotional distress are conceptually deemed to be synonymous."). Edwards and Mosley also construe count five to allege intentional infliction of emotional distress, but they argue that that the wrongdoing alleged in Tunstall's complaint does not rise to the level of egregiousness required to support such a claim. (See Doc. 27 at 12-13; Doc. 63 at 12-13).

> The tort of outrage has the following elements: (1) the defendant must have intended to inflict emotional distress, or should have known that his or her acts would result in emotional distress; (2) the act must be extreme and outrageous; (3) the act must have caused plaintiff's distress; and (4) plaintiff's emotional distress must have been so severe that no reasonable person could be expected to endure it.

K.M. v. Ala. Dep't of Youth Servs., 360 F. Supp. 2d 1253, 1259 (M.D. Ala. 2005) (citing Harrelson v. R.J., 882 So. 2d 317, 322 (Ala. 2003)). "The tort of outrage is an extremely limited cause

of action" <u>Potts v. Hayes</u>, 771 So. 2d 462, 465 (Ala. 2000), which "is viable only when the conduct is so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." <u>Wilson v. Univ. of Ala. Health Servs. Found., P.C.</u>, 266 So. 3d 674, 677 (Ala. 2017) (citations and internal quotation marks omitted).

Tunstall undoubtedly faces a high hurdle to establish that Defendants' conduct was so extreme and outrageous as to support a claim under the tort of outrage. However, given Tunstall's allegations of ongoing falsifications of official records, misrepresentations of court orders, and inappropriate use of child support enforcement mechanisms by state employees, the undersigned is reluctant to recommend dismissal of Tunstall's outrage claim against Edwards and Mosley at the pleading stage. This reluctance is amplified by Defendants' limited and conclusory arguments in support of dismissal. Thus, construing the allegations in the light most favorable to Tunstall and drawing all reasonable inferences in his favor, the Court cannot conclude at this stage that the conduct alleged on the part of Edwards and Mosley is insufficiently extreme and outrageous to support a claim for intentional infliction of emotional distress.

## G.    Statute of Limitations.

Finally, Edwards and Mosley assert that "[s]ome, if not all, of Tunstall's claims are barred by the statute of limitations." (Doc. 27 at 14; Doc. 63 at 13).  They note that Tunstall's § 1983 and state law claims are subject to two-year statutes of limitations, and they contend that Tunstall cannot recover for any alleged constitutional violation or tort that occurred more than two years before this action was filed on August 13, 2018.  (Doc. 27 at 14; Doc. 63 at 14).  Tunstall does not dispute that the applicable limitations period for each of his claims is two years, but he contends that the statute of limitations did not begin to run until July 2017 at the earliest, "when the Louisiana court dismissed all orders entered against [him] in the criminal contempt action."  (Doc. 71 at 22).  He also argues that his claims are timely under the continuing violation and equitable tolling doctrines.  (Doc. 39 at 18; Doc. 71 at 23-24).

The Court notes that a statute of limitations defense is generally not appropriate for evaluation on a Rule 12(b)(6) motion to dismiss, "inasmuch as the statute of limitations is an affirmative defense around which plaintiffs are not required to plead in their complaint."  McMillian v. AMC Mortg. Servs., Inc., 560 F. Supp. 2d 1210, 1213 (S.D. Ala. 2008).  As a result, "a Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is 'apparent from the face of the complaint'

that the claim is time-barred." La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted). Because the statute of limitations is an affirmative defense, Defendants bear the burden of proof in establishing the elements of that defense. See Smith v. Duff and Phelps, Inc., 5 F.3d 488, 492 n.9 (11th Cir. 1993).

### i. Section 1983 Claims.

"Federal courts apply their forum state's statute of limitations for personal injury actions to actions brought pursuant to 42 U.S.C. § 1983." Lovett v. Ray, 327 F.3d 1181, 1182 (11th Cir. 2003) (per curiam) (quotation omitted). In Alabama, the governing limitations period for all actions under 42 U.S.C. § 1983 is two years. Jones v. Preuit & Mauldin, 876 F.2d 1480, 1483 (11th Cir. 1989) (en banc). Although courts look to state law for the length of the limitations period, the time at which the statute of limitations for a § 1983 claim accrues "is a question of federal law that is . . . governed by federal rules conforming in general to common-law tort principles." Wallace v. Kato, 549 U.S. 384, 387-88 (2007). "Under those principles, it is the standard rule that [accrual occurs] when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." Id. (internal citations and quotation marks omitted).

