IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| THOMAS T. TUNSTALL V, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL ACTION NO. 18-0356-KD-B |
| | ) |
| KIMBERLY M. GLIDEWELL, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

The action is before the Court on the Report and Recommendation entered by United States Magistrate Judge Sonja F. Bivins as to the motion to dismiss filed by Mark D. Ryan, Mark D. Ryan, P.C. aka Ryan & Wilkes, P.C. (doc. 79), Plaintiff Thomas T. Tunstall V's objections and motion for leave to file a Fourth Amended Complaint (doc. 80), the Ryan Defendants' response (doc. 86) and Tunstall's reply (doc. 88); the Report and Recommendation as to Kimberly M. Glidewell's motion to dismiss (doc. 81) and Tunstall's partial objection and motion for leave to file a Fourth Amended Complaint (doc. 87); the Report and Recommendation as to Defendant Hope Daigle's motion to dismiss (doc. 83); and the Report and Recommendation as to Kelley O. Edwards and Cynthia T. Mosley's motions to dismiss (doc. 85).

A. Motion for leave to file a Fourth Amended Complaint

In his objections, Tunstall moves the Court for leave to amend to correct the pleading deficiencies identified in the Reports and Recommendations (doc. 80, doc. 87). Under the Federal Rules of Civil Procedure, a district court "should freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). "But 'a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile,' such as 'when the complaint as amended is still subject to dismissal' because, for example, it fails to state a claim for

relief." Chang v. JPMorgan Chase Bank, N.A., 845 F.3d 1087, 1094 (11th Cir. 2017). "To state a claim for relief, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation marks omitted)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. "The plausibility standard 'asks for more than a sheer possibility that a defendant has acted unlawfully.'" Id. "In other words, the allegations in the complaint 'must be enough to raise a right to relief above the speculative level.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "'Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 556 U.S. at 679, 129 S. Ct. 1937).

Upon consideration, and for the reasons set forth herein, the Court finds that allowing Tunstall to file the proposed Fourth Amended Complaint would be futile because the claims as to which the Magistrate Judge has recommended dismissal, would still be subject to dismissal. Hatcher v. Alabama Dep't of Human Services, 747 Fed. Appx. 778, 781 (11th Cir. Aug. 29, 2018) ("'a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile,' such as 'when the complaint as amended is still subject to dismissal'....") (citations omitted). Accordingly, his motion is DENIED.

    1. Counts I and II Constitutional Violations

Tunstall's motions for leave to amend were filed in reaction to the Reports and Recommendations as to the Ryan Defendants and Glidewell. In those documents, the Magistrate Judge recommends dismissal of Tunstall's Section 1983 claims against the Ryan Defendants in

Counts I and II. Addressing the three tests for establishing state action by a private person or entity, the state compulsion test, public function test, and nexus/joint action test, the Magistrate Judge found that the first two tests were not met because Tunstall did not and could not "plausibly allege that the State coerced or encouraged Ryan's alleged actions" or that his "representation of Glidewell, a private client, is traditionally an exclusive state prerogative" (doc. 79, p. 21). As to the nexus/joint action test, the Magistrate Judge found that Tunstall's allegation of Ryan's conduct, initiating, litigating and pursuing enforcement of child support obligations on behalf of Glidewell against Tunstall, all private parties, fails to plausibly allege that the State has insinuated itself as a joint participant in the enterprise (doc. 79, p. 22).

Also, as to the nexus/joint action test, the Magistrate Judge recognized that it may be met if there is a conspiracy, but there were no allegations of a conspiracy between Ryan and any state actor (Mosley, Edwards and Daigle). The Magistrate Judge also found that "because Ryan's alleged conduct falls squarely within the scope of his representation of Glidewell, Tunstall cannot demonstrate that Ryan is a state actor by virtue of a conspiracy with Glidewell." (doc. 79, p. 19).

The Magistrate Judge recommends dismissal of Count I and II as to Glidewell because the Third Amended Complaint fails to plausibly allege that she was acting under color of state law. Specifically, the proffered facts were not sufficient to state a conspiracy between Glidewell and any state actor and Tunstall did not plausibly allege facts that would satisfy the state compulsion, public function, or nexus/joint action tests (doc. 81, p. 18-23).

The Magistrate Judge recommends denial of Defendants Mosley and Edwards' motion to dismiss as to all counts as plead in the Third Amended Complaint, including Counts I and II (doc. 85).  Mosley and Edwards raised arguments pursuant to the Rooker-Feldman doctrine, res judicata and collateral estoppel, Eleventh Amendment immunity, and qualified immunity (doc. 85, p. 14-

24). By arguing these defenses, Mosley and Edwards did not call into question the sufficiency in pleading Counts I and II in the Third Amended Complaint.