In § 1983 cases, "the statute [of limitations] does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." Mullinax v. McElhenney, 817 F.2d 711, 716 (11th Cir. 1987) (citations and internal quotation marks omitted). Thus, a cause of action under § 1983 will not accrue "until the plaintiffs know or should know (1) that they have suffered the injury that forms the basis of their complaint and (2) who has inflicted the injury." Chappell v. Rich, 340 F.3d 1279, 1283 (11th Cir. 2003) (per curiam) (citing Mullinax, 817 F.2d at 716); Smith v. Shorstein, 217 F. App'x 877, 881 (11th Cir. 2007) (per curiam).

Having reviewed the complaint in detail, the Court concludes that it would be premature to dismiss Tunstall's § 1983 claims against Edwards and Mosley as time-barred at this juncture. Tunstall's complaint does not indicate when he became aware of Edwards' and Mosley's roles in allegedly falsifying child support documents and instigating child support enforcement actions taken against him. Thus, further factual development is required for the Court to make the necessary determination of when Tunstall was or should have been aware that it was Edwards and Mosley who had allegedly inflicted his injuries, and thereby ascertain when Tunstall's claims against those Defendants accrued. See Mullinax, 817 F.2d at 716; Chappell, 340 F.3d at 1283; Ray v. Judicial Corr.

Servs., 2013 U.S. Dist. LEXIS 139480, at *29, 2013 WL 5428395, at *10 (N.D. Ala. Sept. 26, 2013) (denying motion to dismiss based on statute of limitations defense when the pleadings did not reveal when the plaintiffs "became aware of their alleged injuries or realized who had allegedly inflicted such injuries").  Because it is not facially apparent that Tunstall's § 1983 claims against Edwards and Mosley are time-barred, the undersigned recommends that Defendants' motions to dismiss these claims on a statute of limitations basis be denied.

### ii. **State Law Claims.**

"In Alabama, defamation claims are subject to a two year statute of limitations." Tomberlin v. Clark, 2015 U.S. Dist. LEXIS 105784, at *12, 2015 WL 4757952, at *4 (N.D. Ala. Aug. 12, 2015) (citing § 6-2-38(k), Ala. Code 1975).  Likewise, "[t]he statutory period of limitations for the tort of outrage is two years." Cont'l Cas. Ins. Co. v. McDonald, 567 So. 2d 1208, 1215 (Ala. 1990); see § 6-2-38(l), Ala. Code 1975.  Tunstall's defamation and outrage claims are state law causes of action, and Alabama law governs the determination of when those claims accrued.[16]  See,

---

[16] To the extent Tunstall asserts that his state law claims are timely based on the U.S. Supreme Court's holding in McDonough v. Smith, 139 S. Ct. 2149 (2019), his argument is baseless.  McDonough dealt only with the accrual of a § 1983 fabricated evidence claim, and the holding in McDonough has no bearing on the accrual of Tunstall's state law causes of action.  See McDonough, 139 S. Ct. at 2155 n.2 ("[W]e do not address what the accrual rule would be for a claim rooted in other types of harm independent of a liberty

e.g., Gomez v. BankUnited, 2011 U.S. Dist. LEXIS 3735, at *13, 2011 WL 114066, at *5 (S.D. Fla. Jan. 13, 2011) (noting that when a state law cause of action accrued is a matter of state law).

Under Alabama law, "[t]he statute of limitations for a claim alleging defamation 'begins to run at the time [the cause of action] accrues, that is, when the defamatory matter is published.'" Hollander v. Nichols, 19 So. 3d 184, 194-95 (Ala. 2009) (citation omitted); see also Holloway v. Am. Media, Inc., 947 F. Supp. 2d 1252, 1269-70 (N.D. Ala. 2013) ("In the nature of defamation, the reputational injury to the plaintiff occurs at the moment the defamatory information is published to a third person, and it is at that moment that the cause of action is fully accrued and can be sued upon, even if the *extent* of the injury is not yet fully realized.") (emphasis in original). "Moreover, every distinct publication of libelous or slanderous material gives rise to a separate cause of action, even if the material communicated by each publication relates to the same matter as the previous publications." Poff v. Hayes, 763 So. 2d 234, 242 (Ala. 2000).