The Magistrate Judge recommends dismissal of Defendant Daigle because the Court lacks personal jurisdiction. Again, this defense does not call into question the sufficiency in pleading the Counts I and II in the Third Amended Complaint (doc. 83).

In support of his motion to amend, Tunstall "acknowledges the complaint is not exactly a model of clarity and that there are some pleading deficiencies" (doc. 80, p. 4). He then alleges that because of the magnitude of damages and injuries and "Defendants continuous deprivation of his constitutional rights over a 10 year period", the Court should grant his motion for leave to amend. Tunstall argues that the proposed Fourth Amended Complaint cures the clarity issues and pleading deficiencies by adding additional facts (doc. 80, p. 5; doc. 87, p. 4; doc. 80-1, Exhibit A- Fourth Amended Complaint). He also argues that Defendants would not be prejudiced by allowing the amendments because he is not presenting any new claims (Id.). Additionally, he argues that the Magistrate Judge did not find his claims were frivolous or that amendment would be futile, but instead found only that the complaint suffered from pleading deficiencies (doc. 80, p. 5, n. 10; doc. 87, p. 4, n. 8).

As to the constitutional claims in Counts I and II, Tunstall states that with the "clarity issues" in the Third Amended Complaint, the Magistrate Judge missed the fact that the scheme developed by Ryan and Glidewell "occurred during a period in which there was no attorney-client relationship" and that the "proposed Fourth Amended Complaint cures these deficiencies" and "clarifies these allegations and adds additional factual matter to support the same." (doc. 80, p. 8, n. 16, 18). Tunstall points out that the juvenile court action had closed in March 2008 and Glidewell and Ryan did not file another petition against him until March 2010. He asserts that the scheme

between Ryan and Glidewell, which could give rise to a constitutional violation, began in September 2008, when no petition was pending in any court, there was no attorney-client relationship (doc. 80, p. 8).[1] Tunstall asserts that during the time period between March 31, 2008 and March 31, 2010, "Ryan did not act in the capacity as attorney for Glidewell in any legal action against" Tunstall (Id.). Tunstall then states that "[g]iven that the scheme was developed and consummated outside the scope of Ryan's representation of Glidewell, there is no immunity and the attorney and the client, as individuals could form a conspiracy" (doc. 80, p. 9).

As to the Ryan Defendants, even if Tunstall amends and alleges more facts in an attempt to clarify that no attorney-client relationship existed because Glidewell and Ryan did not have an action against Tunstall pending in any court when the alleged scheme was developed, the claim against the Ryan Defendants would still be subject to dismissal, and allowing the amendment would be futile. In the objection, Tunstall asserts that because "it was not apparent from the face of the complaint an attorney-client relationship between Ryan and Glidewell existed at the time they formulated and set the scheme into motion, the Ryan Defendants "had to conclusively establish that the alleged conduct was within the scope of the legal representation of Glidewell" (doc. 80, p. 9). However, in both the Third Amended Complaint and proposed Fourth Amended Complaint, Tunstall specifically alleges that at all times relevant to this action – which would include the time

---

[1] As alleged, the scheme appears to have been used twice. First in 2008 and again in 2012. In the Factual Background in the Proposed Fourth Amended Complaint, Tunstall alleges that Glidewell and Ryan in 2008 "devised a scheme whereby Glidewell would use her position with the Baldwin County Sheriff's Office to induce, solicit, and/or by other means suborn state agents Edwards and Mosley falsification of official government records and unlawfully use state enforcement services and personnel to extort over $150,000.00 from Plaintiff in Louisiana." (doc. 80-1, p. 3, ¶ 14-25). Tunstall alleges that in 2012, after obtaining an allegedly void default judgment in 2011, "Glidewell, in collusion with Ryan, suborned state agents Edwards and/or Mosely unlawful use of state enforcement services and personnel to effect enforcement of the known void April 18, 2011, Default Judgment" (Id., p. 7-8, ¶ 29-37; ¶ 35).

period during which the alleged scheme developed – Ryan was "attorney of record" for Glidewell (doc. 7, p. 3; doc. 80-1, p. 2). [2] In other words, there are no plausible allegations in the Fourth Amended Complaint that could support an inference that the Ryan Defendants were no longer in an attorney-client relationship with Glidewell just because no action was pending in court.