In contrast, Alabama courts have noted that "a cause of action alleging the intentional infliction of emotional distress does not accrue until the defendant's actions have caused the plaintiff

---

deprivation, as no such claim is before us."); see also Fox v. DeSoto, 2006 U.S. Dist. LEXIS 38762, at *23, 2006 WL 1642294, at *8 (W.D. Ky. June 6, 2006) ("It is clear that Heck and its progeny only control § 1983 claims[.]").

severe distress, two of the four necessary elements of such a cause of action." Martin v. Hodges Chapel, LLC, 89 So. 3d 756, 763 (Ala. Civ. App. 2011) (quoting Chaney v. Ala West-AL, LLC, 22 So. 3d 488, 498 (Ala. Civ. App. 2008)). At times, Alabama courts have characterized an outrage claim as "a continuous tort" that "will not be barred until two years after the last tortious act by the defendant, particularly where the defendant's conduct does not cross the threshold and become an actionable tort until it is demonstrably extreme and outrageous." McDonald, 567 So. 2d at 1215-16; see also Moon v. Harco Drugs, Inc., 435 So. 2d 218, 220 (Ala. 1983) (noting that the Alabama Supreme Court "has used the term 'continuous tort' to describe a defendant's repeated tortious conduct which has repeatedly and continuously injured a plaintiff" and that a "continuous tort" could include "when there is a 'single sustained method pursued in executing one general scheme'") (citations omitted). Although the continuous tort doctrine, when it applies, "operates to toll the running of the limitations period in tort cases until the date that the last injury occurred[,]" Alabama courts have "expressly limited 'recovery for a continuous tort . . . to those damages that occurred within the period of limitations.'" AC, Inc. v. Baker, 622 So. 2d 331, 335 (Ala. 1993) (citations omitted).

With respect to his outrage claim, the Court finds that Tunstall's complaint plausibly describes conduct in the nature of

a continuous tort where the last alleged tortious acts by Edwards and Mosley occurred less than two years prior to the filing of this lawsuit. Specifically, the complaint alleges that between March 20, 2017 and May 22, 2017, Edwards and Mosley falsified records to reflect that a Georgia court entered judgment against Tunstall in April 2017. (Doc. 7 at 11). The complaint further alleges that "each and every month" from November 2008 until July 1, 2017, Edwards and Mosley transmitted and published false and defamatory information about Tunstall, and that between November 1, 2017 and September 1, 2018, Edwards and Mosley "continued to falsify official state records" to reflect a nonexistent Georgia judgment, and to send monthly demands for payment of that judgment. (Id. at 11-12). Drawing all inferences in Tunstall's favor, his complaint plausibly describes an ongoing pattern of conduct where allegedly outrageous acts of Edwards and Mosley, and Tunstall's consequent injuries, occurred repeatedly. See McMillian v. Johnson, 1994 WL 904652, at *18 (M.D. Ala. Feb. 18, 1994) (finding plaintiff's claim that the defendants "committed the tort of outrage by 'instigating and effectuating the arrest, incarceration, and prosecution of the plaintiff for a crime he did not commit'" to be "a continuous tort," for which the plaintiff could "recover for any damages that occurred within the period of limitations"), aff'd, 88 F.3d 1573 (11th Cir. 1996), aff'd sub nom. McMillian v. Monroe Cnty., Ala., 520 U.S. 781 (1997); Osborne

v. Cheatham, 2015 U.S. Dist. LEXIS 174636, at *21-22, 2015 WL 9805823, at *8 (N.D. Ala. Sept. 30, 2015) (noting that a female inmate's allegations that a prison guard sexually harassed her and forcibly raped her multiple times "would be sufficient to invoke the continuous tort theory as to" the prison guard), report and recommendation adopted, 2016 U.S. Dist. LEXIS 4490, 2016 WL 159319 (N.D. Ala. Jan. 14, 2016). Thus, the undersigned recommends denial of Edwards' and Mosley's motions to dismiss Tunstall's outrage claim based on a statute of limitations defense.

With respect to Tunstall's defamation claims, the Court notes that one set of allegations relates to Edwards' and Mosley's false reporting to credit agencies in 2017 and 2018 that Tunstall had owed a child support arrearage of $7,958 since July 1995. (See Doc. 7 at 12-13, 20-21). There is no question that the claims relating to these publications are timely, since the publications occurred less than two years before the filing of the complaint. The other relevant allegations relate to Edwards' and Mosley's alleged transmission and internet publication of "the false and defamatory materials and information that [Tunstall] has owed $150,171.17 in child support since September 25, 1992." (See id. at 11). Tunstall alleges that these communications occurred on a monthly basis "[b]eginning on or about November 8, 2008 and each and every month thereafter until July 1, 2017[.]" (Id.). As noted, Tunstall filed his original complaint in this case on August

13, 2018.  Thus, unless he can establish otherwise, Tunstall's defamation claims relating to publications that occurred prior to August 13, 2016 are barred by the statute of limitations.