With respect to the state compulsion, public function, or nexus/joint action tests for determining whether a person is a state actor, the factual allegations in Tunstall's proposed Fourth Amended Complaint do not plausibly allege that the State of Alabama coerced or encouraged Ryan's alleged action or that his representation of Glidewell, a private client, is traditionally an exclusive state prerogative (see doc. 79, p. 21) (Report and Recommendation addressing the factual allegations in the Third Amended Complaint).  As to the nexus/joint action tests, the factual allegations in Tunstall's proposed Fourth Amended Complaint do not plausibly allege that the State of Alabama has "insinuated itself" with Ryan or Glidewell "as a joint participate" in the alleged enterprise of pursuing child support obligations from Tunstall. (Id., p. 22-23; doc. 87, p. 23).

Adding conclusory allegations, such as alleging that "[a]ll unlawful conduct and actions taken by state agents Edwards, Mosely and Daigle between September 30, 2008 – January 12, 2010 and or before September 8, 2010 – February 1, 2019, conclusively demonstrates that the state had so far 'insinuated itself' into a position of interdependence with Glidewell and Ryan that it was a joint participant in the enterprise", in the proposed Fourth Amended Complaint does not plead a plausible claim for relief (doc. 80-1, p. 15, 17).  The only conduct alleged as to Edwards, Mosely and Daigle was the alleged "unlawful use of their authority and state enforcement services to perpetuate"

---

[2] In the Third Amended Complaint, Tunstall alleged that the Ryan "[a]t all times relevant to this lawsuit [was] a licensed attorney providing legal services in Alabama and in fact attorney of record for Defendant Glidewell." (Doc. 7, p. 3). And in the proposed Fourth Amended Complaint, he again alleges that Ryan was at "all relevant times attorney of record for Glidewell." (Doc. 80-1, p. 2).

Glidewell and Ryan's alleged unlawful scheme (Id.). There are no factual allegations to support a reasonable inference that the State was somehow "interdependent" with Glidewell and Ryan to enforce a child support obligation.

Even if Tunstall successfully alleged that Ryan was not representing Glidewell at the time the alleged scheme was developed, Counts I and II against Ryan and Glidewell, as pled in the proposed Fourth Amended Complaint, would still be subject to dismissal as futile. Tunstall seeks to allege that the state actor Defendants Edwards, Mosley and Daigle were "acting in collusion with Glidewell and Ryan" and that "Glidewell and Ryan" engaged these Defendants to take action (Doc. 80-1, pgs. 14-18). Previously, he alleged that the state actor Defendants acted in furtherance of the scheme developed by Ryan and Glidewell, after only Glidewell induced them to take action. (Doc. 7, p. 14-16). In other words, after reading the Report and Recommendation, Tunstall attempts to conform his pleading to amend deficiencies pointed out by the Court. Specifically, that he failed to allege that Ryan also engaged the state agent Defendants to take action instead of just Glidewell and that Glidewell and Ryan acted in collusion.

Simply adding conclusory allegations that the state agents Edwards, Mosely and Daigle acted in collusion with Glidewell and Ryan and that Glidewell and Ryan engaged the state agents, does not meet the pleading requirements for a § 1983 conspiracy. (See Doc. 80-1, p. 14, ¶ 64-65, 17, Counts I and II). In order to prevail on a § 1983 conspiracy claim against a private individual, Tunstall must show that Ryan and Glidewell conspired with one or more state actors. Everett v. Cobb County, Georgia, - - - Fed. Appx. - - -, 2020 WL 4917581, at *4 (11th Cir. Aug. 21, 2020) ("Section 1983 can provide a remedy against a private person, but only where 'that person is shown to have conspired with one or more state actors.'") (citing Rowe v. City of Ft. Lauderdale, 279 F.3d 1271, 1285 (11th Cir. 2002)) "Making this claim requires the allegation of sufficient facts from

7

which an "'understanding" and "willful participation" between private and state defendants' can be inferred". Id. (quoting Bendiburg v. Dempsey, 909 F.2d 463, 469 (11th Cir. 1990)).

Regardless of whether Tunstall frames his claim in terms of collusion and not conspiracy, to "prevail on such a claim" Tunstall "'must allege that (1) the defendants reached an understanding or agreement that they would deny the plaintiff one of [his] constitutional rights; and (2) the conspiracy resulted in an actual denial of one of [his] constitutional rights.'" Davis v. White, No. 7:17-CV-01533-LSC, 2020 WL 4732073, at *16 (N.D. Ala. Aug. 14, 2020) (quoting Weiland v. Palm Beach County Sheriff's Office, 792 F.3d 1313, 1327 (11th Cir. 2015)) (bracketed text added).