Tunstall suggests that these claims are timely under a continuing violation theory.  According to Tunstall, "each and every time between October 2008 – August 2018 that Defendants . . . transmitted and/or caused to be transmitted and published the known false and defamatory information and materials, constituted a new violation extending the limitation period."  (Doc. 71 at 23).  However, the Court has found no authority applying this type of continuing tort concept to defamation claims under Alabama law.  Indeed, doing so would appear to contradict the Alabama Supreme Court's statement that "every distinct publication of libelous or slanderous material gives rise to a separate cause of action, even if the material communicated by each publication relates to the same matter as the previous publications."  See Poff, 763 So. 2d at 242.

Tunstall also argues that he is entitled to equitable tolling of the statute of limitations because he "has actively sought judicial remedies" to obtain reversal of the April 2011 default judgment after first learning of the judgment on April 3, 2014, and because he "could not commence this instant action until the Baldwin County Juvenile Court dismissed all inextricably

intertwined cases, which occurred on June 11, 2018." (Doc. 7 at 13; Doc. 39 at 18-19; Doc. 71 at 24).

The issue of equitable tolling is determined by Alabama law. See Wallace, 549 U.S. at 394; Heining v. City of Anniston, Ala., 2017 U.S. Dist. LEXIS 157402, at *17, 2017 WL 4265382, at *8 (N.D. Ala. Sept. 26, 2017). Under Alabama law, "'[a] litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' as to the filing of his action." Weaver v. Firestone, 155 So. 3d 952, 957-58 (Ala. 2013) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). In other words, "equitable tolling is available in extraordinary circumstances that are beyond the petitioner's control and that are unavoidable even with the exercise of diligence." Ex parte Ward, 46 So. 3d 888, 897 (Ala. 2007). "'[T]he threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule.'" Weaver, 155 So. 3d at 958 (quoting Ward, 46 So. 3d at 897).

The tolling-related allegations in Tunstall's complaint relate primarily to his efforts to obtain relief from the Juvenile Court's April 2011 default judgment after he allegedly learned of its existence in April 2014. (See Doc. 7 at 13). Tunstall alleges that Defendants published false and defamatory materials "each and every month" from November 2008 until July 2017; thus, he

acknowledges that these publications had been occurring on a regular basis *years before* Glidewell even commenced the contempt action that resulted in the default judgment. Yet, Tunstall does not allege that he took *any* action with respect to these publications at any time before he became aware of the default judgment in 2014. By that time, the defamatory communications had allegedly been ongoing for more than five years. Tunstall does not explain, nor is it apparent to the Court, how the default judgment (which was not entered until April 2011) prevented Tunstall from filing state law defamation claims against Edwards and Mosley for alleged defamatory materials published as early as November 2008.

Tunstall states in a conclusory fashion that he "could not commence this instant action until the Baldwin County Juvenile Court dismissed all inextricably intertwined cases, which occurred on June 11, 2018." (Doc. 39 at 18-19). However, whether the defamation claims were actionable is based on circumstances as they existed at the time the statements were made, not on court proceedings that occurred sometime in the future.

Because Tunstall's factual allegations do not plausibly suggest that he has been pursuing his rights diligently with respect to his defamation claims and do not adequately describe the existence of extraordinary circumstances that prevented him from timely bringing defamation claims against Edwards and Mosley,

he has not presented an adequate basis for equitable tolling of his defamation claims. Accordingly, Tunstall's defamation claims relating to any pre-August 13, 2016 publications by Edwards and Mosley are due to be dismissed as time barred.

## V.    CONCLUSION

For the reasons set forth above, the undersigned **RECOMMENDS** that Defendants Kelley O. Edwards' and Cynthia T. Mosley's motions to dismiss (Docs. 26, 62) be **GRANTED in part** and **DENIED in part**.

Specifically, it is recommended that Edwards' and Mosley's motions to dismiss Tunstall's defamation claims (Count Four) as barred by the statute of limitations be **GRANTED** to the extent that such claims relate to publications that occurred prior to August 13, 2016.

It is recommended that Edwards' and Mosley's motions to dismiss be **DENIED** in all other respects.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations

contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **27th** day of **August, 2020.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**