Review of the Factual Allegations in the proposed Fourth Amended Complaint shows that Tunstall has not alleged any new facts showing that Ryan and Glidewell communicated with Edwards, Mosley and Daigle, that they reached an understanding or agreement to violate Tunstall's constitutional rights, and that they were willing participants (doc. 80-1, p. 3-14). Chang, 845 F. 3d at 1094 ("'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'") (citation omitted).

    2. Count III Abuse of Process

Tunstall also moves for leave to amend his complaint to replead his claim for abuse of process against Glidewell and Ryan. He argues that the proposed Fourth Amended Complaint cures the pleading deficiencies identified in the Reports and Recommendations (doc. 80, p. 14-15; doc. 87, p. 12-15). He concedes that Count III as pled in the Third Amended Complaint "does not fully satisfy the second element of the abuse of process claim," a wrongful use of process.[3] (doc. 80, p. 14; doc. 87, p. 12).

---

[3] The Magistrate Judge found that under "Alabama law, '[t]he elements of the tort of abuse of

The Ryan Defendants oppose allowing an amendment. They point out that Tunstall did not move to amend his Third Amended Complaint when confronted with the motions to dismiss which pointed out the deficiencies, but instead waited until the Magistrate Judge addressed the deficiencies in her Reports and Recommendations. They also argue that allowing Tunstall to amend his complaint would be futile, because the proposed Fourth Amended Complaint fails to set forth a factual basis that would meet the requirements (doc. 88).

Tunstall seeks to re-plead in an attempt to allege facts that show a wrongful use of process. Again Tunstall claims that Glidewell and Ryan's "commencement of the June 23, 2010" proceedings (Petition for Rule Nisi and Entry of Judgment) "was not for the stated reasons, but rather brought under the guise of a child support action with the specific intent of circumscribing" the Constitution, the Full Faith and Credit Statutes, and the Alabama Code "to fraudulently obtain $170,171.17 from Plaintiff." (Doc. 80-1, p. 18-19, Claim III).

Tunstall alleges that the June 23, 2010 Petition was subject to dismissal because it had been pending more than 120 days without action; however, Ryan and Glidewell instead of allowing the proceeding to end, filed a fourth Petition for Rule Nisi on January 20, 2011 to "circumvent dismissal" (doc. 80-1, ¶ 30, ¶ 85). Tunstall claims that by "refiling the original petition" . . . "Ryan intentionally corrupted the judicial process to avoid dismissal of the action" (Id., ¶ 85). Tunstall also claims that Ryan failed to serve him with notice of the January 26, 2011 motion to continue the hearing on the Petition, in violation of Alabama rules for service of notice, and that this "was an intentional effort to thwart Plaintiff from appearing and defending" the Petition (Id., ¶ 86).

---

process are 1) the existence of an ulterior purpose, 2) a wrongful use of process, and 3) malice.'" (doc. 79, p. 24; doc. 81, p. 24), but the second element was not met.

Tunstall also alleges that at the hearing on the Petition, which Tunstall did not attend, Ryan and Glidewell suppressed prior orders of the juvenile court and the final order entered by the Louisiana court, impermissibly amended the Petition to increase the relief sought without notice to Tunstall, suborned Glidewell's perjured testimony, introduced Glidewell's perjured affidavit, introduced false and altered official state records generated by Edwards and Mosley, and misrepresented that a Georgia court had entered a judgment against Tunstall (doc. 80-1, ¶ 32). Based on these factual allegations, Tunstall claims that by "committing the[se] transgressions", Ryan and Glidewell "intentionally sought to utilize the contempt action [Petition for Rule Nisi] for a process that it was not designed …for and which the juvenile court was not vested with authority or jurisdiction to render. Specifically, 1) to relitigate issue that were fully and fairly adjudicated by sister states courts and/or modify a sister state court's orders and final judgments; 2) to litigate issues that were explicitly prohibited by Ala. Code §§ 30-3-110 and 3-3-111 and Rules 1 and 28, Ala. R. Juv. P.; 3) to subvert the mandatory requirements of Ala. Code § 30-3A-3ll(a) and (b); and 6) to amend Plaintiff's child support payments that had matured and were not modifiable." (Doc. 80-1, ¶ 87, Count III).

Tunstall claims that Ryan's law firms were aware of his unlawful conduct, failed to take action, were complicit in the abuse of process, and therefore, are liable for injuries to Tunstall (Id., ¶ 88). Tunstall alleges that "Defendants deliberate illegal manipulation and corruption of the judicial process was the direct and proximate cause" of his injuries and damages (doc. 80-1, ¶ 89).

The allegations of fact and claims for relief are still substantially the same as in the Third Amended Complaint. Thus, even as amended, Count III fails to state a claim for abuse of process because there are no plausible allegations of wrongful use of process. The Magistrate Judge addressed these allegations and claims in the Report and Recommendation, explaining that "[b]y

focusing on Glidewell and Ryan's allegedly wrongful initiation of proceedings [the Petition for Rule Nisi], Tunstall misconstrues the nature of an abuse of process claim. Wrongful activity designed to create a claim goes to the initiation of process, not to its later use." (doc. 79, p. 26; doc. 81, p. 26). The Magistrate Judge further explained that questions about "the initiation of judicial proceedings is encompassed in a malicious prosecution claim, not an abuse of process" and that "[a]buse of process concerns the wrongful *use* of process *after it has been issued*.") (Id., italics in original). She also explained that the "gravamen of an abuse of process claim … is the misuse of process … for any purpose other than that which it was designed to accomplish." (doc. 79, p. 27; doc. 81, p. 26).

Tunstall attempts to re-plead Count III by claiming that Ryan's conduct as alleged in § 32 shows that he intentionally "sought to utilize the contempt action for a process that it was not designed … for and that which the juvenile court was not vested with authority or jurisdiction to render" (doc. 80-1, ¶ 87). Tunstall thus identifies the specific "process" that Ryan attempted to use (doc. 80-1, ¶ 87). However, his new allegations would not support a reasonable inference that a "wrongful use of process" has occurred because the purpose of the contempt action is still to obtain a judgment for child support against Tunstall, a process for which a Petition for Rule Nisi was designed. Starting with the first alleged "process" - "I) to relitigate issue that were fully and fairly adjudicated by sister states courts and/or modify a sister state court's orders and final judgments" (Id.). The orders and judgments of the "sister states courts" were orders regarding Tunstall's child support obligations, which were entered in Georgia and Louisiana. In his Third Amended Complaint, he alleged substantially the same. He alleged that Glidewell and Ryan filed the Petition in an "attempt to unlawfully use the court to subvert full faith and credit entitled to the Final

Judgment and Decree entered by the Georgia court on October 13, 1994 and January 12, 2010 Final Order entered by the Louisiana Court." (doc. 7, ¶ 65).

Tunstall then alleges that the Petition for Rule Nisi was not designed "2) to litigate issues that were explicitly prohibited by Ala. Code §§ 30-3-110 and 3-3-111 and Rules 1 and 28, Ala. R. Juv. P.; 3) to subvert the mandatory requirements of Ala. Code § 30-3A-3ll(a) and (b); and 6) to amend Plaintiff's child support payments that had matured and were not modifiable." (Doc. 80-1, ¶ 87). Ala. Code §§ 30-3-110 and 111 allow filing of a petition for retroactive child support where there was no previous divorce or other action for child support in the State of Alabama or any other jurisdiction. Here, there was a previous divorce action in Georgia, but support actions had been filed in the State of Alabama. Basically, Tunstall alleges that these statutes prohibited the initiation of the petition. Tunstall also cites to Ala. Code § 30-3A-311(a)&(b) of the Alabama Uniform Interstate Family Support Act (UIFSA). This code section has since been repealed. But in 2011, the statute provided that a petitioner seeking to establish or modify a support obligation in another state must include certain items in a verified petition and accompany the petition with a certified copy of any support order in effect.

Overall, there is still no allegation that the Petition for Rule Nisi, the contempt petition, was used for any purpose other than that which it was designed to accomplish. As with the Third Amended Complaint, the allegations in the Fourth Amended Complaint do not plausibly allege facts that would support a finding of a wrongful use of process, the second element of an abuse of process claim. Specifically, Tunstall has not alleged facts that would show that Ryan and Glidewell "did not us the process at issue primarily to effectuate the remedy contemplated by the statute", i.e. to collect child support. <u>Wilcon, Inc. v. Travelers Indem. Co.</u>, 654 F.2d 976, 984 (5th Cir. 1981).

3. Count V Intentional Infliction of Emotional Distress

In the proposed Fourth Amended Complaint, Tunstall alleges "Intentional Infliction of Emotional Distress and Mental Anguish against Edwards, Mosley, Daigle, Glidewell and Ryan" (doc. 80-1, p. 20-22). Tunstall has reworded Count V, reworded the supporting factual allegations, and incorporated by reference more factual allegations.[4] Tunstall again alleges that the Defendants' conduct over the past ten years has caused emotional distress and mental anguish, for which he is entitled to damages. However, Tunstall still fails to allege sufficient facts which if true would state a claim under Alabama law against any defendant. (See discussion *infra*).   Therefore, allowing Tunstall to amend Count V would be futile.[5]

B. Reports and Recommendations

1. Defendants Kelly O. Edwards and Cynthia T. Mosley.

After due and proper consideration of all portions of this file deemed relevant to the issues raised, and no objections having been made, the Report and Recommendation of the Magistrate Judge made under 28 U.S.C. § 636(b)(1)(B) (doc. 85) is ADOPTED as the opinion of the Court, with the exception of the recommendation as to Count V.

Tunstall alleges that he suffered "extreme" and "relentless" emotional distress as a result of Edwards and Mosley's falsification of state records to assist his ex-wife in her alleged meritless pursuit of child support. Specifically, Edwards and/or Moseley are alleged to have deleted reference

---

[4] In Count V, Tunstall removed a reference to Defendants' alleged "monthly publishing of defamatory and libelist material and information beginning September 30, 2008" as a source of his emotional distress and mental anguish and added a claim that Ryan's "law firms" were liable to Tunstall because they were aware of Ryan's conduct but failed to take action to enjoin him.

[5] As to Defendant Daigle, the Magistrate Judge recommends dismissal based on lack of personal jurisdiction which does not call into question the sufficiency of the allegations.

to prior Juvenile Court orders and including false information that child support was in arrearage. As for Glidewell, her part was to falsely claim that child support was owed. While this may have caused extreme distress to Tunstall, even if proven this conduct is not "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency" nor could the alleged conduct "be regarded as atrocious and utterly intolerable in a civilized society." Horne v. TGM Assocs., L.P., 56 So.3d 615, 631 (Ala. 2010).

Accordingly, Defendants Edwards and Mosley's motions to dismiss are DENIED as to Counts I, and II[6] and GRANTED as to Count V and in part as to Count IV. Tunstall's defamation claims in Count IV are barred by the statute of limitations to the extent the claims relate to publication that occurred prior to August 13, 2016.

2. Defendant Hope Daigle

After due and proper consideration of all portions of this file deemed relevant to the issues raised, and no objections having been made, the Report and Recommendation of the Magistrate Judge made under 28 U.S.C. § 636(b)(1)(B) (doc. 83) is ADOPTED as the opinion of the Court. Accordingly, all of Tunstall's claims against Defendant Hope Daigle are dismissed without prejudice for lack of personal jurisdiction.

The Clerk is directed to terminate Daigle as a Defendant in this action.

3. Defendant Kimberly Ann Glidewell

After due and proper consideration of all portions of this file deemed relevant to the issues raised, and a de novo determination of those portions of the Reports and Recommendation to which objection (doc. 87) is made, the Report and Recommendations of the Magistrate Judge made under

---

[6] Count III, abuse of process, was alleged only against Defendant Glidewell and the Ryan Defendants.

28 U.S.C. § 636(b)(1)(B) (doc. 81) is ADOPTED as the opinion of the Court, with the exception of the recommendation as to Count V (**See** *supra*)   Accordingly, Defendant Glidewell's motion to dismiss is GRANTED as to Counts I, II, and III and V.[7]

The Clerk is directed to terminate Glidewell as a Defendant in this action.

4. The Ryan Defendants

After due and proper consideration of all portions of this file deemed relevant to the issues raised, and a de novo determination of those portions of the Reports and Recommendation to which objection (doc. 80; doc. 88) is made, the Report and Recommendations of the Magistrate Judge made under 28 U.S.C. § 636(b)(1)(B) (docs. 79) is ADOPTED as the opinion of the Court. Accordingly, the Ryan Defendants' motion to dismiss is GRANTED as to Counts I, II, III and V.

The Clerk is directed to terminate the Ryan Defendants as Defendants in this action.

C. Conclusion

In summary, this action shall proceed against Defendants Mosley and Edwards as to Counts I, II, and IV.

**DONE** and **ORDERED** this the 30th day of September 2020.

 s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**

---

[7] Count IV, defamation, was alleged only against Defendants Daigle, Edwards and Mosley.